UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIVE POINT HOLDINGS, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 20-cv-01480-JD<br><br>**ORDER RE UNITED STATES' CONSOLIDATED MOTION TO DISMISS**<br><br>Re: Dkt. No. 98 |
| CPHP DEVELOPMENT, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TETRA TECH, INC., et al.,<br><br>Defendants. | Case No. 20-cv-01485-JD<br><br>Re: Dkt. No. 124 |

In these related cases, several real estate development companies have alleged negligence claims against the United States arising out of an unsuccessful effort to remediate radioactive contamination in the soil of the former Hunters Point Naval Shipyard (HPNS). Plaintiffs are Five Point Holdings, LLC and its subsidiary, CP Development Co., LLC (together, Five Point); and the Lennar Corporation and eight of its subsidiaries (together, Lennar). Plaintiffs had plans to build and sell residential homes and commercial facilities in portions of HPNS once the soil was cleaned up. The gravamen of the lawsuits is that the United States Navy was negligent in the supervision of Tetra Tech, an engineering firm the government had hired to handle the remediation work, and which has been sued in a number of companion cases for fraud and substandard performance.

The United States filed a consolidated motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). The only argument in the motion is that the Court lacks subject matter jurisdiction because the United States has not waived sovereign immunity under the Federal Torts

Claim Act. Dkt. No. 98.[1]  The government does not challenge the sufficiency of the allegations under Rules 8 and 12(b)(6).  The parties' familiarity with the facts is assumed, and the motion is denied without prejudice to further consideration as the record and circumstances warrant.

## BACKGROUND

The Court dismissed plaintiffs' original complaints and permitted a period of jurisdictional discovery.  Dkt. No. 48.  The operative complaints are the first amended complaints filed by Five Point and Lennar.  Case No. 20-1480, Dkt. No. 90 (*Five Point* FAC); Case No. 20-1485, Dkt. No. 118 (*Lennar* FAC).  Five Point sued only the United States; and alleges claims for negligence, negligent hiring, negligent interference with prospective economic advantage, and equitable indemnification.  *Five Point* FAC ¶¶ 450-497.  Lennar sued the United States, Tetra Tech, Inc., and Tetra Tech EC, Inc.; and alleges against the United States the same claims as Five Point, namely negligence; negligent hiring, supervision, and retention; negligent interference with prospective economic advantage; and equitable indemnification.  *Lennar* FAC ¶¶ 311-324; 333-343; 356-369; 385-390.  The claims against the Tetra Tech defendants are not presently before the Court and are unaffected by the order.

## LEGAL STANDARDS

As a sovereign, the United States is immune from suit, and can be sued only to the extent it has waived its sovereign immunity.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  Unless there is an express waiver of sovereign immunity, the Court has no jurisdiction over tort claims against the federal government.  *Id*.

The United States has waived this immunity for a broad category of claims under the Federal Tort Claims Act (FTCA).  In pertinent part here for plaintiffs' negligence claims, the United States has consented to be sued in civil actions for money damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private

---

[1] Unless otherwise stated, all docket number references are to the ECF docket for the *Five Point Holdings* case, No. 20-1480.

2

1   person, would be liable to the claimant in accordance with the law of the place where the act or

2   omission occurred." 28 U.S.C. § 1346(b)(1).

3         There are exceptions to this broad waiver of immunity. The exception at issue here is the

4   "discretionary function exception," which provides that the United States cannot be sued for

5   "[a]ny claim based upon an act or omission of an employee of the Government, . . . based upon the

6   exercise or performance or the failure to exercise or perform a discretionary function or duty on

7   the part of a federal agency or an employee of the Government, whether or not the discretion

8   involved be abused." 28 U.S.C. § 2680(a).[2] This exception "marks the boundary between

9   Congress' willingness to impose tort liability upon the United States and its desire to protect

10  certain governmental activities from exposure to suit by private individuals." *United States v. S.A.*

11  *Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984). By

12  enacting the discretionary function exception, "Congress wished to prevent judicial 'second-

13  guessing' of legislative and administrative decisions grounded in social, economic, and political

14  policy through the medium of an action in tort," while leaving in place the United States' consent

15  to be sued for "the common law torts of employees of regulatory agencies, as well as of all other

16  Federal agencies." *Id*. at 810, 814.

17        "The government bears the burden of establishing that the exception applies." *Nanouk v.*

18  *United States*, 974 F.3d 941, 944 (9th Cir. 2020) (citing *Chadd v. United States*, 794 F.3d 1104,

19  1108 (9th Cir. 2015)). To do that, the government must satisfy a "two-step test." *Id*. "Under the

20  first step, we ask whether the act or omission on which the plaintiff's claim is based was

21  discretionary in nature -- that is, whether it 'involve[d] an element of judgment or choice.'" *Id*. at

22  945 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). If the challenged action was

---

[2] The United States made a passing mention of the "misrepresentation exception," 28 U.S.C. § 2680(h), and the "interference with contract rights exception," *id*., in its opening brief, Dkt. No. 98 at 3-4, but in effect abandoned them in its reply brief. Dkt. No. 104 at 1 n.1 (declining to further address those grounds "[g]iven plaintiffs' response to th[o]se arguments"). In any event, plaintiffs have expressly disclaimed any substantive claims based on any alleged misrepresentation. *See*, *e.g.*, *Five Point* FAC at 1 n.1 ("This Complaint does not allege or seek relief against the United States based on fraud, deceit, or misrepresentation."); Dkt. No. 103 (joint opposition) at 2 ("Plaintiffs explicitly disclaim reliance on the Navy's representations as a basis for their claims.").

1  made under a mandatory duty, with no exercise of discretion, that is the end of the matter -- the
2  federal government may be sued. *Andreini v. United States*, No. 3:15-cv-01169-JD, 2017 WL
3  3895705, at *2 (N.D. Cal. Sept. 6, 2017).  But if the government employee's conduct involved an
4  element of judgment or choice, the analysis proceeds to the second step, "which asks whether the
5  discretionary decision challenged by the plaintiff 'is of the kind that the discretionary function
6  exception was designed to shield.'" *Nanouk*, 974 F.3d at 945 (quoting *Berkovitz*, 486 U.S. at 536).
7  "Congress sought to preclude courts from second guessing discretionary judgments 'grounded in
8  social, economic, and political policy,'" and so the government "prevails at step two if it can show
9  that the decision challenged by the plaintiff is 'susceptible to policy analysis.'" *Id*. (citations
10 omitted).

11  Whether the United States was in fact negligent plays no role in this analysis. *See Lam v.
12 United States*, 979 F.3d 665, 672 n.3 (9th Cir. 2020) ("it is well-established that negligence is not
13 part of the discretionary function exception analysis.").  Consequently, nothing in this order can or
14 should be construed as making a finding to that end.  What is critical for present purposes is "*how
15 the government is alleged to have been negligent*." *Whisnant v. United States*, 400 F.3d 1177,
16 1185 (9th Cir. 2005) (emphasis in original).  On that point, *Berkovitz* requires a "particularized
17 analysis of the specific agency action challenged." *GATX/Airlog Co. v. United States*, 286 F.3d
18 1168, 1174 (9th Cir. 2002).  "[T]he proper level of inquiry must be act by act." *In re Glacier Bay*,
19 71 F.3d 1447, 1451 (9th Cir. 1995); *see also Nanouk*, 974 F.3d at 945 ("Before we can apply the
20 two-step test, we must identify which specific actions or omissions the plaintiff alleges were
21 negligent or wrongful.") (citation omitted).  "The allegations in the complaint define the specific
22 conduct for review and determine whether discretion immunity applies." *Andreini*, 2017 WL
23 3895705, at *2 (citing *Young v. United States*, 769 F.3d 1047, 1053 (9th Cir. 2014)).

**DISCUSSION**

25  The Court dismissed Five Point's and Lennar's original complaints (Case No. 20-1480,
26 Dkt. No. 1; Case No. 20-1485, Dkt. No. 1) because they were "too vague for the Court to conduct
27 the required analysis and determine if the United States can be sued for plaintiffs' claims." Dkt.
28 No. 48.  To put a finer point on it, the complaints were factually threadbare.

4

That is no longer true of the amended complaints. Plaintiffs heeded the Court's order and revised the complaints to provide an abundance of facts about the conduct of the United States that plaintiffs are challenging, and the documentary sources of the mandatory duties that plaintiffs believe controlled that conduct. *See, e.g.*, *Five Point* FAC ¶¶ 122-394; *Lennar* FAC ¶¶ 84-276. The complaints highlight specific circumstances, such as the alleged failure of the Navy's Quality Assurance Officer to document compliance with chain of custody requirements, or ensure that soil samples were properly collected and transported to the laboratory. They identify as alleged sources of the government's mandatory duties the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, the National Contingency Plan, the Federal Facilities Agreement; the Federal Acquisition Regulation; the Construction Quality Management Program Manual; contract task orders; and work plans, sampling plans, and quality assurance project plans. The now-fulsome *Five Point* FAC runs to 104 pages, and the *Lennar* FAC to 89.

The typical next step in analyzing the discretionary function exception would entail a deep dive into these materials to determine whether the government's conduct was mandatory or required a protected exercise of judgment. But the Court need not undertake that labor here because the United States has utterly misconstrued its burden in this analysis. Although it could not be clearer that the United States has the burden of establishing that the exception applies, its arguments for immunity are premised on the erroneous belief that plaintiffs had the burden of establishing that the government did not have discretion. The government's reply brief illustrates the problem. The government says that "plaintiffs have failed to show that any single provision removed the government's discretion," and that "plaintiffs have failed to cite a single provision that meets all of the conditions necessary to remove government discretion and overcome the FTCA's discretionary function exception." Dkt. No. 104 at 1, 6. Quite the contrary, it was not plaintiffs' burden to "overcome" the discretionary function exception; it was the government's burden to establish that the exception applies. *Nanouk*, 974 F.3d at 944. Consequently, the government's effort to invoke the exception was doomed from the start.

To make matters worse, the government did not demonstrate why none of plaintiffs' allegations could proceed. It said that "space limitations do not allow the United States to address

5

each and every provision alleged in Plaintiffs' very lengthy FACs," Dkt. No. 98 at 6, and left a number of items totally unaddressed. To the extent that it took on any of the allegations, it repeated its misunderstanding of the burden allocation by saying things like "a provision that describes responsibilities of a contractor does not eliminate the United States' discretion"; "a provision that states a goal or seeks to ensure and document a particular result does not eliminate the United States' discretion"; and "a provision that provides employees with room for judgment or does not establish a reasonably precise standard for the government's conduct does not eliminate the United States' discretion." Dkt. No. 98 at 6-7. In addition, the government did not fully explain how these ostensible arguments were tied to the specific statutory, regulatory or other provisions that plaintiffs had identified in the FACs, or to the specific acts that plaintiffs had challenged in conjunction with those specific provisions.

To be sure, the United States filed a 32-page appendix, Dkt. No. 98-3, which featured a chart that "identifies each provision in Plaintiffs' FACs and supplies the reason that the provision does not eliminate the government's discretion under the FTCA." Dkt. No. 98 at 6.[3] The problem with the appendix is that, even generously construed, it addresses only the first step of the two-step discretionary function exception test, and completely ignores the second step. The government places too much weight on the *Gaubert* "presumption" that when there are "no specific and mandatory provisions eliminating the [government's] discretion" on a particular matter, the "Court must presume that the Navy's exercise of its discretion is policy-based." Dkt. No. 98 at 10 (citing *United States v. Gaubert*, 499 U.S. 315, 324-25 (1991)). The government overreads *Gaubert*, which does not authorize the government or the Court to simply stop at step one of the analysis. *See Sabow v. United States*, 93 F.3d 1445, 1451 (9th Cir. 1996) ("Both the discretionary act prong and the policy judgment prong of the discretionary function exception must be satisfied before the exception will apply."). Even in *Myers v. United States*, 652 F.3d 1021, 1031 (9th Cir. 2011), the circuit did not stop at its finding that a provision in a Federal Facilities Agreement was "discretionary," thereby satisfying step one. The *Myers* court went

---

[3] Plaintiffs' request for the Court to disregard the appendix as violative of the page limits is denied. Dkt. No. 103 at 5 n.3.

6

forward to conclude that the Navy's actions in carrying out its responsibilities under the FFA provision at issue were not protected policy judgments, and so the Navy failed the second prong of the analysis and the discretionary function exception was not applicable. *Id*. at 1031-33. The government's appendix here stops short and cannot satisfy the government's burden of establishing that the exception applies to all of plaintiffs' claims.

## CONCLUSION

As matters currently stand, the Court cannot conclude that the United States is entitled to immunity in these related actions. It may be that circumstances will require another look at this question, under the proper standards. The Court's jurisdiction is on ongoing inquiry, and it "must dismiss" an action if it "determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3). At the present time, the government has failed to show that dismissal is warranted, and so the motion is denied.

**IT IS SO ORDERED.**

Dated: January 12, 2022

JAMES DONATO
United States District Judge