JEFFREY D. DINTZER (State Bar No. 139056)
GREGORY S. BERLIN (State Bar No. 316289)
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:    213-576-1000
Facsimile:    213-576-1100
Email:    jeffrey.dintzer@alston.com
          greg.berlin@alston.com

MEREDITH JONES KINGSLEY (GA State Bar No. 793726) (*Pro Hac Vice*)
VICKIE CHUNG RUSEK (GA State Bar No. 487697) (*Pro Hac Vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
Telephone:    404-881-7000
Facsimile:    404-881-7777
Email:    meredith.kinglsey@alston.com
          vickie.rusek@alston.com

Attorneys for Plaintiffs
FIVE POINT HOLDINGS, LLC
and CP DEVELOPMENT CO., LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIVE POINT HOLDINGS, LLC and CP DEVELOPMENT CO., LLC, | Case No. 3:20-cv-01481-JD |
| Plaintiffs, | **JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES** |
| v. | |
| TETRA TECH, INC.; TETRA TECH EC, INC.; and ROES 1-100 Inclusive, | Assigned to Hon. James Donato |
| Defendants. | |
| FIVE POINT HOLDINGS, LLC and CP DEVELOPMENT CO., LLC, | Case No. 3:20-cv-01480-JD |
| Plaintiffs, | |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

1

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

| | |
|---|---|
| CPHP DEVELOPMENT, LP, et al., | |
| Plaintiffs, | Case No. 3:20-cv-01485-JD |
| v. | |
| TETRA TECH EC, INC., *et al*, | |
| Defendants. | |

| | |
|---|---|
| KEVIN ABBEY, *et al.*, | |
| Plaintiffs, | Case No. 3:19-cv-07510-JD |
| v. | |
| TETRA TECH EC, INC., *et al.*, | |
| Defendants. | |

| | |
|---|---|
| BAYVIEW HUNTERS POINT RESIDENTS, et al., | |
| Plaintiffs, | Case No. 3:19-cv-01417-JD |
| v. | |
| TETRA TECH, INC., *et al.*, | |
| Defendants. | |

| | |
|---|---|
| LINDA PARKER PENNINGTON, et al., | |
| Plaintiffs, | Case No. 3:18-cv-05330-JD |
| v. | |
| TETRA TECH EC, INC., et al, | |
| Defendants. | |

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

UNITED STATES OF AMERICA, *ex rel.*
JAHR, *et al.*,

         Plaintiffs,

        v.

TETRA TECH EC, INC., et al,

        Defendants.

Case No. 3:13-cv-03835-JD

As ordered by this Court on January 5, 2025, the parties in the above-captioned cases submit the following joint statement. This statement lists, in chronological order by side, the letter brief or motion that initiated each pending discovery dispute in the above cases. The statement also provides one-paragraph, high-level summaries of each party's position pursuant to those pending discovery disputes. Finally, as ordered, the statement includes the case and docket numbers for filings related to each dispute. In the interest of page economy, duplicate filings have been omitted.

## SIDE ONE INTRODUCTION

Side One is mindful of the Court's December 13, 2024, text order stating: "The Court will issue an order resolving the pending discovery disputes, and the fact discovery cut-off will be extended, discovery will be reopened, if warranted." Side One respectfully submits there is no justification to afford Side Two additional time to conduct further discovery; but there is ample justification to order Side Two to comply with prior Court orders and the discovery obligations they willfully have violated as set forth in pending motions.

**Just moments before Plaintiffs were to exchange their portion of this joint report with Side Two, the government filed a notice that it has reached a settlement. If Tetra Tech and the government have settled, then they will have to justify that settlement with the Court under applicable law in a public proceeding over the Relators' objection. Given the lack of notice, Side One reserves all rights with respect to these recent filings. The Court should be aware that Side One was not advised as to the status of this settlement notwithstanding repeated inquiries to Side Two about the status of the settlement, until one-half hour before the Parties' positions in this Joint Report were to be simultaneously exchanged between Side One and Side Two.**

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

LEGAL02/45491815v1

In the meantime, while negotiating a "settlement" with Tetra Tech, the United States has materially changed its position in this case – in contravention of its allegations, its discovery responses, and the sworn testimony of its representatives. As more fully briefed in Five Points' Motion to Compel the United States to Answer Interrogatories (ECF No. 191), the United States has contradicted its core contention that Tetra Tech committed widespread misconduct at Hunters Point.  The United States' Second Amended Complaint filed on March 8, 2024 (ECF No. 372) details Tetra Tech's extensive and fraudulent conduct and the ensuing coverup over an extended period of time, the accumulation of which rendered Tetra Tech's services "worthless" to the Navy.  The United States submitted multiple verified discovery responses detailing the factual bases underlying those allegations supported by contemporaneous data and work by a consultant hired by the United States.  However, now under the shadow of a potential "settlement" of the False Claims Act lawsuit filed by the DOJ, the same United States through its counsel the DOJ has completely reversed course.  In response to recent discovery served January 10, 2025 by Side One Parties, the United States now rebuffs its own verified discovery responses supporting its comprehensive qui tam complaint, and ignores a wealth of evidence (including the testimony of numerous Navy personnel and the US EPA) of widespread fraud by Tetra Tech and its subcontractors, admitting to only the limited misconduct to which Stephen Rolfe and Justin Hubbard pled guilty before Your Honor.

Side One respectfully requests Your Honors' consideration of the impact of decisions on the following disputes – which are laid out in more detail below at No. 5 and 8, respectively – on the rights and obligations of the parties after a decision is rendered. Without full, unencumbered access to Tetra Tech's database that Your Honor ordered Tetra Tech to produce in September 2024 – the content, format, and source(s) of which are still in dispute – Plaintiffs forensics expert cannot fully opine on critical issues having to do with falsification and manipulation of data.  Similarly, the opinion of Plaintiffs documents experts turns on the review and analysis of original chain of custody forms to which Side One still does not have access, despite this Court's order in September 2024 that they be made available. Without them, Plaintiffs document forensics experts cannot fully opine on issues relating to the authenticity of the records, among other things.  Therefore, Plaintiffs respectfully requests that its deadlines for those two expert reports be suspended until 30 days after the production

of the requested – and ordered – records.  Tetra Tech and the United States also have belatedly and tactically tried to claw back incriminating documents evidencing a broader and more coordinated conspiracy to defraud on the ground that evidence is "privileged," improperly claimed privilege over factual information, and otherwise refused to provide discovery responses.  These matters are set forth in Disputes [2], [5], and [8], [11], and [14].

Finally, to the extent additional testimony and discovery is obtained by Five Point as ordered by the Court, Plaintiffs' experts may rely upon that testimony and discovery at trial regardless of whether it is referenced in expert reports or expert depositions because the evidence as not available at the time Rule 26 expert reports are due.

## SIDE TWO INTRODUCTION

The fifteen disputes initiated by Side One are not meant to fill any gaps in discovery. There are no gaps. The scope and volume of discovery has been extraordinary—over the last three years, Tetra Tech and the United States have produced more than 3.25 million documents, answered more than 250 interrogatories, and produced more than 50 witnesses who have provided more than 90 days of testimony.  There is nothing more that Five Point and Lennar legitimately need to discover. Their motions should be denied.

## DISPUTES INITIATED BY SIDE ONE

1. **FIVE POINT, CP DEVELOPMENT CO., LLC, LENNAR, PENNINGTON, BAYVIEW, AND RELATORS MOTION TO COMPEL DEPOSITION OF TINA ROLFE**

Dated April 9, 2024

**Position of Five Point, CP Development Co., Lennar, Pennington, and Bayview:**

The above parties respectfully request the Court order Tina Rolfe's deposition to be reconvened for an additional two hours of questioning unimpeded by improper privilege objections by counsel for Tetra Tech, with whom she shares no common interest. Two major issues arose during Tina Rolfe's deposition. First, Mrs. Rolfe's responses were so untethered to reality that they strained all credulity. Multiple witnesses have testified that Mrs. Rolfe had knowledge of, and participated in, Tetra Tech's conspiracy to leave contaminated soil beneath a community that Five Point intends to

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

develop with parks, children's playgrounds, homes (including low-income housing), restaurants, and other retail establishments. *See* 3:20-cv-01481-JD, Dkt. 163 at 1. Forensic evidence establishes that Mrs. Rolfe was among those who manipulated data on a massive scale. Mrs. Rolfe's husband, Stephen Rolfe, admitted in his plea agreement to instructing workers he supervised (which included his wife) to swap soil samples. And yet, Mrs. Rolfe testified that she had no recollection of anyone—including herself—participating in any wrongdoing, even feigning ignorance of her husband being investigated by Tetra Tech for falsifying soil samples, being suspended without pay for a month, and facing criminal prosecution, despite living and working with her husband, seeing him, and speaking with him every day. Mrs. Rolfe otherwise seemed to have a fantastic memory. *See id.* at 2. Second, Mrs. Rolfe is a third-party witness. And yet, as seems to be their practice, Tetra Tech continuously interrupted her deposition with improper privilege objections, instructing her not to answer critical questions posed by the parties, even though she was not represented by Tetra Tech's counsel. Moreover, despite Tetra Tech's assertion of a common interest, Mrs. Rolfe repeatedly testified that they in fact had *no* common interests, which makes sense considering that Mrs. Rolfe has never been a party to this litigation and given Tetra Tech's public disparagement remarks about her husband. Indeed, Tetra Tech published an editorial in the SF Chronical immediately preceding his sentencing that alleged that Mr. Rolfe was part of a "cabal" of "rogue" employees who committed fraud and should be punished to the full extent of the law. *See id.* at 2-3; *In re Twitter Inc. Sec. Litig.,* Case No. 16-cv-05314-JST, 2019 U.S. Dist. LEXIS 79759 (N.D. Cal. May 10, 2019) (finding no common interest where third-party witness stated they shared no common interest). Most troubling given Mrs. Rolfe's inexplicable ability to remember any events surrounding her employment at the Shipyard and her husband's plea of guilty to federal fraud changes, Tetra Tech's counsel met with Mrs. Rolfe immediately before her deposition commenced, (and while the deposition was ongoing) and instructed her not to answer questions about their conversations during her preparation notwithstanding the absence of any privilege. *See* 3:13-cv-03835-JD, Dkt. 383 at 1-3. Side One parties, therefore, respectfully request this Court overrule the objections based upon the common interest doctrine and order Mrs. Rolfe to answer questions which she refused to answer based upon those improper instructions, as well as any follow up questions, that the deposition proceed for no longer than an additional two hours of questioning and Plaintiffs be

6

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

1   awarded fees and costs to resume the deposition. Side One also requests that the Court order

2   production of any documents shown to Mrs. Rolfe during her preparation; and because no attorney-

3   client relationship exists between counsel for Tetra Tech and Mrs. Rolfe, any attorney notes or outlines

4   created during those sessions.

5   **Position of United States:**

6       The United States has withdrawn its discovery letter brief on this issue. *See United States ex*

7   *rel. Jahr v. Tetra Tech EC*, 3:13-cv-03835, Dkt. 445.

8   **Position of Tina Rolfe and RSRS:**

9       RSRS and Tina Rolfe object to the request to continue the deposition of Tina Rolfe. Mrs. Rolfe

10  has emphysema and Cirrhosis of the liver, which resulted in blood clots that spread to her colon and

11  legs. Despite her extensive health issues, Mrs. Rolfe appeared for deposition in Sarasota, Florida on

12  March 27, 2024 via a wheelchair and was deposed for more than 5 hours on the record. Throughout

13  the deposition, Mrs. Rolfe was clear that she was having trouble both mentally and physically. Despite

14  these issues, neither she nor her counsel indicated that the deposition needed to be suspended and she

15  was ready to appear for her second day of deposition. Five Point's counsel refused; Five Point's

16  counsel was not agreeable to resolving the discovery issue and instead indicated that he would rather

17  "brief it." Five Point's insistence on dragging the parties back to Florida for a second deposition that

18  was already scheduled to go forward is not only burdensome and harassing considering Mrs. Rolfe's

19  health issues, but is also wholly unnecessary—the questions Mrs. Rolfe did answer concerning her

20  communications revealed that she recalled little about her deposition preparation; including how many

21  conversations, who was present, or even the general substance of the conversations. *See* T. Rolfe Dep.

22  Tr. at 249:12-14; 254:22-261:2. Considering Mrs. Rolfe's health condition, and her little recollection

23  of discussions with counsel based on her mental struggles, RSRS respectfully requests that her

24  deposition remain closed.

25  **Position of Tetra Tech:**

26      Tetra Tech and RSRS, codefendants in *Jahr*, have a common legal interest (CLI) and joint

27  defense agreement (JDA). Tetra Tech and Tina Rolfe also have a CLI and JDA, pursuant to which

28  counsel for Tetra Tech and counsel for RSRS jointly prepared Mrs. Rolfe for her deposition. As a

former employee of RSRS, Tina Rolfe faces similar allegations of wrongdoing as RSRS and Tetra Tech, and thus she shares a common goal with the two companies in defending against the allegations and accusations against her. Mrs. Rolfe, who made clear in her deposition that she has memory issues and is in frail health, is named throughout Plaintiffs' complaints and written discovery responses. Her credibility, reputation, and prior work has been repeatedly questioned both in and beyond her deposition. Plaintiffs' counsel even threatened criminal sanctions against her during her deposition. T. Rolfe Dep. Tr. at 284:19-23; 318:18-22. Mrs. Rolfe has a legal interest in seeing the allegations about her disproved. Mrs. Rolfe also had a personal, financial, and legal interest in the defense of this litigation at the time she was deposed because her husband, Steve Rolfe, was then a defendant in the Bayview (Carpenter) case, in which plaintiffs sought money damages against him. *Schaeffler v. United States*, 806 F.3d 34, 42 (2nd Cir. 2015) ("it was the interest in avoiding the losses that established a common legal interest"). That Mrs. Rolfe is not a party makes no difference. *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1390 (Fed. Cir. 1996); United States v. Gonzalez, 669 F.3d 974, 978 (9th Cir. 2012) (party need not have been sued to have a common interest). The substance of counsel's preparation with Mrs. Rolfe is privileged, and counsel for RSRS and Tetra Tech properly invoked the privilege at Mrs. Rolfe's deposition. Plaintiffs' reliance on *In re Twitter Inc. Sec. Litig.*, 2019 WL 2127820, at *2 (N.D. Cal. May 10, 2019) does not undermine the JDAs. In Twitter, the deponent testified "he did not 'care one way or the other who prevails in this litigation,'" and the only asserted basis for a common interest was "preparing adequately for [his] deposition." In contrast, here Mrs. Rolfe testified that she has, in her own words, a "common goal" with Tetra Tech. T. Rolfe Dep. Tr. at 281:13-282:7.

**Filings:**

- Case No. 3:13-cv-03835-JD

    o Dkt. 381 (United States Notice)

    o Dkt. 383 (United States Letter Brief)

    o Dkt. 386 (Pennington, Bayview, Relators, Five Point, and Lennar Letter Brief)

    o Dkt. 387 (Relators' Letter Brief)

    o Dkt. 389 (Tina Rolfe and RSRS Brief)

- o  Dkt. 391 (Tetra Tech Letter Brief)
- o  Dkt. 425 (Tetra Tech Letter Brief)
- o  Dkt. 428 (Tetra Tech Supplemental Letter Brief)
- Case No. 3:20-cv-01485-JD
  - o  Dkt. 226 (Lennar Letter Brief)
- Case No. 3:20-cv-01481-JD
  - o  Dkt. 163 (Five Point Letter Brief)

## 2. LENNAR, FIVE POINT, CP DEVELOPMENT CO., RELATORS, PENNINGTON, AND CARPENTER REQUEST TO COMPEL PRODUCTION OF DOCUMENTS CLAWED BACK DURING GEORGE CHIU DEPOSITION

Dated: July 8, 2024

**Position of Lennar, Five Point, CP Development Co., Pennington, and Bayview:**

Tetra Tech improperly clawed back documents constituting evidence of Tetra Tech's pervasive misconduct. During the deposition of George Chiu, a former Tetra Tech employee, Side One Plaintiffs questioned Mr. Chiu about documents reflecting numerous instances of fraud at Hunters Point. Tetra Tech's and Mr. Chiu's counsel asked Mr. Chiu about some of those documents on cross-examination. Tetra Tech has never put forth any showing that these documents are privileged.  "[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997)).  None of the documents reflect any legal advice or involvement of counsel. And each of the documents contained purely factual information demonstrating Tetra Tech engaged in falsification of data, which can never be privileged because it constitutes fraudulent conduct in and of itself. *In re Grand Jury Proceedings*, 867 F.2d 539, 541 (9th Cir. 1989) (the crime fraud exception prevents parties from hiding fraud behind the attorney client privilege). Moreover, Mr. Chiu also testified he never worked at the direction of counsel. After hours of questioning about those documents, Tetra Tech belatedly "clawed back" some of the documents used at the deposition, and later clawed back more documents containing factual information tending to prove its misconduct at Hunters Point. Because the documents are not

privileged, and, even if they were privileged, the privilege was waived through Tetra Tech's own use of the documents at Mr. Chiu's deposition, Side One Parties respectfully request that the Court overrule the claw back request and order that all of the documents improperly clawed back be reproduced and that Mr. Chiu's deposition be continued for two hours so that he can be questioned about the documents clawed back in the deposition.

**Position of the United States:**

The United States has withdrawn its discovery letter brief on this issue. *See United States ex rel. Jahr v. Tetra Tech EC*, 3:13-cv-03835, Dkt. 445.

**Position of Tetra Tech:**

The clawed-back documents were prepared to obtain legal advice from James Sanders of Reed Smith, counsel for Tetra Tech in 2017. Reed Smith lawyers met with DOJ on August 3, 2017 about the claims made in the *Jahr* matter. Following that meeting, Mr. Sanders and other lawyers at Reed Smith worked with TtEC employees to investigate and defend those claims. That work is documented in email communications from counsel to TtEC management and then to Mr. Chiu and Mr. Miller as they compiled information for legal review and advice. The clawed back documents reflect Mr. Chiu and Mr. Miller's preparation and analyses of building data files for counsel's investigation of DOJ's allegations, including a draft presentation to DOJ prepared by counsel. They are protected by the work product doctrine and attorney-client privilege, falling squarely within the contours of *Upjohn*. *See Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981) (holding communications by employees with corporate counsel for the company to secure legal advice are protected); *see also AT&T Corp. v. Microsoft Corp.*, 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18, 2003) ("analysis and discussions" on "matters upon which DSP intended to seek legal advice" were privileged). Tetra Tech counsel requested a recess during the Chiu deposition as soon as the privileged nature of the documents became apparent and then asserted the privilege objection and promptly wrote to all counsel clawing back the exhibits and related communications that were inadvertently produced. Tetra Tech submitted these documents to the Court for in-camera review on September 23, 2024, as ordered. Dkt. 199. Witnesses have testified since this submission about the privileged nature of the investigation to which these documents relate. *See, e.g.*, T. Miller Dep. Tr. 155:5-157:1 ("Q: Do you remember any of the e-mails

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

you received mentioning or referring to that the work is being done at the direction of counsel? A: Yes." … "Q: Did you – who did you provide this information to? A: George Chiu was the primary recipient of these items."). Lastly, Tetra Tech objects to Plaintiffs' letter brief on this issue, which was filed after Your Honor's January 5 order instructing that no further responsive briefs should be filed and that discovery issues should be described in this statement. To the extent the Court is inclined to consider Five Point and Lennar's request regarding this important issue, Tetra Tech requests leave to file a 3-page letter brief in response.

**Filings:**

- Case No. 3:20-cv-01485-JD
  - o  Dkt. 245 (Lennar Letter Brief)
  - o  Dkt. 246 (Tetra Tech Letter Brief)
  - o  Dkt. 248 (Lennar Letter Brief)
  - o  Dkt. 249 (Tetra Tech Letter Brief)
- Case No. 3:20-cv-01481-JD
  - o  Dkt. 183 (Five Point, CPD, Relators, Pennington, and Bayview Letter Brief)
  - o  Dkt. 186 (Five Point Letter Brief)
- Case No. 3:13-cv-03835-JD
  - o  Dkt. 440 (Relators Letter Brief)
  - o  Dkt. 441(Tetra Tech Letter Brief)

**3.  FIVE POINT AND CP DEVELOPMENT CO., LLC REQUEST TO COMPEL DEPOSITION OF DAN L. BATRACK, CEO AND PRESIDENT OF TETRA TECH INC.**

Dated: September 30, 2024

**Position of Five Point, CP Development Co., Pennington, Carpenter, and Relators:**

Five Point properly served two subpoenas and notices of deposition to Tetra Tech EC VP and Tetra Tech Inc. CEO and President, Dan Batrack, seeking testimony regarding his personal knowledge of critical fact issues including his direct communications with the Navy regarding Tetra Tech's fraud and his public defense of the same. Yet, Tetra Tech has refused to produce him. This, despite Mr.

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

Batrack's senior positions at *both* Tetra Tech entities—Mr. Batrack is an officer of Tetra Tech EC, which is the subsidiary that contracted with the Navy to conduct radiological surveys at Hunters Point—his consistent appearance in the evidence produced by Tetra Tech, and numerous witnesses testifying about his knowledge of the issues underlying these matters. *See* 3:20-cv-01481-JD, Dkt. 202 at 1-2. Mr. Batrack attempted to defend the company against the fraud in conversations with high-ranking Navy officials at the BRAC office in San Diego. He made personal calls to Navy officials discussing their concerns about HPNS. He penned a letter to the head of Navy BRAC insisting that Tetra Tech had not committed any fraud, and critically, that his company would be responsible for undertaking any additional independent investigation needed at Hunter's Point. Yet, when he met with Navy officials it became clear to government officials that Tetra Tech's promise was ephemeral, and he later instructed counsel to sue the contractors hired by the Navy, including CH2M, after the Navy rejected his proposal and in 2018, signed a widely publicized letter defending Tetra Tech's work at HPNS. Batrack answered questions about HPNS during investor earnings calls and made representations about the status and adequacy about Tetra Tech's work there. *See id.* at 2-3. Tetra Tech's assertion, meanwhile, that Batrack is protected by the "apex doctrine" fails because the evidence shows that Batrack has personal knowledge of facts relevant to Five Point's claims against Tetra Tech. *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D.Cal. 2012) ("When a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition.") (citations omitted); *Hunt v. Continental Casualty Co.*, No. C 13-05966 HSG, 2015 WL 1518067, at *2 ("[W]here a corporate officer may have any first-hand knowledge of relevant facts, the deposition should be allowed.") (internal quotations omitted); *Affinity Labs of Texas v. Apple Inc.*, No. C 09-4436 CW (JL), 2011 WL 1753982, at *2 ("[The 'apex doctrine'] does not apply to individuals with firsthand knowledge of relevant information."). Further, Tetra Tech felt entitled to and was given the deposition of Emile Haddad, the former CEO and Chairman of the Board of Five Point Holdings, Inc. Tetra Tech's refusal to do likewise flouts the very dictates of discovery that ensure a fair and adequate accounting of facts before trial. As such, Five Point respectfully requests that this Court compel Dan L. Batrack to appear for deposition in the immediate term, at a date and time selected by the parties.

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

**Position of Tetra Tech:**

"Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007). That is the case here. Dan Batrack is the President and Chief Executive Officer of Tetra Tech, Inc. (TTI) and does not have unique, first-hand, nonrepetitive knowledge of TtEC's work at Hunters Point. Mr. Batrack was not involved in the day-to-day management of TtEC. The subpoena to Mr. Batrack and the motion to compel his deposition are meant to harass and should be denied. *See In re Google Litig.*, 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011) (when a party seeks an apex deposition, "the court may exercise its discretion under the federal rules to limit discovery" by precluding or limiting the deposition). TtEC conducted radiological remediation work at Hunters Point Naval Shipyard, not TTI. Contrary to Plaintiffs' position, Mr. Batrack's public statements on TtEC's work at Hunters Point are an insufficient basis for taking his deposition. *See Affinity Labs of Tex. v. Apple, Inc.*, 2011 WL 1753982, at *16 (N.D. Cal. May 9, 2011) (entering protective order where plaintiff's argument that CEO had relevant first-hand knowledge was based "only on Mr. Jobs' public statements regarding Apple products or other patents or lawsuits"); *see also Langley v. Int'l Bus. Machs. Corp.*, 2019 WL 4577115, at *4 (W.D. Tex. Sept. 20, 2019) (denying request to compel deposition of CEO despite CEO's "numerous public statements" about allegations at issue); *Thomas v. Int'l Bus. Machs. Corp.*, 48 F.3d 478, 483 (10th Cir. 1995) (entering protective order barring the deposition of IBM chairman even though he allegedly "authored an IBM policy designed to discriminate against older employees"). In addition, Five Point took a seven-hour Rule 30(b)(6) deposition of TTI on a broad range of topics. Five Point has no legitimate need to impose on TTI's President and CEO. The deposition would contribute nothing material to the extensive factual record that Five Point has obtained from 153 days of depositions in these cases.

**Filings:**

- Case No. 3:20-cv-01481-JD

    o Dkt. 202 (Five Point Letter Brief)

    o Dkt. 205 (Tetra Tech Letter Brief)

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

o    Dkt. 214 (Five Point Letter Brief)

**4.  BAYVIEW, FIVE POINT, AND CP DEVELOPMENT CO., LLC REQUEST TO COMPEL TETRA TECH TO RESPOND TO INTERROGATORIES CONCERNING STEPHEN ROLFE AND JUSTIN HUBBARD RESPONSES TO ALI AMENDED INTERROGATORIES, SET ONE, NOS. 14, 16, 17 AND 18**

Dated: October 17, 2024

**Position of Five Point, CP Development Co., and Bayview:**

The crux of the matter is this: Ali Amended Interrogatory Nos. 14, 16, 17 and 18 seek to clarify Tetra Tech's apparent change in position on the fraudulent conduct of its former employees, and to establish the underlying facts of fraud known by Tetra Tech. Tetra Tech has gone from publicly acknowledging the fraud of Mr. Justin Hubbard and Mr. Stephen Rolfe, to stating that Tetra Tech does not intend to contend that Mr. Hubbard and Mr. Rolfe engaged in fraudulent conduct at trial. To wit: in May of 2018, Tetra Tech publicly represented in an editorial to the San Francisco Chronical and in a separate press release that Mr. Hubbard and Mr. Rolfe committed fraud during their work at Hunters Point Shipyard. Thereafter, Five Point propounded interrogatories asking that Tetra Tech provide facts to support its contention that Mr. Hubbard or Mr. Rolfe committed that fraud. But Tetra Tech responded that it "does not plan to contend at trial that" Justin Hubbard or Stephen Rolfe "committed, directed, or participated in fraud in connection with the performance of Work at HPNS." Mr. Ali then issued interrogatories to clarify Tetra Tech's apparent change in position. But two months after Mr. Ali's interrogatories were propounded, Tetra Tech objected to the interrogatories and refused to provide substantive responses. Despite attempts to meet and confer on this issue, and concessions by Mr. Ali to only seek responses with respect to the four interrogatories discussed herein, Tetra Tech has continued to refuse to provide them. In a last gasp attempt to avoid complying with its discovery obligations, Tetra Tech contends it does not have to revise its responses further because of a stipulation, filed a few short days after the service of its objections, with the Bayview Hunters Point Residents. (ECF 268; Exhibit A). But these four interrogatories were propounded months before the agreed-upon discovery stay, and Tetra Tech refused to properly respond to them before the stipulation's filing. Even if a stay were in place with respect to these discovery responses as between

1    Tetra Tech and Mr. Ali, under this Court's Order, "all Interrogatories and responses and objections

2    thereto, served by any of the Parties in any of the Actions shall be treated as if they had been requested

3    by every Party and no further process or procedure is necessary for those responses to [be] utilized in

4    all Actions as if it had been requested by all parties." (ECF 202, Section E). Thus, Five Point and Mr.

5    Ali are entitled, independently, to seek a response to these interrogatories, and the parties in this matter

6    are entitled within the ordinary bounds of discovery to know the factual basis for Tetra Tech's

7    significant change in position. As such, the above parties respectfully move this Court to compel Tetra

8    Tech to respond to Interrogatory Nos. 14, 16, 17 and 18 from Mr. Ali's Amended Written

9    Interrogatories to Tetra Tech EC, Inc., Set One, and from Mr. Ali's Amended Written Interrogatories

10    to Tetra Tech, Inc., Set One.

11        **Position of Tetra Tech:**

12        In August 2024, Tetra Tech and the Bayview Plaintiffs agreed to pursue a bellwether process

13    and stay discovery by and of all non-bellwether plaintiffs. Case No. 19-cv-01417, Dkt 268. This

14    stipulation afforded the Bayview Plaintiffs the benefit of not responding to discovery that Tetra Tech

15    had served on more than 500 plaintiffs. Tetra Tech, likewise, should receive the same benefit under

16    the terms of the stipulation. But notwithstanding the stipulation, Mr. Hamidullah Ali (not a bellwether

17    plaintiff) served 18 interrogatories on Tetra Tech EC and Tetra Tech, Inc. Even if the interrogatories

18    were not barred by the discovery stay, they are substantively improper because they seek Tetra Tech's

19    position on the factual accuracy of more than 50 statements, which exceeds the 25-interrogatory limit.

20    *See Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 218 (C.D. Cal. 2009) (denying motion to

21    compel responses to interrogatories where single interrogatories sought information on different

22    underlying topics and thus answering them all would have exceeded limit of 25 interrogatories).

23    Moreover, given Five Point's demands for meet and confers and letters to Tetra Tech about these

24    interrogatories, Five Point appears to be the party that drafted these interrogatories to circumvent the

25    limits on its own written discovery.

26        **Filings:**

27    • Case No. 19-cv-01417

28        ○ Dkt. 289 (Five Point, CP Development Co., Bayview Letter Brief)

15

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

1  **5. FIVE POINT AND CP DEVELOPMENT CO., LLC REQUEST TO COMPEL**

2      **TETRA TECH TO PRODUCE COMPLETE DATABASE OF ENVIRONMENTAL**

3      **INFORMATION RELATED TO ITS WORK AT HUNTERS POINT NAVAL**

4      **SHIPYARD**

5  November 1, 2024

6  **Position of Five Point, CP Development Co., and Lennar:**

7      The Court ordered Tetra Tech to produce the complete "universe" of "all" available database

8  files, in "native form." 3:20-cv-014181-JD, Dkt. No. 196. The Court admonished Tetra Tech that "I'm

9  not going to get hung up on words here. Just produce the raw data. I don't care where it is. If somebody

10 said it was two folders and that was the universe, then do the two folders. If that's not the universe,

11 don't tell me that. Produce the universe." *Id.* at 48:2–6. The Court was also clear that, "[i]f you don't

12 get what you think you're going to get, if it doesn't look like raw data, ***you can come back, and***

13 ***consequences will result***." Dkt. No. 196 at pp. 44:24–45:1. Tetra Tech did not produce its complete

14 database or all of its raw data, in direct violation of the Court's order. Tetra Tech only produced certain

15 file types from two folders as they repeatedly suggested they would do at the hearing despite the

16 Court's direction. See 3:13-cv-03835-JD, Dkt. No. 441 at 2. Tetra Tech stripped out ***thousands*** of

17 files. See 3:20-cv-01481-JD, Dkt. 206 at Appendix D. For example, Tetra Tech omitted over 3,700

18 photographs taken during sampling—photographs of sampling locations, bagged samples, etc. These

19 missing files need to be produced as part of the database, not separately; ***in the actual database that***

20 ***Tetra Tech has possession of these files are linked to chain of custody data, location data, and***

21 ***sampling data***. This linkage is critical-it aligns the sample locations with the documentation and

22 sampling results.  The only means of getting exactly what Tetra Tech and its experts have access to is

23 for Plaintiffs to have access to the complete database that Tetra Tech maintains on servers it controls.

24 This is critical evidence of Tetra Tech's fraud. Even worse, Tetra Tech failed to produce several

25 categories of key data and information that were not stored in those two folders—e.g., laboratory data,

26 scan data, GIS data, and additional photographs. See 3:20-cv-01481-JD, Dkt. 236. Five Point and

27 Lennar have repeatedly tried to meet and confer with Tetra Tech to resolve this fundamental discovery

28 issue with no success, even after the Court's order. The Court will recall that Five Point first requested

a complete copy of Tetra Tech's database in late 2023 and began meeting and conferring with Tetra Tech in January 2024. Over a year later, and more than four months after the Court's order, Five Point still does not have the database. Instead, we have a fractured and incomplete set of files, which was the exact concern raised with the Court on September 12 and why Five Point and Lennar submitted follow-up requests for additional relief. To remedy this misconduct, Five Point originally requested that the Court order Tetra Tech to produce a hard drive containing its complete database for its radiological work at HPNS (i.e., all folders, subfolders, and files, in native form, including those stored on its backup server), as it was kept by Tetra Tech and used by its employees. Based on additional witness testimony, Five Point proposed a simpler solution: Tetra Tech should be ordered to provide a username and password so Plaintiffs have the same access as Tetra Tech, which is needed to be on the same footing as Tetra Tech, including its counsel, witnesses, and experts. That equal access will allow Plaintiffs to determine the full extent to which Tetra Tech employees manipulated and overwrote data. Providing direct access to this database will not burden or disrupt Tetra Tech. This database is archived, cabined-off, and remotely accessible in the cloud. The database is not currently used in connection with any work on the site, and should not be manipulated or tampered with by Tetra Tech since the filing of this litigation. All that is needed are the temporary use of a Tetra Tech computer and login credentials. Five Point proposed this solution to Tetra Tech in a meet and confer letter sent on November 25, 2024. Tetra Tech refused, claiming incredibly "[y]ou already have access." See 3:20-cv-01481-JD, Dkt. 206 at Appendices A and B.  If that were true, then there should be no objection to Five Point's request. And Tetra Tech's refusal confirms they are simply withholding and hiding the full evidence of their fraud, which requires this Court's intervention and "consequences," as ordered on September 12.

**Position of Tetra Tech:**

All radiological data have been produced. In compliance with the Court's order of September 12, TtEC produced two network folders containing over 100 gigabytes of radiological data from Hunters Point. Tetra Tech then again searched custodial files for any additional data and produced files even if they had been previously produced. Thorpe Miller, TtEC's Environmental Database Manager, is the person most knowledgeable about the current location of TtEC's radiological data

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

from Hunters Point and was TtEC's 30(b)(6) designee on this topic. Mr. Miller testified that the two folders produced by TtEC currently contain TtEC's radiological data from its work at Hunters Point: "Q. Other than the air monitoring data and results, was there any other data characterizing the radiological condition at the Hunter's Point Naval Shipyard, other than within the sewer removal database folder? A. No, all of it was included in those two locations." T. Miller Dep. Tr. at 99:5-11. Side One improperly relies on testimony of Terry Sindelar, a retired employee of TtEC, to argue otherwise. But Mr. Sindelar testified he does not know where TtEC has maintained all its radiological data from its work at Hunters Point and pointed to Thorpe Miller as the most knowledgeable person about where data was stored following TtEC's demobilization from Hunters Point. T. Sindelar Dep. Tr. at 271:9-16. The Developers contend that Mr. Sindelar identified four categories of data that were not produced: (1) laboratory tracking data, (2) towed array data, (3) GIS data, and (4) original laboratory data files. All this data was produced, and Tetra Tech has identified by Bates numbers where in its productions various data is located. Specifically, (1) laboratory tracking data were produced in the Sewer Removal Database folder, (2) towed array data were produced in the Sewer Removal Database folder and in attachments to produced emails, (3) location data are contained in the produced towed array data (linking sample IDs to analytical data), and (4) original laboratory data files were produced in the Sewer Removal Database folder. Five Point's demand for a TtEC computer and login credentials is legally baseless—no authority supports such an extreme request for remote access to a defendants' computer systems when that defendant has produced all responsive information.

**Filings:**

- Case No. 3:20-cv-01481-JD

    o Dkt. 206 (Five Point Letter Brief dated November 1, 2024)

    o Dkt. 209 (Tetra Tech Letter Brief)

    o Dkt. 212 (Five Point Letter Brief)

    o Dkt. 213 (Tetra Tech Letter Brief)

- Case No. 20-cv-01485-JD

    o Dkt. 288 (Lennar and Five Point Letter Brief)

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

**6. Relators' Request for Order Permitting Discovery for Fairness Hearing On Settlement Between the United States and Tetra Tech EC, Inc. Pursuant to 31 USC §3730 (c)((2)(B), Case No. 3:13-CV-3835-JD.**

January 17, 2025

**Position of Relators:**

Relators have been advised that a settlement has been reached between the United States and Tetra Tech EC, Inc. to fully settle the United States Second Amended Complaint In Intervention. (Dkt. No. 372). Relators were not involved in the settlement discussions. The Relators have not been informed of the full settlement terms. The United States has refused to provide any information as to the settlement terms for the CERCLA cause of action in the SAC. The United States has advised that it contends that Relators have no legal right to a share in the CERCLA settlement sums. The Relators need information as to the settlement terms, basis, whether the basis for the CERCLA settlement overlaps with the FCA claims, and reasons for allocation to determine if the settlement is fair, reasonable and adequate under 31 USC §3730 (c)((2)(B). Discovery is necessary for Relators to be able to determine whether the settlement is fair, reasonable, and adequate, or whether there is a basis to object to the settlement, including the settlement terms relevant to Relators. Discovery is appropriate to assist Relators in making this evaluation. *See U.S. ex rel. McCoy v. California Medical Review*, Inc., 133 F.R.D. 143, 149 (N.D. 1990).  Relators have a basis to claim a right to the CERCLA settlement allocation if the settlement involves overlapping facts between the False Claims Act and the CERCLA claim. *Rille v. Pricewaterhouse Coopers, LLP*, 803 F.3d 368, 373-374 (8th Cir. 2015). Relators request an Order that the United States respond to the discovery Relators propounded on January 12, 2025.

**Position of United States:**

As explained in the United States' Notice of Settlement & Request for a Schedule and Hearing Pursuant to 31 U.S.C. § 3730(c)(2)(B) (ECF 452 at n.1), the discovery issued by Relator McLean is untimely under the Court's case schedule, which set January 5, 2025 as the cut-off for fact discovery. To the extent Relators contend that the discovery is adjacent to a future hearing pursuant to 31 U.S.C. § 3730(c)(2)(B) and not subject to the cut-off, there is no competent basis for that discovery. The False

1  Claims Act does not permit an objecting relator to serve discovery on the United States as a matter of

2  right, and the Court has not granted Relators permission to do so.  Moreover, even if Relators had

3  advance leave to issue this discovery, Relator McLean's requests are substantively objectionable and

4  should be quashed—most seek privileged communications between and among DOJ counsel and the

5  Navy, protected internal work product, and confidential mediation materials. As can be seen from even

6  cursory review of Relators' discovery (now docketed without any argument in support of their

7  propriety at ECF 455-1), the requests and the processes they would necessitate (including an

8  opportunity for the United States to provide objections and responses) "risk transforming the §

9  3730(c)(2)(B) hearing into a trial on the merits of plaintiff's claims and the government's estimations

10  of the litigation risks." *See U.S. ex rel. Schweizer v. Oce North America, Inc.*, 956 F. Supp. 2d 1, 11

11  (D.D.C. 2013) (rejecting "full-blown discovery" under Section (c)(2)(B)).  If the Court accepts

12  Relators' January 17th filing (ECF 455) as a letter brief requesting discovery, the United States

13  requests permission from the Court to file an opposition in due course.  Alternatively, the United States

14  can be available for a status conference with the Court and Relators' counsel to address and establish

15  orderly procedures for Relators' Section (c)(2)(B) challenge.

16  **Filings:**

17  • Case No. 3:13-CV-03835-JD

18    ○ Dkt. 442

19    ○ Dkt. 445

20  **7.  PENNINGTON, LENNAR, FIVE POINT, AND CP DEVELOPMENT CO., LLC**

21  **MOTION TO COMPEL FURTHER DEPOSITION TESTIMONY FROM STEPHEN**

22  **ROLFE**

23  November 27, 2024

24  **Position of Five Point, CP Development Co., Lennar, and Pennington:**

25  For this motion it is incumbent that the Court review excerpts of the transcripts filed with the

26  letter brief.  Tetra Tech continually interrupted the deposition of Stephen Rolfe with improper

27  instructions not to answer questions seeking highly relevant discoverable information, including

28

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**
LEGAL02/45491815v1

regarding numerous statements Mr. Rolfe made to federal investigators[1] in connection with his criminal proceeding, primarily regarding the pressure exerted by Tetra Tech supervisors and their knowledge with respect to Tetra Tech's fraud at Hunters Point. Good cause, therefore, exists for an order allowing Plaintiffs to complete his deposition. During his deposition Mr. Rolfe recanted sworn statements made in his plea agreement submitted to this Court and statements he made to federal investigators, including statements that were recorded in Mr. Rolfe's EPA criminal investigation report. Mr. Rolfe's counsel prevented Mr. Rolfe from being cross-examined and testifying about these inconsistencies, along with Mr. Rolfe's sentencing, among other things, asserting over 1,400 objections, including extensive instructions not to answer, mostly on non-privilege grounds. Moreover, Mr. Rolfe's counsel (who is being paid for by Tetra Tech notwithstanding public pronouncements by the Tetra Tech preceding Mr. Rolfe sentencing that he should be fully punished for his "rogue" and fraudulent conduct) and Tetra Tech's counsel claimed that a common interest agreement and prevented testimony about the numerous deposition preparation sessions Mr. Rolfe had with Tetra Tech's counsel (including one where Mr. Rolfe did not have personal counsel present) asserting common interest and attorney-client privilege objections. At the time of his deposition Mr. Rolfe was not a defendant in any HPNS case. Further, as it was not produced before the deposition, Plaintiffs were unable to examine Mr. Rolfe about his Presenting Investigation Report ("PSIR"), which contained statements explaining that his motivation to swap soil samples came from pressure he felt from Tetra Tech supervisors and that Mr. Rolfe believed he was "saving the Navy money by not shipping soil that was at background levels." For the foregoing reasons, Plaintiffs requests that the Court order overrule all of the privilege objections and instructions not to answer questions and require Mr. Rolfe to submit to further questioning, unimpeded by these improper objections and instructions.

**Position of Stephen Rolfe:**

As Mr. Rolfe's counsel I strenuously oppose Plaintiffs' request to retake his deposition. Mr. Rolfe, age 76, suffers from atrial fibrillation. I advised counsel of Mr. Rolfe's medical condition at his

---

[1] The federal investigators who spoke to Mr. Rolfe and transcribed statements he made during sworn interviews include Jerome ("Jay") Bigoness and former Assistant United States Attorney Philip Kearney, who are the subject of Plaintiffs' Motion to Compel Compliance with Deposition Subpoenas and Tetra Tech's Request for Protective Order Regarding United States Counsel and Investigators. *See* #20 below.

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

deposition stating that we would need to take frequent breaks whenever he was struggling. To depose him again would clearly be a detriment to his health and add nothing to his 700 pages of testimony. Regardless of his physical condition my client was subjected to *14 hours* of grueling, *repetitive* questioning by Plaintiffs' counsel *over three days*. I duly objected to improper questions which included the specific evidentiary grounds, a practice that Plaintiffs' counsel have engaged in throughout all depositions.  Mr. Rolfe was grilled for 7.5 hours regarding his plea agreement and proffer interview alone. The *same set* of questions was asked *7 separate times* regarding his plea agreement and *5 separate times* regarding his proffer interview. Mr. Rolfe gave complete testimony repeatedly until it reached the point where the repetitive questioning was abusive and harassing. I only instructed my client not to answer when the questioning had gone well beyond information seeking and was simply continued abuse or when the questions impinged upon the attorney-client privilege. Plaintiffs' motion should also be denied based on their blatant disregard of two obvious procedural requirements. First, this matter is outside the Court's jurisdiction. Mr. Rolfe resides in Florida. Therefore, they must *file their motion in the Middle District of Florida*. Second, Plaintiffs *did not meet and confer* before filing their motion.  At the end of the deposition, I stated "The deposition is over. Are you meeting and conferring? If you're meeting and conferring, we can do that in a phone call tomorrow or on Monday." Plaintiffs never contacted me to schedule a "meet and confer" at any time during the two weeks before filing their letter brief.

**Position of Tetra Tech:**

Plaintiffs have already deposed Steve Rolfe for three days, largely spending their time asking the exact same questions, including more than **five hours** of questioning about his plea agreement and sentencing. Tetra Tech and Mr. Rolfe have a common interest in together debunking Plaintiffs' unsupported and overblown allegations against them. Mr. Rolfe is a former employee of TtEC and was a co-defendant in the Bayview (Carpenter) action until Plaintiffs dismissed him earlier this year. Plaintiffs have attacked Mr. Rolfe's work at Hunters Point far more broadly than the scope of his plea agreement, made sweeping allegations against him in their multiple lawsuits, and accused him of lying under oath. He had an interest in his defense while he was a Defendant and even after dismissal, he has an interest in disproving the allegations against him. And because Plaintiffs contend Mr. Rolfe's

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

actions should be imputed to Tetra Tech, Mr. Rolfe's legal interests and Tetra Tech's legal interests align. As the court held in *Columbia Sportswear Co. v. 3MD, Inc*., 2017 WL 6550490 (D. Or. Dec. 21, 2017), a former party can have a valid common legal interest with a current party, even after the former party is dismissed. Additionally, a complete unity of interests is not required for the common legal interest to apply. United States v. Bergonzi, 216 F.R.D. 487, 495 (N.D. Cal. 2003); *United States v. Gonzalez*, 669 F.3d 974, 980 (9th Cir. 2012) (despite two parties being "completely antagonistic" on certain claims, a valid JDA could still exist on other claims). Tetra Tech interposed timely and proper objections at Mr. Rolfe's deposition to questions about privileged preparation sessions.

**Filings:**

- Case No. 3:18-cv-05330-JD
    - o  Dkt. 327 (Pennington, Lennar, and Five Point Letter Brief)
    - o  Dkt. 331 (Stephen Rolfe Letter Brief)
    - o  Dkt. 332 (Tetra Tech Letter Brief)
    - o  Dkt. 341 (Lennar, Five Point, and Pennington Letter Brief)
- Case No. 3:13-cv-03835-JD
    - o  Dkt. 425 (Tetra Tech Letter Brief)
    - o  Dkt. 428 (Tetra Tech Letter Brief)

**8.  FIVE POINT AND CP DEVELOPMENT CO., LLC REQUEST TO CONTINUE RULE 30(B)(6) TESTIMONY OF FIVE POINT DESIGNEE EMILE HADDAD**

January 6, 2025

**Position of Five Point and CP Development Co.:**

Two days before Mr. Haddad's deposition, his wife suffered a heart attack and was hospitalized. Notwithstanding his wife's medical emergency, Mr. Haddad appeared to testify on behalf of Five Point and made his best effort to answer questions by counsel after explaining his personal circumstances on the record. However, Mr. Haddad's inability to continue due to his preoccupation and lack of sleep soon became apparent, and the witness and all counsel agreed on the record to continue the deposition and reconvene after Mr. Haddad's wife's condition had stabilized. Pursuant to that agreement, counsel for Five Point contacted counsel for Side Two on December 26, 2024 to offer

January 9th as the witness' first available date. Although this date fell just outside of the fact discovery period, Mr. Haddad's extenuating personal circumstances and the intervening holidays made reconvening before the January 5th cutoff impossible. Although the deposition was properly started and held open before the close of fact discovery, counsel for Side Two has refused to allow Mr. Haddad's portion to be timely reconvened such that Five Point and other parties can question the witness and the deposition can be properly closed. Five Point therefore requests that the Court, in its sole discretion, allow for the Rule 30(b)(6) deposition of Five Point to be continued for the limited purpose of completing Mr. Haddad's testimony.

**Position of Tetra Tech and United States:**

Five Point's request to continue the deposition of its own Rule 30(b)(6) witness after the fact discovery cutoff should be denied. Tetra Tech and the United States immediately adjourned Mr. Haddad's deposition after learning of his family matter. However, Five Point should not be permitted now to serve a purported self-notice to continue Mr. Haddad's Rule 30(b)(6) testimony. First, no good cause exists for Five Point to depose its own witness after the close of fact discovery. Second, Five Point has no authority to force the continuation of a deposition noticed by Tetra Tech and the United States. Third, Five Point's counsel directed the Rule 30(b)(6) witness to withhold information within his personal knowledge about events prior to May 2016 and about CP Dev. Co., which is the subject of a pending motion for sanctions under Rule 37 of the Federal Rules of Civil Procedure (addressed below).

**Filings:**

- Case No. 3:20-cv-01481-JD
    - Dkt. 226 (Five Point and CP Development Co. Letter Brief)
    - Dkt. 227 (Tetra Tech Letter Brief)

## 9. FIVE POINT AND CP DEVELOPMENT CO., LLC REQUEST TO COMPEL TETRA TECH AND UNITED STATES TO PRODUCE ORIGINAL CHAIN OF CUSTODY DOCUMENTS FOR INSPECTION

January 12, 2025

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

**Position of Five Point and CP Development Co.:**

In violation of this Court's order, Tetra Tech has failed to produce for inspection ***original*** chain of custody forms. And Tetra Tech and the United States apparently misled this Court and Five Point as to the location of the originals, wasting significant time and resources. Chain of custody forms are critical to this case because, if a sample's chain of custody is fraudulent or otherwise improperly completed, the sample is considered "worthless." Without properly completed chain of custody forms, there is no way to verify where the samples were taken, when they were taken, or who took them. *See* 20-1481, Dkt. No. 232 at 2. But several witnesses have testified that Tetra Tech's chain of custody documents were forged, falsified, and/or improperly completed. *See id*. Certain chain of custody forms even identify the same individual being at two different field sites collecting different samples at the exact same time, which is obviously a physical impossibility. *See id*. Chain of custody forms are, therefore, extremely important evidence in this case, and to have them properly analyzed, Five Point requires original chain of custody forms—not copies. A complete examination of chain of custody documents cannot be made on copies because, for example, copies do not show indicia of field condition at the time of sampling (i.e., from rain, mud, dirt, etc.), and copies are also insufficient for expert handwriting analysis. *See id*. Of course, the importance of originals is why this Court ordered their production. The United States argued in its letter brief and oral argument that the originals were in Tetra Tech's possession. Dkt. No. 196, pp. 56:22–61:1; e.g., p. 57:13–24 ("When Tetra Tech produced field records, chain of custody, and the like, in photocopy form, some of these photocopies are hard to read. There's a lot of evidence about manipulation, forgery of signatures, things like that. All we asked Tetra Tech for is the ability to inspect the originals of that material."). Tetra Tech's counsel likewise represented the company possesses the originals, just "in different places, Your Honor, depending on the time of the project, what parcel they were done in." *Id*. at p. 59:16–18. ***Those representations were apparently false based on the records made available for inspection***. Tetra Tech provided over 50 boxes stored in its San Diego offices. But nearly all of those documents proved to be copies, not the originals. When Five Point asked for the location of the originals, the United States represented ***for the first time*** that originals were stored in a building on-site at HPNS. With that new information, Five Point immediately arranged to conduct an initial examination, which took place

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

LEGAL02/45491815v1

on January 16, 2025. But, again, nearly all of the documents also turned out to be copies. It now appears that either (1) Tetra Tech and/or the United States is withholding originals, in violation of this Court's order, or (2) there is a spoliation issue because originals were destroyed. Applicable federal law requires the preservations of all field records, including chain of custody documents. *See. e.g*., 36 C.F.R. § 1222.32 ("Agency officials responsible for administering contracts must safeguard records created, processed, or in the possession of a contractor …."). Further, the Federal Facility Agreement for HPNS specifically requires the preservation of all field documents until at least 10 years after the covered work is completed. *See* Deposition Exh. 203 at § 24.1 ("Despite any document retention policy to the contrary, the Parties shall preserve, during the pendency of this Agreement and for a minimum of ten years after its termination, all records and documents contained in the Administrative Record and any additional records and documents retained in the ordinary course of business which relate to the actions carried out pursuant to this Agreement."). Without the original chain of custody records, the jury will not be able to determine whether the documents were properly completed in the field, as required, or whether they were forged in an office. As counsel for the United States explained during the September 12 hearing: "We want to see the condition of them, Your Honor. … There's a lot of testimony that if the COCs aren't filled out right, the sampling is not useful. And so it's a very important part of our case." Dkt. No. 196, pp. 58:25–59:9. Five Point agrees, and respectfully requests that this Court take any action it deems appropriate given the foregoing circumstances, including ordering compliance with its prior order that the original chain of custody documents be produced immediately.

**Position of United States:**

Pursuant to Fed. R. Civ. P. 34, the United States produced electronic copies of chain of custody forms during the course of document discovery, which closed in 2023. The chain of custody forms were produced as maintained in the ordinary course of business and consisted of electronic scanned copies of forms, consistent with the United States' Response to Five Point's Request for Production No. 157. In November 2024, Five Point conducted an inspection of original chain of custody forms in the possession of Tetra Tech. On January 8, 2025, Five Point issued a letter request to the United States, seeking for the first time an inspection of any original chain of custody forms in possession of

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

the U.S. Navy. Although the request was issued to the United States only after the close of fact discovery, and years after first receiving production of the chain of custody forms in the possession of the U.S. Navy, the United States has sought to make the materials available for a reasonable inspection. The physical copies of chain of custody forms are stored in a radiologically-controlled area at HPNS. To scan each individual form, the form must be removed from its corresponding box of samples, provided to Five Point for inspection and scanning in a space adjacent to the radiologically-controlled area, and then returned to the corresponding box. This process must be completed one form at a time to avoid reassociating chain of custody forms with incorrect samples and to maintain the integrity of the ongoing work at HPNS. As there are thousands of chain of custody forms, the United States estimates that completion of the process as originally requested by Five Point would take at least six weeks. On January 16, 2025, the United States provided a site inspection of the storage facility to representatives of Five Point, Lennar, and Tetra Tech so that they may evaluate whether to proceed with a request to inspect and scan. During the inspection, the parties determined that the physical chain of custody forms stored at HPNS are a mix of originals and copies. The United States is willing to work with Five Point to conduct a limited inspection of samples, provided that any inspection would be completed within a week so as not to interfere with the existing case schedule. Any suggestion by Five Point that the United States has violated this Court's prior order is flatly incorrect, as Five Point did not even request inspection of documents in the possession of the United States until after the close of fact discovery.

**Position of Tetra Tech:**

On September 12, 2024, the Court ordered Tetra Tech to "produce for inspection all original chain of custody documents." Dkt. 433. Tetra Tech then made available for Five Point's inspection all original COC documents in its possession, custody, or control. Five Point counsel and its experts reviewed and scanned field documents, including original COC documents, at Tetra Tech EC's corporate offices for three days, November 13-15, 2024. The COC documents were made available in the manner they are stored in the ordinary course of business, which meant they were not segregated from other field documents, including photocopies of COC documents. After multiple reasonable and diligent searches, Tetra Tech is not aware of any additional original COC documents in its possession,

1    custody, or control and thus has fully complied with the Court's Order. Lastly, Tetra Tech objects to

2    Plaintiffs' letter brief on this issue, which was filed after Your Honor's January 5 order instructing

3    that no further responsive briefs should be filed and that discovery issues should be described in this

4    statement. To the extent the Court is inclined to consider Five Point and Lennar's request regarding

5    this important issue, Tetra Tech requests leave to file a 3-page letter brief in response.

6        **Filings:**

7    • Case No. 3:20-cv-01481-JD

8        ○ Dkt. 178 (Five Point Letter Brief)

9        ○ Dkt. 198 at p. 3 (Minute Order)

10        ○ Dkt. 196 at pp. 56:22–61:1 (Hearing Transcript)

11        ○ Dkt. 232 (Five Point Letter Brief)

12    • Case No. 3:13-cv-03835-JD

13        ○ Dkt. 413 (USA Letter Brief Joining Five Point's Letter Brief: Case No. 20-1481,

14           Dkt. 178)

15    • Case No. 3:20-cv-01480-JD

16        ○ Dkt. 189 (Five Point Letter Brief)

17    **10. FIVE POINT AND CP DEVELOPMENT CO., LLC REQUEST TO COMPEL**

18        **TETRA TECH TO PRODUCE BOARD MATERIALS IN RESPONSE TO**

19        **MULTIPLE DOCUMENT REQUESTS**

20    January 12, 2025

21    **Position of Five Point and CP Development Co.:**

22        The Five Point plaintiffs propounded requests for production on Tetra Tech to discover

23    documents concerning Board meetings since 2003 where Tetra Tech's "performance of environmental

24    site investigation and remediation services at HPNS was discussed in any manner." Tetra Tech's

25    production indicates that the Board of Tetra Tech, Inc. only addressed its radiological work at Hunters

26    Point in two board meetings over more than two decades: (1) July 27, 2012; and (2) May 21, 2013, in

27    a single line in a presentation relating to coal to gas conversion project opportunities. In the meet and

28    confer process, Tetra Tech also pointed Five Point to ten entries on its privilege log that reflect a

handful of emails involving in-house counsel at Tetra Tech and various Board members. It defies logic that Tetra Tech, Inc.'s Board, whose members have a legal and fiduciary duty of oversight, never otherwise addressed radiological work performed at Hunters Point, including the discovery of sampling "anomalies," the growing allegations of misconduct and fraud, numerous internal and external investigations, the filing of lawsuits related to defendants' work at the site (which was disclosed in SEC filings beginning in 2018), or the significant fallout ensuing from that work. Five Point therefore requests that this Court compel the production of those requested and highly relevant Board-related materials.

**Tetra Tech Position:**

Five Point served the identical RFP Nos. 100 and 101 on TtEC and TTI. In response to Five Point's hundreds of RFPs, the parties met and conferred regarding e-discovery search terms. The RFPs request materials relating to board minutes where TtEC's "performance of environmental site investigation and remediation services at HPNS" was "discussed." TtEC has no Board of Directors and therefore has no materials responsive to the RFP, as stated in TtEC's March 7, 2022 responses and objections. TTI has a Board of Directors, and it has produced all relevant, non-privileged documents responsive to the RFP—i.e., documents that indicate there was, or that contain, "discuss[ion]" of TtEC's "performance of environmental site investigation and remediation services at HPNS." Where the board minutes merely referenced HPNS without more, they were not produced (nor would they be responsive to the RFP). Counsel for Tetra Tech has provided Five Point a full list of the produced documents and has logged documents withheld for privilege. Five Point's complaints fail to recognize the difference between TtEC and TTI. As TTI clearly stated in its March 7, 2022 responses and objections, "TTI did not perform environmental site investigation and remediation services at HPNS"—that work was done by TtEC. Lastly, Tetra Tech objects to Plaintiffs' letter brief on this issue, which was filed after Your Honor's January 5 order instructing that no further responsive briefs should be filed and that discovery issues should be described in this statement. To the extent the Court is inclined to consider Five Point and Lennar's request regarding this important issue, Tetra Tech requests leave to file a 3-page letter brief in response.

**Filings:**

- Case No. 3:20-cv-01481-JD

  - Dkt. 233 (Five Point and CP Development Co. Letter Brief)

## 11. FIVE POINT REQUEST TO COMPEL TETRA TECH TO FURTHER RESPOND TO FIVE POINT'S REQUESTS FOR PRODUCTION OF DOCUMENTS AND COMMUNICATIONS RELATED TO RELEVANT INSURANCE POLICIES

January 12, 2025

**Position of Five Point and CP Development Co.:**

To date, Tetra Tech has either not produced, refused to confirm that it has produced, or refused to confirm that it will produce, all documents responsive to Five Point's requests pertaining to insurance policies and related communications that concern Tetra Tech's work at HPNS. In their initial Rule 26 disclosures in 2021, Tetra Tech failed to identify insurance policies that were potentially relevant to this litigation, despite Five Point's subsequent and repeated requests that Tetra Tech do so. Mere days before a May 2024 hearing before this Court, Tetra Tech abruptly amended its initial Rule 26 disclosures to identify, for the first time in nearly three years, numerous insurance policies that may be liable to satisfy all or part of a possible judgement in this case. Tetra Tech now contends they have supplied the insurance policies and tenders that they believe apply to Five Point's claims. But Five Point did not request Tetra Tech's assessments of their insurance policies; Five Point requested Tetra Tech's insurance policies. Five Point also requested Tetra Tech's communications related to those policies in conjunction with claims regarding Tetra Tech's work at Hunters Point. Having denied that there was potentially applicable insurance for so long, Five Point has no certainty that this information from Tetra Tech is now complete or correct. As a potential third-party beneficiary of any applicable insurance policy, Five Point must understand if Tetra Tech has insurance which may be liable to satisfy all or part of a possible judgment in this case, as well as the precise framework underlying Tetra Tech's coverage as it relates to Five Point's lawsuit against Tetra Tech. Five Point has the right to make its own independent judgment about whether Tetra Tech's insurance policies provide coverage for the claims articulated in the complaint, particularly since its claim for equitable indemnification is likely to have triggered coverage. Indeed, if the potentially applicable insurance policies had previously and

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

1  accurately been disclosed to Five Point prior to the spring of 2024, Five Point would have sought

2  discovery related specifically to those policies and could have, among other things, better identified

3  the appropriate custodians to ensure that any additional relevant communications to insurers on Tetra

4  Tech's Hunters Point work could have been timely found. Five Point thus respectfully requests that

5  this Court compel Tetra Tech to provide complete responses to Five Point's Requests for Production

6  of Documents to Tetra Tech, EC, Set Four, Nos. 475 to 479 and to Tetra Tech, Inc., Set Four, Nos.

7  471 to 475.

8      **Position of Tetra Tech:**

9      Five Point seeks "(1) insurance policies potentially applicable to Tetra Tech's work at Hunters

10  Point, (2) correspondence between Tetra Tech and its insurers on coverage for Hunters Point claims

11  (including denials, acceptances of defense, and reservations), and (3) Directors & Officers coverage."

12  As to number (1), Five Point has all policies under which an insurer may be liable to satisfy all or part

13  of a possible Five Point judgment. That is all that is required by Federal Rule of Civil Procedure 26.

14  Tetra Tech's broker, Aon, also produced all policies in its possession, custody or control related to

15  Hunters Point, going back to as far as 2000—a far broader set of policies than required by Rule 26.

16  Nothing more is required. As to number (2), the Tetra Tech parties produced all communications with

17  their insurers that relate to any policies under which an insurer may be liable to satisfy all or part of a

18  possible judgment. This production has been, and continues to be, supplemented as additional

19  communications are sent or received. Five Point is not entitled to obtain communications relating to

20  policies that do not provide coverage or potential coverage for Five Point's claims—such policies and

21  communications are clearly outside the scope of Rule 26. Nevertheless, Aon produced many additional

22  communications between the Tetra Tech parties and insurers relating to Hunters Point claims other

23  than the Five Point claim. Nothing more is required. As to number (3), Five Point did not bring any

24  claims against the officers and directors of the Tetra Tech parties. Directors & Officers policies are

25  not relevant. Lastly, Tetra Tech objects to Plaintiffs' letter brief on this issue, which was filed after

26  Your Honor's January 5 order instructing that no further responsive briefs should be filed and that

27  discovery issues should be described in this statement. To the extent the Court is inclined to consider

28  Five Point and Lennar's request regarding this important issue, Tetra Tech requests leave to file a 3-

31

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

page letter brief in response.

**Filings:**

- Case No. 3:20-cv-01481-JD

    o Dkt. 234 (Five Point Letter Brief)

### 12. LENNAR, FIVE POINT, CP DEVELOPMENT CO., LLC, AND PENNINGTON REQUEST TO OVERRULE HUNDREDS OF ASSERTIONS OF PRIVILEGE AT EACH OF THREE DEPOSITIONS, AND ORDER THE WITNESSES TO RETURN FOR EXAMINATION

January 12, 2025

**Position of Lennar, Five Point, CP Development Co., and Pennington:**

Tetra Tech has asserted hundreds of meritless and tactically selective privilege objections, asserting that virtually any actions taken by Tetra Tech following the publication of its 2014 anomalous soil samples report were directed by counsel and are therefore cloaked by privilege. This includes communications that Tetra Tech had with third-party federal and state regulators, and even includes the bases for public statements it made defending its work at Hunters Point. Throughout the course of its 30(b)(6) depositions, the Tetra Tech entities instructed its corporate witnesses not to answer virtually any Plaintiffs' deposition questions about allegations of fraud at Hunters Point, except for questions about the conduct of the two individuals this Court sentenced to prison. Tetra Tech contends its 2012 self-investigation into fraudulent soil-swapping by Stephen Rolfe and Justin Hubbard in 2011 resolved all allegations of misconduct, and that it committed no further misconduct after 2012. It only allowed its corporate representatives to answer questions serving that narrative. But Plaintiffs contend the 2012 self-investigation was a whitewash, and regulators, including the EPA, Navy, DTSC and CDPH seemed to agree. After publication of Tetra Tech's 2014 report, regulators brought forth additional concerns of fraud which Tetra Tech never addressed. In 2017, the United States called that self-investigation into question with allegations of far broader misconduct that began before 2011 and continued well after 2012. Tetra Tech denies those allegations, asserting it investigated them, too, and found it had done nothing wrong. Yet Tetra Tech instructed its witnesses not to answer any questions regarding the factual bases for those denials. Tetra Tech thereby

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

improperly used privilege assertions as "both a sword and a shield" to block hundreds of questions regarding communications and investigations Tetra Tech completed once additional concerns of fraud were brought forward by regulators. *SNK Corp. of Am. v. Atlus Dream Ent. Co.*, 188 F.R.D. 566, 571 (N.D. Cal. 1999); *see also U.S. v. Sanmina Corp.*, 968 F.3d 1107, 1117 (9th Cir. 2020) ("[V]oluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject.") (internal citation omitted). This even included the basic "who, what, where, when, and how" of its investigation of the government's 2017 allegations, such as whether Tetra Tech spoke to Bill Dougherty (who directed the misconduct), who else it interviewed, what facts Tetra Tech learned to refute the government's allegations, and the facts on which it based its public statements that Rolfe and Hubbard were "rogue employees," and that its work at Hunters Point was otherwise proper. Overwhelming evidence developed in discovery corroborates the United States' 2017 allegations. Tetra Tech's use of the privilege as a sword and a shield – claiming it looked into allegations of misconduct and they are untrue, yet instructing its corporate representatives not to answer questions about them – is improper. Also highly improper, Tetra Tech asserted numerous privilege objections to questions about the factual bases for Tetra Tech's many public statements (in SEC filings, press releases, purported "fact statements," op-eds, and more) concerning its performance at Hunters Point, notwithstanding the obvious fact that these statements were made loudly and publicly, thereby affirmatively waiving any privilege applicable to both the statement and the statement's subject matter. *See Sanmina*., 968 F.3d at 1117. Plaintiffs strongly encourage the Court to review excerpts of the transcripts underlying this motion to get a complete sense as to the gravity and scope of Tetra Tech's misconduct. The Court should overrule Tetra Tech's highly improper privilege objections and order its corporate witnesses to answer questions about the basis for denying their fraudulent conduct; alternatively, the Court should preclude Tetra Tech from offering at trial any evidence of, or argument that, it has facts to refute any of these allegations.

**Position of Tetra Tech:**

Counsel for Tetra Tech properly instructed the witnesses (Mr. Bolt in his personal capacity and as Rule 30(b)(6) designee of TtEC, and Ms. Shoemaker as Rule 30(b)(6) designee for TTI) not to reveal confidential communications with counsel or confidential work performed by or at the direction

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

of counsel after counsel was retained to provide legal advice concerning allegations about TtEC's work at HPNS, including work performed by or at the direction of counsel after DOJ notified TtEC in August 2017 that two former employees had pleaded guilty. During these depositions, Lennar and Five Point attempted to probe those privileged communications and work product, even though the record was clear regarding their privileged nature. Many of their questions explicitly inquired into "investigations" that TTI or TtEC undertook in response to DOJ's allegations. When the witness followed the instruction not to reveal privileged communications or attorney work product, counsel posed a pre-prepared set of questions that obviously were designed to do nothing more than to draw further instructions, such as questions about what conclusions were reported to management or the TTI board of directors. For example, Andy Bolt was asked about the investigation undertaken after receiving a DOJ presentation in August 2017, in which the DOJ informed TtEC that TtEC managers were the subject of a criminal investigation. *See, e.g.*, A. Bolt Dep. Tr. 567:23-568:7. Lennar repeatedly asked the same questions regarding this investigation conducted at the direction of counsel, even after Mr. Bolt testified that the investigative actions "were under counsel's direction." *Id.*; *see also, e.g.*, A. Bolt 30(b)(6) Dep. Tr. 26:9-15 ("[O]utside of direction from counsel, um, we did no independent investigation."). Ms. Shoemaker, too, was repeatedly asked the same questions regarding the privileged investigation, drawing the same instructions. *See, e.g.*, L. Shoemaker 30(b)(6) Dep. Tr. 183:9-188:16 (declining to answer questions regarding TTI's response to the NRC's investigation regarding alleged soil falsification, because of the "privileged nature of that type of conversation"); 279:12-300:15 (same as to grand jury investigation). The "investigation was predominantly for a legal purpose," and, even where non-lawyers were involved, its contents are "confidential, just as if [counsel] had sent a legal assistant to interview the employees on her behalf in anticipation of litigation." *AMCO Ins. Co. v. Madera Quality Nut LLC*, 2006 WL 931437, at *7 (E.D. Cal. Apr. 11, 2006); *see Davies v. Broadcom Corp.*, 130 F. Supp. 3d 1343, 1353 (C.D. Cal. 2015) (attorney-client privilege "extends to interviews conducted by non-attorneys at the behest of attorneys" (citing In re Kellogg Brown & Root, Inc., 756 F.3d 754, 758 (D.C. Cir. 2014))); *see In re Kellogg*, 756 F.3d at 758 ("[C]ommunications made by and to non-attorneys serving as agents of attorneys in internal investigations are routinely protected by the attorney-client privilege."); *Admiral Ins. Co. v. U.S. Dist.*

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

*Ct. for Dist. of Ariz.*, 881 F.2d 1486, 1495 n.8 (9th Cir. 1989) (citing case concluding that "interviews of Hartz employees conducted by the individuals carrying out the investigation are protected by the attorney-client privilege," where "Harz had ordered its in-house counsel to conduct" an "investigation of wrongdoing"). That the investigation was conducted solely in response to a DOJ investigation confirms its predominant legal purpose, and Lennar suggests no other basis for the 2017 investigation. Lennar's attempt to recast the details of counsel's investigation as nonprivileged "facts" should be rejected, and its request should be denied. Moreover, Lennar's charge that Tetra Tech has "selectively" invoked privilege is false. Tetra Tech has not asserted privilege over its 2014 Report into anomalous soil samples for the simple reason that that was not a privileged, counsel-led investigation. TtEC performed that investigation in conjunction with the Navy and the Navy shared the 2014 Report contemporaneously with Lennar. It is proper—not "selective"—to distinguish between privileged and non-privileged investigations when instructing a witness. Lastly, Tetra Tech objects to Plaintiffs' letter brief on this issue, which was filed after Your Honor's January 5 order instructing that no further responsive briefs should be filed and that discovery issues should be described in this statement. To the extent the Court is inclined to consider Five Point and Lennar's request regarding this important issue, Tetra Tech requests leave to file a 3-page letter brief in response.

**Filings:**

- Case No. 3:20-cv-01485-JD

  - Dkt. 287 (Lennar, Five Point, CP Development Co., and Pennington Letter Brief)

**13. FIVE POINT AND CP DEVELOPMENT CO., LLC REQUEST TO COMPEL TETRA TECH TO PROVIDE RESPONSES TO FIVE POINT'S INTERROGATORIES, SET SEVEN AND CP DEVCO'S INTERROGATORIES, SET THREE**

January 12, 2025

**Position of Five Point and CP Development Co.:**

For a simple and flawed reason, Tetra Tech refuses to respond to Plaintiffs' interrogatories. It claims Five Point and CP DevCo exceeded the 25 permissible interrogatories allowed per "party" under Rule 33(a)(1), asserting that Five Point and CP DevCo together are only allotted 25

interrogatories in total. Not so. Before they refused to respond, Five Point had only previously served 18 interrogatories on Tetra Tech, and Five Point served seven interrogatories on December 4, 2024, for a total of 25 permissible interrogatories. CP DevCo had previously served four interrogatories on Tetra Tech, and CP DevCo served 17 interrogatories on December 4, 2024, for a total of 21 interrogatories. Neither Five Point nor CP DevCo exceeded the 25 interrogatories permitted per "party" under Rule 33(a)(1). The Case Management Order requires the parties adhere to the Federal Rules of Civil Procedure and Local Rules for written discovery. Five Point and CP DevCo are different parties who enjoy individual entitlements under the applicable rules. These interrogatories concern highly relevant topics including, but not limited to, the following: the timeframe and extent of the fraud at HPNS, Tetra Tech's noncompliant, forged, and fraudulently altered chain of custody forms, communications with Mr. Rolfe and Mr. Hubbard, the reasons Tetra Tech contends caused delays in the transfer of parcels on Phase II, information regarding Tetra Tech's management's role in Mr. Rolfe's and Mr. Hubbard's motivation for substituting "clean" soil for potentially contaminated soil, and Tetra Tech's failure to fully investigate the fraud at Hunters Point and address the data manipulation found in the Final Status Survey Reports that were submitted to the Navy and EPA during Tetra Tech's internal investigation. Moreover, Tetra Tech's argument is flawed because it has treated Five Point and CP DevCo as separate entities for purposes of its own offensive discovery. It has served 37 total interrogatories – 23 on Five Point and 14 on CP DevCo. Plaintiffs have duly answered those interrogatories. Five Point respectfully asserts that Tetra Tech should, therefore, be required to play by their own rules and be compelled to answer these interrogatories.

**Position of Tetra Tech:**

Under the Case Management Order, the parties agreed "to proceed under the limits provided in the Rules of Civil Procedure and Local Rules" with respect to interrogatories. Federal Rule of Civil Procedure 33(a)(1) permits a party to serve a maximum of 25 interrogatories. CP Dev. Co. and Five Point Holdings, LLC, have filed a single complaint, raise identical claims, and are represented by the same counsel. Consequently, CP Dev. Co. and Five Point Holdings, LLC, are treated as one party for the purpose of issuing interrogatories and are limited to a collective total of 25 interrogatories. S*ee Gaby's Bags v. Mercari*, 2021 WL 857695, at *1 (N.D. Cal. Mar. 8, 2021) ("Where separate parties

are represented by the same counsel and are acting in unison, they may be treated as one party for purposes of the limit on interrogatories." (quoting *Stiles v. Walmart*, 2020 WL 264420, at *4 (E.D. Cal. Jan. 17, 2020))). CP Dev. Co. and Five Point Holdings, LLC, sought to avoid that requirement by collectively serving 46 interrogatories on TtEC. Because CP Dev. Co. and Five Point Holdings, LLC, collectively exceeded the interrogatory limits set forth in Rule 33, TtEC was required to object to all the interrogatories rather than selectively answering only some. *See* 8B Fed. Prac. & Proc. Civ. § 2168.1 (3d ed.) ("When a party believes that another party has asked too many interrogatories, it should object to all the interrogatories or file a motion for a protective order. It may not answer some and object to the ones to which it does not want to respond."); *see also FormFactor, Inc v. Micro-Probe, Inc*., 2012 WL 1575093, at *8 (N.D. Cal. May 3, 2012). Five Point's letter brief on this issue refers to Tetra Tech issuing separate interrogatories to Five Point Holdings, LLC, and CP Dev. Co., but omits the fact that many of those interrogatories were ***identical*** and the two entities' responses were also identical. In fact, Tetra Tech carefully served only 25 unique interrogatories on the two parties: Tetra Tech served 23 interrogatories on Five Point Holdings, LLC, and 14 interrogatories on CP Dev. Co., with only 2 of the latter set being unique to CP Dev. Co. and the other 12 being identical to interrogatories served on Five Point. Finally, Five Point's letter brief on this issue falsely represents that CP Dev. Co. and Five Point Holdings, LLC "have exceeded the 25-interrogatory limit by only 11 interrogatories" as to Tetra Tech, when in fact they have exceeded that limit by 21 interrogatories. In any event, no exceedances are permitted. Lastly, Tetra Tech objects to Plaintiffs' letter brief on this issue, which was filed after Your Honor's January 5 order instructing that no further responsive briefs should be filed and that discovery issues should be described in this statement. To the extent the Court is inclined to consider Five Point and Lennar's request regarding this important issue, Tetra Tech requests leave to file a 3-page letter brief in response.

**Filings:**

- Case No. 3:20-cv-01481-JD

  o Dkt. 238 (Five Point Letter Brief and CP Development Co.)

**14. FIVE POINT AND CP DEVELOPMENT CO., LLC REQUEST TO COMPEL**

**UNITED STATES TO FULLY RESPOND TO FIVE POINT'S INTERROGATORIES,**

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

**SETS SEVEN AND EIGHT**

January 12, 2025

**Position of Five Point and CP Development Co.:**

Like Tetra Tech, the United States refuses to respond to the above interrogatories because it claims Five Point and CP Development Co. LLC ("CP DevCo") are only entitled to serve a combined 25 interrogatories as "nominally distinct entities," further claiming that with these interrogatories, Plaintiffs are over the permitted 25 interrogatories allowed per "party" under Rule 33(a)(1) by six interrogatories. However, Five Point only previously served 16 interrogatories, and Five Point has recently served nine interrogatories, totaling 25 permitted interrogatories allowed to each "party" under Rule 33(a)(1) and the Case Management Order ("CMO"). CP DevCo has only served six interrogatories on the United States in this litigation, well within the 25 allowed interrogatories prescribed per party under Rule 33(a)(1) and the CMO. In addition, the United States should be compelled because it has treated Five Point and CP DevCo as separate parties when it propounded a total of 50 interrogatories (25 on Five Point and 25 on CP DevCo). Significantly, these interrogatories address key positions taken by the United States in this litigation central to Five Point's claims and the United States' drastic shift in its litigation position regarding its characterization of Tetra Tech's fraud, which Tetra Tech has made clear that it "does not plan to contend…that Tetra Tech's fraudulent course of conduct has caused substantial disruption, uncertainty, and delay in the plan to remediate and transfer Hunters Point to the City and County of San Francisco for redevelopment, as well as fear in the community regarding the effects of any continued contamination at the site." United States' Amended Resp. to Interrogatory No. 24 (internal quotes omitted). The government's 180-degree reversal in position concerning Tetra Tech's fraud at Hunters Point sharply raises the importance of the United States' responses to these interrogatories because, as the Court is aware, the United States has taken the staunch position that Tetra Tech's fraud was real and justifies a 20-year delay in the transfer of Phase 2 of the shipyard parcels, at costs of millions of dollars of taxpayer funds. See Dkt. 372, United States' Second Amended Complaint. However, upon recently announcing that it has reached some unknown and unverified settlement agreement with Tetra Tech, the United States' case has disappeared, and the United States is now taking the position that Tetra Tech did not commit any

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

LEGAL02/45491815v1

real fraud, an apparent belated shift in strategy designed to protect the United States from Plaintiffs' claims of negligent oversight. For these reasons, the Court should compel the United States to provide fulsome, substantive responses to Five Point's interrogatories, sets seven and eight.

**Position of the United States:**

Plaintiffs served 31 interrogatories on the United States, in excess of the 25 permitted by Federal Rule of Civil Procedure 30. Plaintiffs assert that Five Point Holdings and CP Dev. Co. are each entitled to 25 interrogatories, for a total of 50 interrogatories. Five Point Holdings and CP Dev. Co., however, are only nominally distinct corporate entities, and should be treated as one party subject to a single 25 interrogatory limit for discovery. *See Gaby's Bags v. Mercari*, 2021 WL 857695 (N.D. Cal. Mar. 8, 2021) ("Where separate parties are represented by the same counsel and are acting in unison, they may be treated as one party for purposes of the limit on interrogatories."); *see also In re Xyrem (Sodium Oxybate) Antitrust Litig*., 2023 WL 5058889, at *2 (N.D. Cal. July 7, 2023). Plaintiffs complain that the United States separately served interrogatories on Five Point and CP Dev. Co., and that the number of interrogatories served to both entities combined exceed the 25-interrogatory limit. However, "no rule prohibits one party from collectively serving the same set of interrogatories on multiple adversaries, particularly where, as here, those adversaries have common interests and common representation." *Magnesium Elektron N. Am., Inc. v. Applied Chemistries, Inc*., 2019 WL 7578395, at *2 (D. Mass. July 26, 2019). Moreover, if Plaintiffs believe the United States exceeded its interrogatory limits, its remedy was to object on that basis and seek a protective order; Plaintiffs cannot unilaterally grant themselves more interrogatories as a remedy. Finally, Plaintiffs argue that even if it were over the interrogatory limit, additional interrogatories are justified due to the settlement in the False Claims Act case. Plaintiffs do not explain how the United States' settlement relates to their contentions and burden of proof in their case against the United States or the Tetra Tech Defendants.

**Filings:**

- Case No. 3:20-cv-01480-JD
  - Dkt. 191 (Five Point and CP Development Co. Letter Brief)

**15. FIVE POINT AND CP DEVELOPMENT CO., LLC REQUEST FOR PRODUCTION OF DOCUMENT CLAWED BACK DURING ANDY BOLT DEPOSITION**

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

January 13, 2025

**Position of Five Point and CP Development Co.:**

During his deposition, Andy Bolt, President of TTEC, claimed that he could not recall much about his company's databases. Five Point introduced a 2016 letter that the Navy sent him requesting those databases, and an email that an employee sent him reporting discrepancies in those databases. Failing to refresh Bolt's memory, Five Point sought to introduce the email at issue here. In 2019, Bolt sent the email, attached the 2016 Navy letter, to two non-attorney employees. Tetra Tech then clawed the email back, improbably claiming it was protected by attorney-client and work-product privilege. The work-product doctrine states that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). As Your Honor has explained, while "it is certainly true that a document need not be prepared personally by an attorney to qualify as work product[,] . . . [t]he fact that the withheld documents do not involve any attorneys is a useful sign, in conjunction with other indicators, that they are not protected work product." *Largan Precision v. Genius Elec. Optical*, 2015 U.S. Dist. LEXIS 2072, at *10-11 (N.D. Cal. Jan. 8, 2015). Here, like in *Largan Precision*, no attorneys were copied on the disputed email, and Tetra Tech does not claim that direction from counsel was referenced therein. In support of its work-product assertion, Tetra Tech has stated only that the email was sent after Hunters Point-related litigation had begun. But, as Your Honor has recognized, that fact alone is insufficient to establish work-produce privilege; otherwise, parties would have "open-ended and unilateral power to suppress documents discussing" relevant matters "starting from [that] date" and "stretching into the indefinite future." *Largan Precision*, 2015 U.S. Dist. LEXIS 2072 at *27. This email, therefore, cannot be protected by Tetra Tech's thin assertion of work-product privilege. The Ninth Circuit, meanwhile, employs an eight-part test to determine whether communications should be protected by attorney-client privilege. *See* 3:20-cv-01481-JD, Dkt. 239 at 2-3. As to the first three prongs of this test, there has been no claim that Bolt sought legal advice from his non-attorney employees. Attorney-client privilege may sometimes apply to communications between non-attorneys when they convey legal "analysis or opinion," or involve the "transmission of legal advice," but Tetra Tech does not claim that happened here. See *id*. They only claim the email was sent "at direction of

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

counsel for the purpose of providing legal advice of [ ] outside counsel." *Id.* As to the other prongs, there is no indication that the disputed email contained information to be kept in confidence—on the contrary, if the email was sent responsive to a Navy letter that requested certain information, and Tetra Tech properly provided that information, then the email was sent to ensure the opposite: disclosure. The attorney-client privilege must be strictly construed, and Tetra Tech has failed to meet their burden here. *See* cites at *id.* Five Point, therefore, respectfully requests that this Court order Tetra Tech to produce the clawed-back email and any documents sent in response to it, and permit the re-examination of Andy Bolt.

**Tetra Tech Position:**

The document clawed back at Mr. Bolt's deposition related to the preparation of Tetra Tech's legal defenses, conducted at the direction of Tetra Tech's then-outside counsel, Hanson Bridgett, following the United States' intervention in the *qui tam* lawsuit in January 2019. Contrary to Five Point's assertion, Tetra Tech was not preparing an answer in 2019 to a 2016 Navy letter. Instead, Tetra Tech was preparing its legal defenses to claims brought against it by the United States. Work undertaken for that specific purpose, including the email that is the subject of Five Point's letter brief, was done at the instruction of counsel. The timing of these events could not be clearer. The United States filed its complaint on January 14, 2019. The privileged email at issue was sent two weeks later on January 31, 2019. The Tetra Tech parties would submit the clawed-back document, as well as the email from Hanson Bridgett that prompted the communication, for in-camera review upon the Court's request. Lastly, Tetra Tech objects to Plaintiffs' letter brief on this issue, which was filed after Your Honor's January 5 order instructing that no further responsive briefs should be filed and that discovery issues should be described in this statement. To the extent the Court is inclined to consider Five Point and Lennar's request regarding this important issue, Tetra Tech requests leave to file a 3-page letter brief in response.

**Filings:**

- Case No. 3:20-cv-01481-JD

    o Dkt. 239 (Five Point and CP Development Co. Letter Brief)

**DISPUTES INITIATED BY SIDE TWO**

**16. TETRA TECH MOTION TO COMPEL FIVE POINT TO PRODUCE DOCUMENTS WITHHELD PURSUANT TO CONSULTING AGREEMENT**

November 5, 2024

**Position of Tetra Tech:**

The Court should compel Five Point and its environmental consultant, Geosyntec, to produce over 2,000 documents spanning the period 2011-2022 that Five Point has withheld and caused Geosyntec to withhold on the unsubstantiated basis that they were created pursuant to "privileged consulting agreements." To avoid dismissal on time-bar grounds, Five Point asserts that it was not aware of its claims until May 2018. But Five Point is asserting a "consultant" privilege to hide documents that contradict that narrative, including, e.g., documents from October 2014 and April 2015 that are being withheld on work product grounds and whose log descriptions refer to "Tetra Tech fraud" and to "advice re: review of HPNS environment condition" in the context of "ongoing or anticipated litigation." The record reflects that Five Point's environmental consultants regularly attended meetings with the Navy and the City at which there was discussion of the allegations against TtEC and of the resulting delay to the development of HPNS. Five Point waived its claim of "consultant" privilege by declining to substantiate it. Five Point has refused even to turn over the consulting agreement that it says created the privileged consulting arrangement, even though information about the purpose of an engagement is not itself privileged. In any event, there is no environmental-consultant privilege, so facts that Geosyntec perceived when providing environmental advice to Five Point are not privileged. Finally, Five Point has made no showing that its environmental consultants' work was essential to permit counsel to provide legal advice.

**Position of Five Point and CP Development Co.:**

In accordance with the Court's Standing Order, Five Point has not responded to this discovery letter brief because the Court has not yet invited a response. However, no further responses to these discovery requests are warranted. Tetra Tech is not entitled to privileged documents authored by and evidencing or involving communications with Five Point's environmental consultant, Geosyntec Consultants, Inc. and/or its principal contact at Geosyntec, Randy Brandt. The written consultant

agreement governing the relationship between Geosyntec and Attorneys for Five Point is privileged because it contains extensive and substantive legal strategy in outlining the work that counsel for Five Point directed Geosyntec to undertake, including work product prepared in anticipation of litigation. The consulting agreement in question was executed by Geosyntec directly with counsel, and it outlines legal strategy in detail. It is appropriately withheld as privileged. Attorney client communications and documents prepared pursuant to, or under, the consulting agreement are properly withheld as privileged and logged. Neither Five Point nor Geosyntec has waived this privilege, nor do they intend to. Non-privileged consulting agreements between Geosyntec and CP Dev Co have been produced. Five Point and Geosyntec have both produced a large number of documents that were not privileged and fell outside of the bounds of Geosyntec's privileged consulting work. Five Point has not withheld all Geosyntec materials. Rather, it took considerable efforts to parse through voluminous records involving Geosyntec and properly produced those that were not privileged. Tetra Tech and the United States had the opportunity depose Mr. Randy Brandt, a principal and Geosyntec, as to non-privileged facts. Plaintiffs have no further production obligations.

**Filings:**

- Case No. 3:20-cv-01481-JD
    - Dkt. 207 (Tetra Tech Letter Brief)

## 17. TETRA TECH AND UNITED STATES REQUEST TO COMPEL FIVE POINT TO DISCLOSE FACTUAL EVIDENCE RELATING TO ITS DAMAGES CLAIM

November 6, 2024

**Position of Tetra Tech and United States:**

The Court should compel Five Point to supplement its interrogatory responses (TtEC Interrogatory No. 4 and United States Interrogatory No. 10) and its Rule 26(a)(1)(a)(iii) initial disclosures to provide the factual evidence on which it bases its $2.5 billion damages claim. Specifically, Five Point must provide the required computation of each category of alleged damages and the evidence on which each calculation is based, including (1) facts that demonstrate that Five Point suffered "substantial economic and reputational harm" as a result of the actions alleged in the complaint (TtEC Interrogatory No. 4); (2) for each category of damages Five Point seeks, the amount

of damages including (i) when the damages accrued; (ii) the specific acts or omissions that caused such alleged damages; and (iii) all persons having knowledge of such alleged facts (USA Interrogatory No. 10). Five Point continues to stand on a prematurity argument, even though fact discovery has closed. Five Point also mistakenly asserts that Defendants are seeking expert discovery, when in truth they seek only the necessary factual evidence, not expert opinions. *Cf. Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.*, 306 F.R.D. 276, 279 (N.D. Cal. 2015) ("wait until we serve our expert report" is not a valid response). It is not sufficient for Five Point to provide, as it has, non-exhaustive lists of general categories of damage allegedly suffered by Five Point "and/or related corporate entities. Immediate relief is required, as Defendants face continuing prejudice by not having this information mere weeks prior to the upcoming expert disclosure deadline.

**Position of Five Point and CP Development Co.:**

In accordance with the Court's Standing Order, Five Point has not responded to this discovery letter brief because the Court has not yet invited a response. However, no further responses to these discovery requests are warranted. Tetra Tech's Interrogatory No. 4 is facially overbroad because it requests that Five Point state every single fact demonstrating it has suffered economic and reputational harm. *See, e.g.*, *Anokiwave, Inc. v. Rebeiz*, No. 3:18-cv-00629-JLS-MDD, at *21 (S.D. Cal. Aug. 19, 2019) ("Defendants' contention interrogatories are premature at this stage of discovery in that they seek support for Plaintiff's claim of damages. Additionally, pursuant to Rule 26, because the contention interrogatories seek 'all facts' supporting Plaintiff's allegations, they are overly broad and unduly burdensome on their face"); *Alfaro v. City of San Diego*, Case No.: 3:17-cv-00046-H-KSC, at *3 (S.D. Cal. Sep. 21, 2018) ("Courts will generally find [contention interrogatories] overly broad and unduly burdensome on their face to the extent they ask for 'every fact' [or 'all facts'] which support[] identified allegations or defenses"); *Hernandez v. Best Buy Co., Inc.*, No. 13cv2587-JM(KSC), at *10 (S.D. Cal. Oct. 24, 2014) ("contention interrogatories should not require the answering party to provide a narrative account of its case"); *Aldapa v. Fowler Packing Co.*, No. 1:15-cv-00420-GEB-SAB, at *10 (E.D. Cal. Oct. 29, 2015) ("Each and every fact interrogatories pose problems for a responding party and a reviewing court. Parties are not tasked with laying out every jot and tittle of their evidentiary case in response to interrogatories."). Moreover, Five Point provided a complete answer to the

interrogatory identifying each category of damages that have impacted the company with an explanation of how those damages occurred. On September 17, 2024, Tetra Tech sent a meet and confer letter demanding that Five Point supplement its response to Interrogatory No. 4 *to answer 56 additional questions* that Tetra Tech believed should be encompassed in Five Point's supplemental response. By way of example, Tetra Tech demanded that Five Point explain "what revenue has Five Point received;" "what carrying costs Five Point has incurred;" "what phasing, timing, and manner did Five Point contemplate in respect of the redevelopment of HPNS and CP;" "what increased costs did Five Point suffer;" "what interest rate will Five Point now pay on bonds to fund redevelopment of the Shipyard;" "when will the statutory time limitations relating to time for establishing loans, advances, and indebtedness expire;" "when will the effectiveness of the redevelopment plan expire;" "which employees did Plaintiff and/or related corporate entities terminate;" and "which contracts did Plaintiff and/or related entities terminate," among many other questions. Tetra Tech's letter demanding that Five Point answer 56 additional questions it believed were subsumed in Interrogatory No. 4 confirmed the burdensome nature of this interrogatory. The interrogatory also seeks premature expert discovery related to Five Point's damages. *See Bercut-Vandervoort v. MTL*, No. C 05-5122 JF (RS), at *5 (N.D. Cal. Dec. 13, 2006); *Autoopt Networks, Inc. v. Karani*, No. 17-cv-04714-HSG (TSH), at *4 (N.D. Cal. Sep. 20, 2018); *Avago Technologies U.S., Inc. v. Emcore Corp.*, No. C08-03248, at *4 (N.D. Cal. Dec. 18, 2009). Finally, damages evidence will be presented through expert testimony, and expert damages analysis will be served on February 7, 2025. Tetra Tech may depose Plaintiffs' expert and ask questions about those damages at that time.

**Filings:**

- Case No. 3:20-cv-01481-JD

  o Dkt. 208 (Tetra Tech and United States Joint Letter Brief)

### 18. TETRA TECH AND UNITED STATES REQUEST TO COMPEL FIVE POINT TO DISCLOSE FACTUAL EVIDENCE RELATING TO ITS DAMAGES CLAIM

November 6, 2024

LEGAL02/45491815v1

1    **Position of Tetra Tech and United States:**

2    The United States and Tetra Tech submitted a joint letter brief and filed identical briefs in case

3    Nos. -1480 and -1481.  *See above* No. 17 for the United States and Tetra Tech's position.

4    **Position of Five Point and CP Development Co.:**

5    In accordance with the Court's Standing Order, Five Point has not responded to this discovery

6    letter brief because the Court has not yet invited a response. However, no further responses to these

7    discovery requests are warranted. The United States's Interrogatory No. 10 is compound because it

8    includes multiple sub-parts that inquire into discrete areas of information. Under Fed. R. Civ. P. 33(a),

9    while interrogatories may contain "subparts," they must be "discrete." "The Federal rules do not define

10   what 'discrete subparts' means, but 'courts generally agree that 'interrogatory subparts are to be

11   counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily

12   related to the primary questions.'" *Landmark Screens, LLC v. Morgan, Lewis Bockius LLP*, No. C08-

13   02581, at *3 (N.D. Cal. Oct. 7, 2009). Interrogatory No. 10 requests that "for each category of damages

14   you are seeking in this action, set forth in detail the amount of damages . . ."  Thus, the primary

15   question is the amount of damages. However, the interrogatory contains sub-parts that are not related

16   to this primary question, but rather address separate aspects of the damages claimed: (1) "when

17   damages accrued;" (2) "the specific act(s) or omission(s) that caused such alleged damages;" (3) the

18   identity of "persons having knowledge of such alleged facts;" and (4) "formulas or metrics used to

19   calculate your claims damages."  These sub-parts are not "logically or factually subsumed" within the

20   primary question regarding the "amount of damages" Five Point is claiming. *Landmark Screens*, No.

21   C08-02581, at *3.  Furthermore, the USA is seeking premature expert discovery by demanding that

22   Five Point provide information regarding "formulas and metrics use to calculate" damages. See

23   *Bercut-Vandervoort v. MTL*, No. C 05-5122 JF (RS), at *5 (N.D. Cal. Dec. 13, 2006) ("[T]he details

24   of how those damages are calculated and the specific documents on which [plaintiff' relies to support

25   those calculations will all be appropriate subjects of expert reports and expert discovery in due

26   course"); *Autoopt Networks, Inc. v. Karani*, No. 17-cv-04714-HSG (TSH), at *4 (N.D. Cal. Sep. 20,

27   2018) ("Quantification of damages is often presented in an expert report"); *Avago Technologies U.S.,

28   *Inc. v. Emcore Corp.*, No. C08-03248 JW (HRL), at *4 (N.D. Cal. Dec. 18, 2009) ("[I]f plaintiffs

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

contend in good faith that certain categories of damages or the methodology used to calculate those damages are properly the subject of expert reports, plaintiffs need not disclose the precise method of calculation at this time.") In fact, the USA conceded this point during the meet and confer teleconference, but makes no mention of that in its letter brief. Finally, damages evidence will be presented through expert testimony, and expert damages analysis will be served on February 7, 2025. The United States may depose Plaintiffs' expert and ask questions about those damages at that time.

**Filings:**

- Case No. 3:20-cv-01480-JD

  - Dkt. 175 (Tetra Tech and United States Joint Letter Brief)

**19. TETRA TECH REQUEST TO COMPEL FIVE POINT TO RESPOND TO INTERROGATORY NO. 18**

November 12, 2024

**Tetra Tech Position:**

Five Point should be compelled to provide a complete response to Tetra Tech's Interrogatory No. 18, which requests Five Point to identify the individuals and entities with which Five Point alleges to have had an "existing and prospective economic relationship"—including their name, place of business, phone number, and primary point of contact—pursuant to Five Point's claims for intentional and negligent interference with prospective economic advantage. Five Point's current evasive, non-exhaustive, one-sentence response states that Five Point has economic relationships with "numerous entities and governmental agencies" "including the City of San Francisco, the City of San Francisco Office of Community Investment and Infrastructure, BCCI Construction, DeSilva Gates Construction, Lennar, other parties to the Disposition and Development Agreement for the Hunters Point Naval Shipyard, as well as prospective land purchasers, contractors, architects, engineers, and future investors of the TIF and CFD bonds." Five Point must provide a complete list of all entities with which it has economic relationships that have been allegedly disrupted and for which it intends to seek damages. Notably, Five Point's objections to the interrogatories were not raised within 30 days and therefore are waived.

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

**Position of Five Point:**

Five Point has responded to the interrogatory at issue. But the interrogatory requests Five Point to identify *any* person or entity with whom Five Point had a relationship that was impacted by Tetra Tech's wrongdoing and fraud at the Hunters Point Naval Shipyard. The breathtaking breadth of the interrogatory makes it difficult to know where to begin. Nevertheless, Five Point listed several relevant entities, including the City of San Francisco, the City of San Francisco Office of Community Investment and Infrastructure, BCCI Construction, DeSilva Gates Construction, Lennar, other parties to the Disposition and Development Agreement for the Hunters Point Naval Shipyard, as well as prospective land purchasers, contractors, architects, engineers, and future investors of the TIF and CFD bonds. Thus, Five Point contends that it has fulfilled any obligation it had to answer this interrogatory, and Tetra Tech's request for relief is meritless.

**Filings:**

- Case No. 3:20-cv-01481-JD

  o Dkt. 210 (Tetra Tech Letter Brief)

## 20. TETRA TECH REQUEST TO COMPEL LENNAR TO DISCLOSE FACTUAL EVIDENCE RE: ITS DAMAGES CLAIM

November 19, 2024

**Tetra Tech Position:**

The Court should compel Lennar to supplement its interrogatory responses (4, 5, and 24) and its Rule 26(a)(1)(a)(iii) initial disclosures to provide the factual evidence on which it bases its damages claim, and on which Lennar's damages expert presumably will rely to formulate their expert opinions. Specifically, Lennar must provide the required computation of each category of alleged damage and the evidence on which each calculation is based, including materials that bear on the nature and extent of the alleged injuries. Lennar supplemented its Rule 26(a)(1)(a)(iii) initial disclosures (but not its interrogatory responses) after Tetra Tech filed its November 19, 2024, letter brief, but Lennar's responses remain deficient. Most problematic, Lennar continues to refer to non-exhaustive lists of "[e]xemplary" documents and "types" of documents on which it may rely. But at this stage, after the close of fact discovery, Tetra Tech is entitled to know the universe of fact evidence on which Lennar

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

relies in support of its damages claim. To be clear, Tetra Tech is not seeking expert evidence, but rather the facts on which Lennar's damages expert presumably will base their opinions. The Rule 30(b)(6) deposition testimony that Lennar witnesses provided in December equally did not make up for the deficiencies in Lennar's written disclosures. When asked about the factual basis for categories of damage referenced in those written disclosures, Lennar's witnesses reverted over and over to the nonresponsive mantra that the written disclosures "speak for themselves." Tr. Vol. II 217:22-25, 220:2-15, 221:5-222:10, 231:20-22, 304:10-305:1. And neither witness could provide details on certain alleged categories of damages. For example, they could not explain how Castlelake's withdrawal caused Lennar any loss, nor even describe the terms of Castlelake's withdrawal. *See, e.g.*, Tr. Vol. I 159:6-160:17; Tr. Vol. II 280:20-283:20. Neither witness could explain how the EB-5 loan program has become less advantageous for Lennar or when the last time was that Lennar even accessed financing from the EB-5 program. Tr. Vol. I 131:8-132:7; Tr. Vol. II 309:23-310:2. Mr. Hochstoeger, who was specifically designated to speak to the factual basis for Lennar's damages claims, also could not say, among other things, (a) when Lennar had anticipated completing the Hillside development, Tr. Vol. II 242:22-243:21, (b) whether Lennar found it more challenging to secure financing for the Hilltop blocks that were not fully constructed as of May 2018, id. 308:17-309:8, or (c) how long the macroeconomic housing boom on which Lennar allegedly missed out lasted or what kinds of units it encompassed, id. 232:4-21. Immediate relief is required, as Tetra Tech faces continuing prejudice by not having this information mere weeks prior to the upcoming expert disclosure deadline.

**Position of Lennar:**

In accordance with the Court's Standing Order, Lennar has not responded to this discovery letter brief because the Court has not yet invited a response. Lennar's discovery responses and disclosures already comply with—and, if anything, exceed—what is required by the Federal Rules and what other parties have provided in this litigation. Tetra Tech asks the Court to compel Lennar to provide (1) supplemental initial disclosures providing the "computation of each category of damage" claimed by Lennar, and (2) "complete responses" to questions that are not asked in Tetra Tech's interrogatories. Lennar told Tetra Tech before Tetra Tech filed its letter brief that Lennar would serve supplemental initial disclosures. Lennar did so. Lennar's supplemental disclosures set forth specific

computations of damages including, for example, Lennar's computations of lost profits and return on investment that led to recorded impairments, a recorded loss on consolidation, and other specific costs and damages. Lennar cited the specific documents upon which each computation is based, including detailed spreadsheets and financial statements, and also provided lists of documents Lennar or its damages expert(s) may rely upon. In response to Interrogatories 4, 5, and 24, Lennar has gone above and beyond what is required by not only responding with detailed factual narratives explaining all the ways Tetra Tech damaged Lennar, but also citing documents the Lennar may rely upon at trial to support its damages (which will be substantiated through expert testimony). Despite providing all this information, Tetra Tech has refused to withdraw its motion. Tetra Tech has cited no authority supporting its position that Lennar must provide an exhaustive list of documents they or their experts may rely upon, something Tetra Tech conceded no Plaintiff in this litigation has done—including Tetra Tech itself in its now-dismissed case against CH2M Hill.

**Filings:**

- Case No. 3:20-cv-01485-JD
    - Dkt. 273 (Tetra Tech Letter Brief)

**21. UNITED STATES REQUEST FOR PROTECTIVE ORDER TO QUASH DEPOSITIONS OF U.S. COUNSEL AND INVESTIGATORS**

November 27, 2024

**FIVE POINT AND CP DEVELOPMENT CO REQUEST TO COMPEL DEPOSITIONS OF FORMER NUCLEAR REGULATORY AGENT BIGONESS, FORMER ASSISTANT US ATTORNEY PHILIP KEARNEY, AND FORMER DEFENSE CRIMINAL INVESTIGATIVE ESRVICE AGENT GEORGE WRIGHT**

**Position of United States:**

The Court should quash the Developers' deposition notices to former AUSA Philip Kearney, former DCIS Investigator George Wright, and former NRC Investigator Jerome Bigoness. Developers seek testimony from these witnesses regarding their knowledge and opinions of "Tetra Tech management's involvement and direction of the misconduct at Hunters Point." *See* 3:20-cv-1485, Dkt. 286. Such testimony is plainly privileged under the attorney work product doctrine. *See Hickman v.*

1   *Taylor*, 329 U.S. 495, 513 (1947) ("Under ordinary conditions, forcing an attorney to repeat or write

2   out all that witnesses have told him and to deliver the account to his adversary gives rise to grave

3   dangers of inaccuracy and untrustworthiness. No legitimate purpose is served by such production.").

4   To the extent Plaintiffs wish to question these witnesses regarding the contexts of Mr. Rolfe's plea

5   agreement or his interview with investigators, those documents themselves have been produced.

6   Plaintiffs' argument that the witnesses must be deposed to ensure admissibility of produced documents

7   is a red herring, as the United States has offered to stipulate to the authenticity and foundation of the

8   criminal interview memoranda. Given the complex privilege issues involved, the cumulative nature of

9   the evidence sought, and the burden on preparing the witnesses, the depositions should be quashed as

10  disproportional to the needs of the case. *See Sec. & Exch. Comm'n v. Pulier*, 2020 WL 8572090, at *3

11  (C.D. Cal. Dec. 29, 2020) (quashing depositions of FBI investigators and AUSAs as "disproportionate

12  to the needs of the case because the burden on the DOJ in preparing these witnesses, including the

13  need to work around the various privileges at play, outweighed any likely benefit").

14          **Position of Five Point and CP Development Co.:**

15          This Court should compel former Nuclear Regulatory Commission Agent Jerome Bigoness,

16  former Assistant United States Attorney Philip Kearney, and former Defense Criminal Investigative

17  Service Agent George Wright to appear and testify at deposition in accordance with properly noticed

18  deposition subpoenas. The United States has refused to produce the witnesses and has filed a Request

19  for Protective Order to Quash Subpoenas. As Messrs. Bigoness, Kearney, and Wright investigated the

20  fraud at HPNS, were present at or conducted interviews of Mr. Rolfe and others involved in the Fraud

21  at Hunters Point, and authored documents that have been used at depositions and will be exhibits at

22  trial, they are uniquely situated to testify regarding statements made by Mr. Rolfe and others working

23  at Hunters Point during their investigation. Of particular note, during his deposition Mr. Rolfe

24  disavowed sworn statements reflected in his plea agreement and EPA investigative report, which he

25  made to the investigators regarding direction and pressure he received from management, including,

26  but not limited to, project manager, Bill Dougherty, to obtain clean dirt in lieu of collecting samples

27  from areas known to be contaminated, and management's knowledge of the fraud at Hunters Point.

28  These depositions are essential for Plaintiffs to fully investigate their claims and definitively refute

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

Mr. Rolfe's recent deposition testimony disavowing portions of his plea agreement and statements made under oath to the federal investigators that project manager, Bill Dougherty, directed him to fabricate soil samples. Indeed, Mr. Rolfe's counsel was paid for by Tetra Tech and asserted countless objections blocking testimony seeking to cross examine the witness regarding these statements. Additionally, Tetra Tech's counsel also claimed a common interest agreement existed and met with Mr. Rolfe, a third party, several times to prepare for the deposition before he recanted his sworn statements. Messrs. Bigoness, Kearney, and Wright will be able to offer eyewitness accounts of the United States' process for ensuring such statements made by Mr. Rolfe were timely and accurately recorded consistent with the government's fact-finding protocols. The United States' overly broad and premature privilege objections should not block the testimony from witnesses uniquely positioned to provide first-hand knowledge about highly relevant, non-privileged conduct and statements collected by federal investigators regarding the fraud at Hunters Point. *See United States v. Christensen*, 801 F.3d 970, 971, 1007 (9th Cir. 2015) ("The claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable."). Plaintiffs respectfully request that the Court order the depositions of Messrs. Bigoness, Kearney, and Wright to be scheduled forthwith on a mutually agreeable date for all parties and the witnesses.

**Position of Lennar:**

The United States seeks to prevent percipient witnesses from testifying about interactions they had with witnesses to Tetra Tech's misconduct at Hunters Point. This includes the witnesses' interactions with Stephen Rolfe, one of the Tetra Tech employees who pleaded guilty to falsifying soil samples at the direction of his supervisors. At his deposition, Mr. Rolfe attempted to walk away from statements he previously made to or in the presence of the witnesses and that are reflected in his plea agreement, in government interviews, in summaries of meetings, at hearings, and in documents the witnesses authored—all of which the United States voluntarily produced. Side One offered to compromise: it would take the deposition solely of Mr. Bigoness, the NRC investigator who was involved in the majority of the interactions with Tetra Tech's employees, in exchange for a stipulation to the admissibility of transcripts, summaries, and reports authored by the witnesses or generated by their investigations. But the United States refused to compromise. Instead, the United

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

States seeks to foreclose the percipient testimony of these witnesses, while simultaneously seeking to exclude from trial the documentary evidence generated by their work. These are percipient fact witnesses with knowledge of Tetra Tech management's involvement in and direction of misconduct at Hunters Point. The United States' only basis for objecting to their depositions is an unsubstantiated privilege objection. Side One has repeatedly reassured the United States that it has no intention of eliciting anything other than factual information possessed by the witnesses by virtue of their interactions with Tetra Tech employees and subcontractors. Should any question call for privileged information, the United States is certainly capable of instructing its witnesses not to answer. Side One Requests that the Court overrule the United States' objection to these depositions and permit the witnesses to testify.

**Filings:**

- Case No. 3:20-cv-01485-JD
  - Dkt. 275 (United States Letter Brief)
  - Dkt. 286 (Lennar Letter Brief)
- Case No. 3:20-cv-01481-JD
  - Dkt. 221 (Five Point, CPD Letter Brief)

**22. TETRA TECH AND UNITED STATES LETTER BRIEF REQUESTING PROTECTIVE ORDER REGARDING BURDENSOME AND IMPERMISSIBLE WRITTEN DISCOVERY**

December 27, 2024

**FIVE POINT AND CP DEVELOPMENT CO. REQUEST TO COMPEL TETRA TECH AND UNITED STATES PROVIDE RESPONSES TO FIVE POINT'S REQUESTS FOR ADMISSION SEEKING TO AUTHENTICATE DOCUMENTS PRODUCED IN THIS LITIGATION**

**Position of Tetra Tech and United States[2]:**

---

[2] Two pending Rule 37 motions are not "discovery disputes" required to be raised by letter brief because, under Civil Local Rules 7-8 and 37-4 8, "[a]ny motion for sanctions, regardless of the sources of authority invoked" must be filed as a formal, noticed motion that follows the format required by Civil Local Rule 7-2 and "accompanied by competent declarations." Nevertheless, because the Rule 37 motions are pending and because Five Point characterizes them as "discovery

1    A protective order should be granted against the 3,783 RFAs served by Five Point. Defendants

2    agree that resolution of authentication at the appropriate time, as specified in the Court's standing

3    order, is in the interest of all parties and the Court. However, these thousands of requests have no

4    bearing on the facts relevant to summary judgment, expert discovery, or trial.  Five Point served the

5    RFAs only to harass Tetra Tech and the United States, and the thousands of RFAs are oppressive,

6    unreasonable, and unduly burdensome under the Federal Rules. Fed. R. Civ. P. 26(c)(1). "[C]ourts

7    routinely disallow requests for admission that run into the hundreds on the grounds that they are

8    abusive, unreasonable, and oppressive." *Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*,

9    2021 WL 4037857, at *8 (E.D. Pa. Sept. 3, 2021). To ascertain the information necessary to respond

10   to the thousands of authentication RFAs, Tetra Tech and the United States would have to review and

11   compile information from voluminous produced records and files (available to all parties) to match up

12   the documents to Five Point's requests. Indeed, many of the requests would require Tetra Tech and

13   the United States to authenticate documents produced by other parties, requiring significant time and

14   expense. As for documents that a party has produced, the authentication RFAs are unnecessary and

15   appear to be intended only to harass because documents produced by a party "are deemed authentic

16   when offered by the party-opponent." *Humphreys v. Regents of Univ. of California*, 2006 WL

17   8459526, at *2 (N.D. Cal. Oct. 18, 2006) (citing *Orr v. Bank of America*, 285 F.3d 764, 777 n.20 (9th

18   Cir. 2002)). No other party in the Hunters Point cases has served authentication RFAs in the manner

19   that Five Point has. The Court should grant a protective order striking the authentication RFAs, or at

20   minimum, requiring Five Point to more reasonably tailor them to potential trial exhibits and granting

21   Defendants additional time to respond, given the sheer volume of the requests.

22   **Position of Five Point and CP Development Co.:**

23   This Court should compel Tetra Tech and the United States (collectively "Defendants") to

24   respond to Five Point's requests for admissions seeking to authenticate records that have been

25   produced in this litigation, which Defendants have refused to respond to altogether and have filed a

26   letter brief regarding Tetra Tech's Protective Order (Dkt. 222). Upon the millions of documents that

27   have been produced in this litigation, Plaintiffs seek for Defendants to authenticate a minuscule

28

disputes," Tetra Tech and the United States summarize their positions in this filing.

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

percentage of documents, all of which Defendants are familiar with because they've been introduced in depositions. Plaintiffs spent time determining the documents that will require authentication for purposes at trial and sought to stipulate with Defendants regarding the authenticity of the documents at issue, but Defendants refused to stipulate or discuss it further. This Court should now compel Five Point's requests for admissions seeking to authenticate records in an effort to streamline efforts at trial regarding the authentication of documents that could otherwise result in wasting countless hours of the Court's time and resources. The requests are not cumulative or designed to harass but are instead to speed up and simplify the process at trial for all parties and to avoid confusion at trial or cause any undue surprise regarding the genuineness of documents Defendants have produced in this litigation. Five Point offered to stipulate to the authenticity of these records but Defendants refused, offering no explanation as to why, nor providing any support for the notion that the documents are not authentic. And if some small number of documents are of concern, Five Point offered to exclude those records from the ones for which an admission is sought. For the foregoing reasons, the Court should compel Defendants to provide substantive responses to Five Point's requests for admissions seeking to authenticate records.

**Filings:**

- Case 3:20-cv-01481-JD

    o Dkt. 222 (Tetra Tech and United States Letter Brief)

    o Dkt. 237 (Five Point, CPD Letter Brief)

    o Dkt. 231 (Five Point, CPD Response to Motion)

**23. TETRA TECH AND UNITED STATES RULE 37 MOTION REQUESTING SANCTIONS FOR NONAPPEARANCE OF PLAINTIFF CP DEVELOPMENT CO., LLC AT 30(b)(6) DEPOSITION**

December 27, 2024

**Position of Tetra Tech and the United States[3]:**

_____

[3] Two pending Rule 37 motions are not "discovery disputes" required to be raised by letter brief because, under Civil Local Rules 7-8 and 37-4 8, "[a]ny motion for sanctions, regardless of the sources of authority invoked" must be filed as a formal, noticed motion that follows the format required by Civil Local Rule 7-2 and "accompanied by competent declarations." Nevertheless, because the Rule 37 motions are pending and because Five Point characterizes them as "discovery

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

The motion for sanctions is not a discovery dispute subject to letter discovery briefs because Defendants' motion seeks evidentiary sanctions rather than discovery relief, and Civil L.R. 7-8 and 37-4(a) require the filing of a noticed motion for any request sanctions. Tetra Tech and the United States have therefore not included a full discussion of the arguments made in the briefing here. As stated in the motion, evidentiary and monetary sanctions are warranted against Five Point and CP Dev. Co. for (1) CP Dev. Co.'s failure to appear at its properly noticed 30(b)(6) deposition, and (2) Five Point's witnesses' refusal, at counsel's improper direction, to testify to their own knowledge of CP Dev. Co. or to events preceding May 2016. The parties agreed on a Rule 30(b)(6) notice addressed jointly to Five Point Holdings and CP Dev. Co. Mot., ECF No. 223 in 20-cv-01481 at 3. CP Dev. Co. then failed to appear, Mot. at 4. The failure to appear is sanctionable under Rule 37 as it was Plaintiff's obligation to appear or move for a protective order. Mot. at 7-8. Plaintiffs' counsel's instruction to the Five Point Holdings witnesses to also not testify to their knowledge prior to 2016 or of CP Dev. Co. is independently sanctionable. Mot. at 9-11. Evidentiary and monetary sanctions are the proper result under Rule 37. Mot. at 11-13.

**Position of Five Point and CP Development Co.:**

The Court should deny Defendants' Motion for Sanctions as a procedurally improper attempt to avoid litigating these actions on their merits. First, Defendants' Rule 30(b)(6) Notice to Five Point and CP Development Co. was facially improper and designed to circumvent the deposition limits of the CMO. The plain language of Rule 30(b)(6) requires that a party "name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity," but not corporations, partnerships, associations, agencies, or other ***entities.*** Fed. R. Civ. P. 30(b)(6). This is consistent with the position Defendants took with respect to the Rule 30(b)(6) notices issued by Side One, with separate notices being issued to Tetra Tech EC, Inc. and Tetra Tech, Inc., and the United States agreeing only to designate witnesses on behalf of the Navy and no other federal agency. Second,

---

disputes," Tetra Tech and the United States summarize their positions in this filing.

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

Defendants created their own prejudice by their defective notice, which they failed to remedy by simply issuing a separate Rule 30(b)(6) notice to CP Development Co. At no point throughout the parties' meet and confer process did CP Development Co. indicate that it would not designate witnesses to testify if served with a proper Rule 30(b)(6) notice—in fact, Defendants were invited to do just that, and refused. Courts, in their discretion, can decline to impose sanctions to "reward improper gamesmanship," particularly where the moving party is "complicit in bringing about" the prejudice it complains of. *See Physicians Healthsource, Inc. v. A-S Medication Sols.*, LLC, No. 12-cv-05105, 2017 U.S. Dist. LEXIS 144701, at *15-16 (N.D. Ill. Sep. 7, 2017) (denying to reward sanctions under Rule 37(c) where the moving party was "largely complains of a problem of its own making"). Third, Defendants seek unwarranted extraordinary relief through moving for evidentiary sanctions instead of moving to compel the deposition of CP Development Co., which is the appropriate vehicle for the relief they seek. A motion to compel is the proper vehicle for relief where "a corporation or other entity fails to make a designation under Rule 30(b)(6)," which is what Defendants allege happened here. *See* Fed. R. Civ. P. 37(a)(3)(B)(ii). Fourth, Defendants' Motion is procedurally improper and violates the Northern District of California's Local Rules, which requires parties to meet and confer for the purpose of attempting to resolve discovery disputes, and this Court's Standing Order, which requires that discovery disputes be brought by three-page letter brief. And finally, all five factors in the five-factor test cited by Defendants in *Multiven, Inc. v. Cisco Sys.*, No. C08-05391 JW (HRL), 2010 U.S. Dist. LEXIS 69557, at *1 (N.D. Cal. June 21, 2010) weigh in favor of denying the Motion, particularly the "key factors" of prejudice and availability of lesser sanctions. Defendants should not be permitted to circumvent the Federal Rules of Civil Procedure, Local Rules, this Court's Standing Order, or the CMO through a defective Rule 30(b)(6) designed to evade the deposition limits governing this litigation. The Motion should be denied.

**Filings:**

- Case No. 3:20-cv-01481-JD

    o Dkt. 223 (Tetra Tech and United States Motion)

    o Dkt. 228 (Five Point, CPD Preliminary Objection)

    o Dkt. 230 (Five Point, CPD Response to Motion)

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

1    • Case No. 3:20-cv-01485-JD

2         ○ Dkt. 285 (Lennar Opposition to Motion)

3    **24. TETRA TECH AND UNITED STATES RULE 37 MOTION REQUESTING**

4    **SANCTIONS FOR NONAPPEARANCE OF FACT WITNESSES**

5    December 27, 2024

6    **Position of Tetra Tech and United States:**

7         The motion for sanctions is not a discovery dispute subject to discovery letter briefs because

8    the motion seeks evidentiary sanctions rather than discovery relief, and Civil L.R. 7-8 and 37-4(a)

9    require the filing of a noticed motion for sanctions. Tetra Tech and the United States have therefore

10   not included a full discussion of the arguments made in the briefing here. As stated in the motion,

11   evidentiary and adverse inference sanctions are warranted. Plaintiffs controlled the appearance of four

12   fact witnesses but refused to produce them or to provide alternative dates for deposition, Mot. 3-4.

13   Each witness is a managing agent under Rule 37. Mot. at 6. Plaintiffs failed to carry their burden in

14   moving for a protective order to quash the depositions. *Id*. Although Plaintiffs complain that the

15   depositions were sought towards the end of fact discovery, they do not dispute that fact discovery was

16   open, or Defendants were entitled to take these depositions. The proper remedy is to (1) preclude Side

17   One from calling the four witnesses at trial or offering their statements in support of claims or defenses,

18   and (2) order adverse inferences against Five Point on the topics for which the four witnesses would

19   have testified. Mot. at 7-9. There is no merit to Lennar's separate arguments that (a) the jury might be

20   unable to keep Lennar and Five Point separate when applying the adverse inference or that (b) Lennar

21   should not be precluded from relying on the four witnesses' testimony. As to point (a), jurors are

22   routinely required to perform much more challenging tasks than applying an adverse inference to some

23   but not all plaintiffs. And as to point (b), Lennar, which is in a joint-defense relationship with Five

24   Point, is a significant shareholder in Five Point, does not suggest that it made any effort to dissuade

25   Five Point's counsel from his path.

26   **Position of Five Point, and CP Development Co.:**

27        Defendants Tetra Tech EC, Inc., Tetra Tech, Inc., and the United States of America's Rule 37

28   Motion is entirely lacking merit, procedurally improper, and misstates the factual record.  The Court

should summarily deny the Motion.  First, Defendants failed to carry their burden and are improperly attempting to classify these nonparties as "managing agents" under Rule 37(d)(1)(A)(i).  This cannot be so.  It is undisputed, and even admitted by Defendants, that three of these nonparties are former officers and employees.  They have not worked for Five Point, or any of its subsidiaries, for over four years, have never worked for CP Dev. Co., and have not had any affiliation with Plaintiffs in over four years.  Additionally, Defendants failed to carry their burden as to the fourth nonparty witness—CP Dev. Co.'s retired outside transaction counsel.  Tellingly, Defendants provided the Court with no evidence or caselaw specifically suggesting that outside transaction counsel fall under Rule 37(d)'s "managing agent" category.  The opposite is true—caselaw demonstrates that outside counsel does not fall under this category.  Accordingly, right off the bat, Defendants' request for Rule 37(d) sanctions should be denied because these nonparties clearly do not even fall under Rule 37(d)(1)(A)(i).  Instead, Defendants should have availed themselves of the proper remedies under Rule 45.  Second, Defendants failed to produce any evidence establishing the nonparties were personally served the subpoenas and received the requisite witness fees, as required by law pursuant to Rule 45(b)(1).  Third, although Defendants claim these nonparty witnesses are "key witnesses" to their cases, Defendants provided no explanation for their failure to exercise any diligence in seeking to take these depositions until the proverbial eve of fact discovery—two days before the Christmas/Hannukah holidays.  In fact, Defendants conveniently omit from their Motion that they have known about these nonparty witnesses for many years: The four nonparties were identified in over 90,000 unique documents produced in this litigation, identified in 37 deposition exhibits (the majority of which were marked by Defendants), were discussed in 20 depositions taken in this litigation, and were identified or referenced in 22 exhibits attached to Tetra Tech's own Motion for Partial Summary Judgment filed in February 2024.  Defendants also omit the fact that they requested these four nonparty depositions exactly one day after the Court granted Defendants' stipulation, see ECF No. 445 in Case No. 3:13-cv-03835-JD, which effectively freed up space for Tetra Tech to take additional depositions (after the close of fact discovery) beyond the Case Management Order's 70-deposition allotment.  Fourth, Plaintiffs do not see the need for the Court to reach the five-factor test cited by Defendants because the above arguments are more than sufficient for the Court to rule in favor of summarily denying Defendants' Motion with

1    prejudice.  If the Court does reach the five-factor test, Defendants' extraordinary request for preclusion

2    and evidentiary sanctions should still be summarily denied because all five factors weigh against

3    imposing any manner of sanctions.  Finally, sanctions against Defendants for Plaintiffs having to

4    oppose this frivolous Motion are welcome on the Court's own motion.

5        **Position of Lennar:**

6        Lennar opposes Defendants' baseless request for extraordinary sanctions against all of Side

7    One (including Lennar) because Defendants' motion lacks any facts, authority, or argument to support

8    any relief against Lennar. Defendants ask the Court to prohibit Lennar from using documents

9    involving the witnesses who could not accommodate Tetra Tech's last-minute deposition notices,

10   including documents that have been used at other depositions and may be used as trial exhibits by both

11   sides. There is no basis to preclude Lennar from using those documents at trial. Defendants' extreme

12   and unjustified request for adverse inference instructions against Five Point regarding what these

13   witnesses would have said would equally punish Lennar because Lennar's and Five Point's cases will

14   be tried together.  The witnesses at issue previously worked for or on behalf of Lennar. Any adverse

15   inference instructions will confuse the jury and force Lennar to put on evidence to refute the

16   instructions (without the benefit of the witnesses' documents) giving an unjustified advantage to

17   Defendants.

18       **Filings:**

19       • Case No. 3:20-cv-01481-JD

20           ○ Dkt. 224 (Tetra Tech and United States Motion)

21           ○ Dkt. 228 (Five Point Letter Brief)

22           ○ Dkt. 230 (Five Point Opposition to Motion)

23       • Case No. 3:20-cv-01485-JD

24           ○ Dkt. 285 (Lennar Opposition to Motion)

25

26   **25. TETRA TECH MOTION SETTING DEADLINES AND PROCESS FOR DISMISSAL**

27       **OF INDIVIDUAL BAYVIEW PLAINTIFFS**

28       January 13, 2025

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

**Position of Tetra Tech:**

Plaintiffs selected as candidates for bellwether trials who fail to participate in discovery by deadlines agreed to by the Parties should be dismissed with prejudice. Fed. R. Civ. P. 41(b). The Parties stipulated to select Plaintiffs as candidates for bellwether trials and from whom individualized discovery would be taken. Case No. 19-cv-01417, Dkt. 268. Numerous of the Plaintiffs selected have failed to respond to Tetra Tech's written discovery requests within the deadlines set by the Federal Rules, failed to respond by the January 5, 2025 written discovery cut-off date, and still have not responded as of the filing of this submission. Now, the Parties have agreed to replace any bellwether candidate Plaintiff who, by January 31, 2025, does not respond to Tetra Tech's written discovery requests, provide necessary medical record release authorizations, and identify a date on which they will sit for their deposition. The parties agree on the schedule for additional discovery of bellwether candidates, but disagree about what the consequences for failing to meet the deadlines should be. Tetra Tech's position is that dismissal is the appropriate remedy. Dismissal is proper under Federal Rule 41(b) where a plaintiff fails to prosecute, fails to comply with the Federal Rules, or fails to comply with a court order. Fed. R. Civ. P. 41(b). All three of those bases apply to Plaintiffs who have failed to respond to Tetra Tech's written discovery requests within deadlines set by the Federal Rules and the January 5, 2025 written discovery deadline set by an order of this Court (Case No. 19-cv-01417, Dkts. 266, 277). Moreover, it is well-recognized that mass action plaintiffs may not "have [their] cake and eat it by withdrawing from a bellwether trial and then sitting back to await the outcome of another plaintiff's experience." *In re FEMA Trailer Formaldahyde Prods. Liab. Litig.*, 628 F.3d 157 (5th Cir. 2010); *see id.* at 164 ("Any individual case may be selected as a bellwether, and no plaintiff has the right to avoid the obligation to proceed with [their] own suit, if so selected."). Accordingly, Tetra Tech moves for an order setting a schedule for the dismissal with prejudice of bellwether candidate plaintiffs who fail to participate in discovery.

**Position of Bayview:**

Tetra Tech filed its motion Dkt. 297 on January 13, 2025.  The Plaintiffs are still reviewing the motion and will respond more fully by the date set in the motion. In short, Plaintiffs have been working in good faith to provide discovery to Tetra Tech prior to scheduled depositions. Plaintiff disagree that

1  any Plaintiffs who have made it this far should be dismissed based on an arbitrary date to provide

2  discovery responses. Tetra Tech propounded written discovery for approximately 74 plaintiffs the

3  week of Thanksgiving 2024 that were due the week of Christmas 2024. Given the logistics involved

4  in obtaining interrogatory responses from 74 individuals, it was simply not possible to provide

5  responses in 30 days. Further, this is a problem created by Tetra Tech. In September 2023, Tetra Tech

6  propounded interrogatories and document production requests for 222 plaintiffs.  Plaintiff provided

7  responses by March 2024. Tetra Tech then decided to take depositions of 50 of the 222 plaintiffs.  In

8  July 2024, the parties scheduled 34 depositions from August 1, 2024, to September 18, 2024.  Tetra

9  Tech had responses to set one interrogatories and deposition dates for 34 plaintiffs. Plaintiffs cleared

10  the dates and the clients were ready and prepared for their depositions. Tetra Tech only took 5 of the

11  34 depositions that were scheduled. In September 2024, Tetra Tech requested for dates for 13 plaintiff

12  depositions.  Tetra Tech schedule depositions for thirteen plaintiffs  between September 23, 2024, and

13  October 4, 2024.  On September 17, 2024, Tetra Teach canceled all but four of the 13 depositions that

14  were scheduled. Between July and December 20204, the parties scheduled 47 depositions and Tetra

15  Tech only took six.  Now that discovery has closed, Tetra Tech seeks to dismiss plaintiffs, who have

16  not answered questions that can easily be asked during their depositions.

17  - Filings:

18    - Case No. 3:19-cv-01417-JD

19      - Dkt. 297 (Tetra Tech Motion)

20

21  Respectfully submitted,

22

23  DATED:  January 17, 2025                    COTCHETT, PITRE & McCARTHY, LLP

24                                    By: */s/ Joseph W. Cotchett*
                                          JOSEPH W. COTCHETT (SBN 36324)
25                                        ANNE MARIE MURPHY (SBN 202540)
                                          DONALD J. MAGILLIGAN (SBN 257714)
26                                        *Attorneys for PENNINGTON PLAINTIFFS*

27

28

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

LEGAL02/45491815v1

1    DATED:  January 17, 2025                BONNER & BONNER

2                                            By: /s/ David Marroso
3                                                CHARLES A. BONNER (SBN 85413)
                                                 A. CABRAL BONNER (SBN 247528)
4                                                *Attorneys for PLAINTIFFS BAYVIEW HUNTERS
                                                 POINT RESIDENTS*
5

6    DATED:  January 17, 2025                O'MELVENY & MYERS LLP

7                                            By:/s/ Daniel M. Petrocelli
8                                                DANIEL M. PETROCELLI (SBN 97802)
                                                 DAVID J. MARROSO (SBN 211655)
9                                                GEOFFREY H. YOST (SBN 159687)
                                                 MADHU R. POCHA (SBN 260997)
10                                               *Attorneys for LENNAR CORP.; HPS
                                                 DEVELOPMENT CO., L.P.; HPS1 BLOCK 50 LLC;
11                                               HPS1 BLOCK 51 LLC; HPS1 BLOCK 53 LLC; AND
                                                 HPS1 BLOCK 54 LLC*
12

13   DATED:  January 17, 2025                ALSTON & BIRD

14                                           By: /s/ Jeffrey D. Dintzer
15                                               JEFFREY D. DINTZER
                                                 MEREDITH JONES KINGSLEY
16                                               GREGORY S. BERLIN
                                                 VICKIE CHUNG RUSEK
17                                               *Attorneys for FIVE POINT HOLDINGS, LLC, CP
                                                 DEVELOPMENT CO., LLC*
18

19

20

21   DATED:  January 17, 2025                WILMERHALE LLP

22                                           By:/s/ Davina Pujari
23                                               DAVINA PUJARI
                                                 CHRISTOPHER T. CASAMASSIMA
24                                               CHRISTOPHER A. RHEINHEIMER
                                                 ANDREW RHYS DAVIES
25                                               MICHAEL J. BROWN
                                                 *Attorneys for TETRA TECH, INC., TETRA TECH
26                                               EC, INC.*

27

28

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**

1    DATED:  January 17, 2025                    UNITED STATES OF AMERICA, CIVIL
2                                                DIVISION/TORTS BRANCH

3                                          By: */s/ Caroline Stanton*
                                                CAROLINE STANTON
4                                                ALBERT LAI
                                                ROSEMARY YOGIAVEETIL
5
                                                *Attorneys for Defendant UNITED STATES OF*
6                                                *AMERICA*

7    DATED:  January 17, 2025                    UNITED STATES DEPARTMENT OF JUSTICE,
8                                                CIVIL DIVISION

9                                          By: */s/ Adam DiClemente*
                                                JAMIE ANN YAVELBERG
10                                               PATRICK M. KLEIN
                                                THOMAS MORRIS
11                                               JONATHAN K. HOERNER
                                                ADAM J. DICLEMENTE
12                                               *Attorneys for Plaintiff UNITED STATES*
                                                *DEPARTMENT OF JUSTICE*
13
     DATED:  January 17, 2025                    BORDIN SEMMER LLP
14
15                                         By: */s/ Bryan C. Swaim*
                                                BRYAN C. SWAIM
16                                               *Attorneys for Defendants Radiological Survey &*
                                                *Remedial Services, LLC and individuals Daryl*
17                                               *DeLong and Brian Henderson*

18
19   **DATED:** January 17, 2025               By: */s/ Catherine Golden*
                                                CATHERINE GOLDEN
20                                                *Attorney for Stephen Rolfe*

21
22
23
24
25
26
27
28

**JOINT STATEMENT SUMMARIZING LIVE DISCOVERY DISPUTES**