**O'MELVENY & MYERS LLP**
Daniel M. Petrocelli (Cal. Bar No. 97802)
David Marroso (Cal. Bar No. 211655)
Geoffrey H. Yost (Cal. Bar No. 159687)
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779
Email: dpetrocelli@omm.com
dmarroso@omm.com
gyost@omm.com

**ALSTON & BIRD LLP**
Jeffrey D. Dintzer (Cal. Bar No. 139056)
Charles W. Cox (Cal. Bar No. 162854)
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: 213-576-1000
Facsimile: 213-576-1100
Email: jeffrey.dintzer@alston.com
charles.cox@alston.com

Attorneys for Plaintiffs CPHP Development, LLC; HPS Development Co., LP; HPS1 Block 50, LLC; HPS1 Block 51, LLC; HPS1 Block 53, LLC; HPS1 Block 54, LLC; HPS1 Block 55, LLC; HPS1 Block 56/57, LLC; Lennar Corporation; Five Point Holdings, LLC and CP Development Co., LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

FIVE POINT HOLDINGS, LLC, and CP DEVELOPMENT CO., LLC,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

Case No. 3:20-CV-01480-JD

**PLAINTIFFS' TRIAL BRIEF**

**Trial**

Date: January 11, 2027
Time: 9:00 a.m.
Courtroom: 11
Judge: Hon. James A. Donato

| | |
|---|---|
| FIVE POINT HOLDINGS, LLC and CP DEVELOPMENT CO., LLC,<br><br>Plaintiffs,<br><br>v.<br><br>TETRA TECH, INC.; TETRA TECH EC, INC.; and ROES 1-100 Inclusive,<br><br>Defendants. | Case No. 3:20-CV-01481-JD |
| CPHP DEVELOPMENT, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TETRA TECH, INC.; et al.,<br><br>Defendants. | Case No. 3:20-CV-01485-JD |

Plaintiffs CPHP Development, LLC; HPS Development Co., LP; HPS1 Block 50, LLC; HPS1 Block 51, LLC; HPS1 Block 53, LLC; HPS1 Block 54, LLC; HPS1 Block 55, LLC; HPS1 Block 56/57, LLC; Lennar Corporation; Five Point Holdings, LLC and CP Development Co., LLC (collectively, "Developers") respectfully submit this Trial Brief.

**INTRODUCTION**

Hunters Point Naval Shipyard is located in southeastern San Francisco. It was used by the Navy during WWII for radioactive testing and the decontamination of ships returning from nuclear testing in the Pacific. It is a massive and spectacular property, well-positioned, with gorgeous San Francisco Bay views. Because of the way the Navy used it, the site is radiologically-contaminated.

Under federal law, the Navy is obligated to clean up the site. The Navy hired Tetra Tech to do the remediation, so it could be developed by experts like Lennar and Five Point into a brand-new and badly-needed community alive with affordable housing, gorgeous parks, bustling restaurants, and attractive retail. "The Shipyard" would change San Francisco forever.

Tetra Tech destroyed that plan. Putting profits over people, Tetra Tech lied, cheated, and covered up. The misconduct was rampant and systemic. Pressured and directed by management, all the way up to the Shipyard's Project Manager, Tetra Tech supervisors, employees, and subcontractors committed soil sampling fraud, building scan fraud, data manipulation, fabrication of documents, and forgery. Tetra Tech's fraud happened and went undetected for years because the Navy violated mandatory duties to be present and supervise its contractor and because personal relationships led the Navy to "look the other way."

This trial is a watershed moment—for the parties and the San Francisco community. San Franciscans will decide whether the defendants violated their duties and betrayed our trust.

**DEVELOPERS' CASE**

Against Tetra Tech, Developers assert claims for intentional misrepresentation; intentional interference with prospective economic advantage; negligence; negligent hiring, supervision, and retention; negligent interference with prospective economic advantage; and equitable indemnification. Against the United States, Developers bring claims for negligence; negligent hiring,

supervision, and retention; negligent interference with prospective economic advantage; and equitable indemnification against both the Tetra Tech defendants and the United States.

**I. Claims Against Tetra Tech**

**A. Fraud (Intentional Misrepresentation)**

The elements for fraud in California are: "(a) misrepresentation (false representation, concealment, or *nondisclosure*); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Engalla v. Permanente Med. Grp.*, 15 Cal. 4th 951, 974 (1997)); Judicial Council of Cal. Civil Jury Instructions ("CACI") No. 1900 (2026 ed.). The evidence will show that Tetra Tech intentionally falsified data, misrepresented the results of its radiological investigation and cleanup at Hunters Point, and knowingly issued false reports stating its work was properly conducted and the site was safe for redevelopment. Tetra Tech knew Developers would rely on these reports, and that its fraud, if discovered, would delay the project, inflate costs, and cause significant financial harm. Developers did rely on those representations by Tetra Tech when they acquired development rights and proceeded with plans to redevelop the property. Developers will seek substantial compensatory and punitive damages for the harm caused by Tetra Tech.

**B. Intentional Interference with Prospective Economic Advantage**

The tort of intentional interference with prospective economic advantage "has five elements: (1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017); *see also* CACI No. 2202. Tetra Tech's misconduct, which was knowing and intentional, foreseeably disrupted Developers' ongoing and anticipated economic relationships with investors, buyers, contractors, prospective tenants and other entities involved in the property's redevelopment. Tetra Tech knew its remediation work was being performed to enable residential and commercial redevelopment and that the Developers depended on accurate information to maintain their business relationships and

development schedules. By intentionally engaging in misconduct and/or recklessly performing its work, Tetra Tech caused substantial interference with Developers' economic opportunities.

**C. Negligence**

"To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury.'" *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 213 (2021) (quoting *Nally v. Grace Cmty. Church*, 47 Cal. 3d 278, 292 (1988)); *see also* CACI No. 400. Tetra Tech owed Developers a duty to exercise reasonable care in performing its work to ensure that parcels at Hunters Point were safe for residential and commercial redevelopment. Tetra Tech breached that duty by, among other things, destroying and falsifying samples, data, and records, and by hiring and failing to supervise unqualified personnel. As a result, Tetra Tech's misconduct caused an investigation and rework resulting in decades-long parcel transfers, discouraged property buyers and lenders from investing in the project, and caused substantial damages to Developers.

**D. Negligent Hiring, Supervision, and Retention of Employees**

California law "recognizes the theory that an employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee." *Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 (Cal. Ct. App. 1996); *see also* CACI No. 426. The tort is "based upon the reasoning that if an enterprise hires individuals with characteristics which might pose a danger to customers or other employees, the enterprise should bear the loss caused by the wrongdoing of its incompetent or unfit employees." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (Cal. Ct. App. 1998). Tetra Tech failed to exercise reasonable care in selecting and supervising its employees, subcontractors, and agents responsible for the environmental and radiological work at Hunters Point. Even after it learned its employees and subcontractors were engaging in sampling fraud and data falsification at the direction of management, Tetra Tech continued to staff these individuals in sensitive radiological investigation roles, failed to discipline them for known violations of protocols, and failed to terminate the employment of wrongdoers. This misconduct, coupled with Tetra Tech's failure to supervise, resulted in ongoing fabricated data, defective remediation, and foreseeable harm to Developers.

**E. Negligent Interference with Prospective Economic Advantage**

"The tort of negligent interference with prospective economic advantage is established where a plaintiff demonstrates that (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship." *North American Chemical Co. v. Superior Court*, 59 Cal. App. 4th 764, 786 (Cal. Ct. App. 1997); CACI No. 2204. By negligently performing its environmental work and failing to act with reasonable care, as described above, Tetra Tech knowingly interfered with Developers' ongoing and anticipated economic relationships with investors, buyers, contractors, prospective tenants, and other entities involved in Hunters Point's redevelopment, leading to significant financial harm to Developers.

**F. Equitable Indemnification**

"The elements of a cause of action for indemnity are (1) a showing of *fault* on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is contractually or equitably responsible." *Expressions at Rancho Niguel Assn. v. Ahmanson Developments, Inc.*, 86 Cal. App. 4th 1135, 1139 (2001); CACI No. 3800. The right to indemnity "flows from payment of a joint legal obligation on another's behalf." *AmeriGas Propane, LP v. Landstar Ranger, Inc.*, 230 Cal. App. 4th 1153, 1167 (Cal. Ct. App. 2014). Developers have been wrongfully drawn into litigation alleging harms due to Tetra Tech's misconduct. Developers seek equitable indemnification and contribution from Tetra Tech for resulting settlement expenses incurred in those actions.

**II. Claims Against the United States**

**A. Negligence**

"To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal

cause of the resulting injury.'" *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 213 (2021) (quoting *Nally v. Grace Cmty. Church*, 47 Cal. 3d 278, 292 (1988)); *see also* CACI No. 400. The United States breached its duty of reasonable care in overseeing the environmental investigation, testing, and remediation of Hunters Point. This duty arose from federal statutes, regulations, and contracts, which specified mandatory obligations of the government to supervise Tetra Tech's work and ensure reliable remediation data were collected to support timely transfer. The United States negligently supervised Tetra Tech's work, failed to enforce mandatory rules and oversight obligations, and ignored indications of widespread fraud and data falsification. The United States' actions and inaction violated federal regulations and constitute negligence per se under California law, as it directly delayed property transfer, impeded redevelopment, and caused substantial financial harm in the form of project costs, delays, and litigation expense.

### B. Negligent Hiring, Supervision, and Retention of Employees

"California case law recognizes the theory that an employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee." *Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 (Cal. Ct. App. 1996); *see also* CACI No. 426. The United States negligently hired, retained, and supervised Tetra Tech and its personnel despite clear evidence of incompetence and fraud at Hunters Point. The United States had a duty under the Federal Acquisition Regulations and its own mandatory procedures to hire responsible contractors and qualified personnel; instead, the United States continued to award contracts to Tetra Tech and authorize unqualified individuals to perform radiological testing and cleanup, even after learning of Tetra Tech's misconduct. The United States' failure to enforce its oversight obligations and prevent fraud created foreseeable risks of harm, resulting in construction delays, increased costs, and other financial harm.

### C. Negligent Interference with Prospective Economic Advantage

Negligent interference with prospective economic advantage "is established where a plaintiff demonstrates that (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole

or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship." *North American Chemical Co. v. Superior Court*, 59 Cal. App. 4th 764, 786 (Cal. Ct. App. 1997); *see* CACI No. 2204. The United States knew the purpose of the cleanup was so Hunters Point could be redeveloped, and that Developers had existing and prospective relationships with investors, buyers, contractors, tenants, and other entities. The United States owed a duty to act with reasonable care to avoid conduct that would disrupt those relationships. The United States breached that duty by negligently hiring, supervising, and retaining Tetra Tech, and failing to adequately oversee remediation work. That breach resulted in prolonged delays, and interfered with Developers' existing and prospective economic relationships.

### D. Equitable Indemnification

The elements for indemnity "are (1) a showing of *fault* on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is contractually or equitably responsible." *Expressions at Rancho Niguel Assn. v. Ahmanson Developments, Inc.*, 86 Cal. App. 4th 1135, 1139 (Cal. Ct. App. 2001); *see* CACI No. 3800. The United States, through its negligent oversight of Tetra Tech and the resulting fraud and delays, caused Developers to be sued in lawsuits arising from Tetra Tech's misconduct. Developers are entitled to equitable indemnification or contribution from the United States for the expense incurred because of the Navy's negligence.

## DEFENDANTS' DEFENSES

Developers will present evidence rebutting Defendants' ***73*** affirmative defenses. *HDMI Licensing Adm'r, Inc. v. Availink Inc.*, 816 F. Supp. 3d 1047, 1056 (N.D. Cal. 2026) ("a plaintiff is not required to proactively negate all possible affirmative defenses because the defendant bears the burden of proof on an affirmative defense"). We highlight here three affirmative defenses.

### I. Price-Anderson Act

On August 20, 2026, Tetra Tech filed an untimely and unmeritorious motion claiming the Court lacks jurisdiction to hear this case under the Price-Anderson Act ("PAA"), 42 U.S.C. § 2210. Case No. 3:20-cv-1481 (Dkt. 368); Case No. 3:20-cv-1485 (Dkt. 418). Tetra Tech's argument is

unfounded. (Case No. 3:20-cv-1481 (Dkt. 371); Case No. 3:20-cv-1485 (Dkt. 421)). The Court has power to adjudicate this case under federal enclave jurisdiction irrespective of the PAA. *See, e.g.*, *In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 1009-10 (9th Cir. 2008) (affirming the district court "clearly had subject matter jurisdiction under the PAA"). Moreover, the PAA defense–which was never pleaded by Tetra Tech in its Answer or raised anywhere in these actions before Tetra Tech filed the motion–fails out of the gate because Tetra Tech cannot establish that (a) Developers' claims stem from a "nuclear incident"; (b) the claims in this case fall outside the statute's express "act of war" exception; or (c) it even has the requisite license or indemnity agreements in place that are a predicate to triggering protections under Section 2210 of the PAA. Simply put, Tetra Tech invites legal error by suggesting that the Court lacks jurisdiction to hear this case under the PAA.

## II. Sovereign Immunity

The United States has failed twice to avoid liability for its actions by asserting the Court lacks subject-matter jurisdiction based on exceptions to the waiver of sovereign immunity under the Federal Tort Claims Act ("FTCA"). The United States argued in 2022 that the FTCA's "discretionary function exception" bars Developers from suing the government for claims resulting from "the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government …." 28 U.S.C. § 2680(a). The United States claimed it had complete discretion in how it oversaw the work of Tetra Tech, and therefore could not be liable for its actions in connection with that oversight. Developers argued the discretionary function exception did not apply because (a) the United States violated specified mandatory duties articulated in statutes, regulations, agreements, technical work plans, contracts, and manuals governing every aspect of the environmental cleanup of Hunters Point, and (b) the violations of these specific and mandatory duties were not rooted in policy considerations. Case No. 3:20-cv-1480 (Dkt. 103); *see also Kim v. United States*, 940 F.3d 484, 487 (9th Cir. 2019). The United States also raised the misrepresentation and interference with contract rights exceptions. 28 U.S.C. § 2680(h). The Court denied the United States' motion to dismiss, finding that "the United States has utterly misconstrued its burden in this analysis" and "its arguments for immunity are premised on the erroneous belief that plaintiffs had the burden of establishing that the government did not have discretion." Dkt. 106.

The United States reprised its immunity arguments in another motion to dismiss. Dkt. 219. Developers highlighted the deficiencies in that position, including the government's failure to conduct an act-by-act analysis of the challenged duties as required by the applicable authorities. *See, e.g.*, *In re Glacier Bay*, 71 F.3d 1447, 1451 (9th Cir. 1995); *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174, 1177 (9th Cir. 2002). Developers also noted that even as to those few duties that the government did address in its motion, it had not established that those duties were discretionary under the first prong of the discretionary function analysis. Dkt. 235. To the contrary, as Developers highlighted, the government ignored (and continues to ignore) the mandatory nature of its duties under CERCLA and the National Contingency Plan, the Federal Facilities Agreement and the Policy Manuals, Work Plans, Contracts and Federal Acquisition Regulations governing the environmental remediation at Hunters Point. And the Developers pointed out they were not pursuing claims covered by the misrepresentation or interference with contract rights exceptions. The Court once again denied the United States' motion to dismiss the case for lack of subject-matter jurisdiction. Dkt. 251.

## III. Statute of Limitations

Defendants have wrongly argued on several occasions that the statute of limitations bars the claims of Developers in this case. To prevail on this affirmative defense, Defendants must prove that the Developers' claims accrued prior to March 7, 2016[1] and that their claims against the United States accrued prior to June 27, 2017. That is a burden Defendants cannot meet.

Developers' claims did not accrue until May 2, 2018, the earliest date when they became aware of all elements of their claims and suffered "actual and appreciable harm" as required under California law. *See, e.g.*, *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005) ("Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'"); *City of Vista v. Robert Thomas Sec., Inc.*, 84 Cal. App. 4th 882, 886 (Cal. Ct. App. 2000) ("When damages are an element of a cause of action, the cause of action does not accrue until the damages have been sustained."). Moreover, there "must be appreciable harm before the damage element of a cause of action accrues." *S.F. Unified Sch. Dist. v. W.R. Grace & Co.*, 37 Cal. App. 4th

[1] The parties dispute the relevant statute of limitations for Developers' claims against Tetra Tech, as explained in the parties' Final Jury Instructions submission.

1318, 1325-26, 1335 (Cal. Ct. App. 1995); *Choi v. Sagemark Consulting*, 18 Cal. App. 5th 308, 323 (Cal. Ct. App. 2017) ("If the last element to occur in a tort action is damages, 'the statute of limitations begins to run on the occurrence of 'appreciable and actual harm, however uncertain in amount,' that consists of more than nominal damages.'")

On May 2, 2018, Developers and the world learned for the first time from the unsealing of federal criminal indictments that two Tetra Tech supervisors had pleaded guilty to fraud and that the redevelopment of Hunters Point was "now on hold indefinitely as the Navy and the regulatory agencies [had] determined that [Tetra Tech's] work [was] unreliable." Moreover, Tetra Tech's fraud "set back the planned transfer of HPNS property to the City by an approximate decade." Ex. 20 at 2-3. Before then, the Navy regularly promulgated schedules disclosing no material transfer delays. Instead, the schedules, and Navy assurances that accompanied them, largely held steady, with the bulk of remediation to be completed by 2019 and the final parcel transferred by 2024. This shocking disclosure established the final predicate for Developers' claims—damages resulting from Defendants' wrongful conduct—and the accrual of the limitations period. *See United States Liability Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 597 (1970) ("No action will lie to recover damages if no damages have been sustained."); *Sirott v. Latts*, 6 Cal. App. 4th 923, 928 (Cal. Ct. App. 1992) ("If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort.").

Even were that not the case, the statute of limitations defense fails under the delayed discovery rule, the fraudulent concealment rule, and equitable tolling principles. Under the discovery rule, the statute of limitations is tolled "until the plaintiff discovers, or has reason to discover, the cause of action." *Fox*, 35 Cal. 4th at 807. Under the fraudulent concealment rule, the "statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012). Significantly, as this Court has previously recognized, "California law is clear that 'public awareness of a problem through media coverage alone' does not create 'constructive suspicion for purposes of discovery'" of a cause of action. *Frasco v. Flo Health, Inc.*, 2022 U.S. Dist. LEXIS 100817, at *5 (N.D. Cal. June 6, 2022)

(quoting *Unruh-Haxton v. Regents of Univ. of Cal.*, 162 Cal. App. 4th 343, 364 (Cal. Ct. App. 2008)). Accordingly, the statute of limitations does not present a viable affirmative defense in this case.

**TETRA TECH'S COUNTERCLAIM**

Tetra Tech has asserted counterclaims for equitable indemnity against the Developers. Case No. 3:20-CV-01481 (Dkt. 66); Case No. 3:20-CV-01485 (Dkt. 125). These counterclaims are specious and an attempt by Tetra Tech to distract from its own fraud and malfeasance.

**OTHER ISSUES**

The Court has afforded each side 20 hours to present evidence. Developers respectfully submit that more time is <u>necessary</u> for this case given the number of disputed factual issues. We will raise this request with the Court at the appropriate time and with added context.

Additional practical and logistical issues include (i) trial time given the need to educate the jury on the historic background of Hunters Point; the procedure and requirements for cleaning up a Superfund site; the plans for the largest redevelopment in San Francisco since the 1906 earthquake; the fraud and cover-up that occurred; and the differing damages theories and methodologies for the differently situated plaintiffs; (ii) the sequencing and procedures for expert testimony to account for rebuttal testimony from several of Developers' affirmative experts after Defendants present their responsive case-in-chief; (iii) Tetra Tech's privilege assertion as to *facts* surrounding purported investigations after 2014 into cascading allegations of fraudulent conduct at Hunters Point (Dev. MIL No. 1); (iv) the controversy over Tetra Tech's missing data and counsel's representations concerning those records (Dev. MIL No. 2); and (v) Defendants' efforts to shield evidence of their misconduct from the fact finder, including criminal investigation materials showing Tetra Tech's management-directed fraud (Def. Joint MIL No. 1; U.S. MIL No. 1) and the United States' own factual findings regarding the scope and extent of Tetra Tech's fraud (Def. Joint MIL No. 2).

**CONCLUSION**

Ours has been called the largest case concerning radiological fraud ever tried to a jury. Developers look forward to presenting their case against Tetra Tech to the jury and their case against the United States to the Court.

Dated: November 5, 2026

Respectfully Submitted,

**O'MELVENY & MYERS LLP**

By: */s/ Daniel M. Petrocelli*
Daniel M. Petrocelli
David Marroso

**ALSTON & BIRD LLP**

By: */s/ Jeffrey D. Dintzer*
Jeffrey D. Dintzer

Attorneys for Plaintiffs CPHP Development, LLC; HPS Development Co., LP; HPS1 Block 50, LLC; HPS1 Block 51, LLC; HPS1 Block 53, LLC; HPS1 Block 54, LLC; HPS1 Block 55, LLC; HPS1 Block 56/57, LLC; Lennar Corporation; Five Point Holdings, LLC and CP Development Co., LLC