BRETT A. SHUMATE
Assistant Attorney General
JONATHAN D. GUYNN
Deputy Assistant Attorney General
J. PATRICK GLYNN
Director, Torts Branch
ALBERT K. LAI
Assistant Director
CAROLINE W. STANTON, (DC Bar No. 1010819)
ROSEMARY YOGIAVEETIL (NY Bar No. 5296264)
Senior Trial Counsel
Civil Division, Torts Branch
P.O. Box 340
Washington, D.C. 20044
(202) 598-9070

*Attorneys for Defendant United States of America*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FIVE POINT HOLDINGS, LLC, *et al.*,<br>Plaintiffs,<br>vs.<br>UNITED STATES OF AMERICA, *et al.*,<br>Defendants. | Case No. 3:20-cv-01480-JD<br>**DEFENDANT THE UNITED STATES OF AMERICA'S TRIAL BRIEF** |
| FIVE POINT HOLDINGS, LLC, *et al.*,<br>Plaintiffs,<br>vs.<br>TETRA TECH EC, INC., *et al.*,<br>Defendants. | Case No. 3:20-cv-01481-JD |
| CPHP DEVELOPMENT, LLC, *et al.*,<br>Plaintiffs,<br>vs.<br>TETRA TECH EC, INC., *et al.*,<br>Defendants. | Case No. 3:20-cv-01485-JD |

# TABLE OF CONTENTS


Table of Contents ..... i

Table of Authorities ..... ii

Introduction ..... 1

Legal Standard ..... 1

Argument ..... 2

I. Developers' three theories of negligence suffer the same fatal defects. ..... 2

A. The United States did not breach any duty owed to Developers ..... 2

1. There is no analogous private liability for remediation of a BRAC site or disbursement of federal funds. ..... 3

2. The United States did not owe any duty to Developers. ..... 3

3. There is no duty to prevent fraud. ..... 5

4. Hiring and supervision are discretionary functions shielded from liability. ..... 5

B. Developers cannot establish a causal link between their alleged harm and the Navy's conduct without relying on misrepresentations. ..... 6

C. Developers did not suffer recoverable damages ..... 8

II. Developers' equitable indemnification claims fail ..... 9

III. The statute of limitations bars Developers' claims. ..... 9

Conclusion ..... 10

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abbey v. United States*,
112 F.4th 1141 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1889 (2025). ...................................7, 8

*Berkovitz v. United States*,
486 U.S. 531 (1988) ..........................................................................................................5

*Bily v. Arthur Young & Co.*,
3 Cal. 4th 370 (1992)..........................................................................................................4

*Clemente v. State of Cal.*,
40 Cal. 3d 202 (1985)..........................................................................................................8

*Delta Sav. Bank v. United States*,
265 F.3d 1017 (9th Cir. 2001)..............................................................................................3

*Firebaugh Canal Water Dist. v. United States*,
712 F.3d 1296 (9th Cir. 2013)..............................................................................................3

*Garcia v. U.S. Air Force*,
533 F.3d 1170 (10th Cir. 2008)............................................................................................6

*In re Angelia P.*
28 Cal. 3d 908 (1981)..........................................................................................................2

*In re Consol. U.S. Atmospheric Testing Litig.*,
820 F.2d 982 (9th Cir. 1987)................................................................................................6

*In re Glacier Bay*,
71 F.3d 1447 (9th Cir. 1995)................................................................................................5

*J'Aire Corp. v. Gregory*,
24 Cal. 3d 799 ( 1979)..........................................................................................................4

*Phillips v. TLC Plumbing, Inc.*,
91 Cal. Rptr. 3d 864 (Cal. Ct. App. 2009) ..........................................................................2

*SAI v. Smith*,
No. 16-cv-01024-JST, 2018 WL 534305 (N.D. Cal. Jan. 24, 2018) ..........................................6

*S. California Gas Leak Cases*,
67 Cal. 5th 391, 400, (2019) ................................................................................................4

*Schurg v. United States*,
63 F.4th 826 (9th Cir. 2023)....6

*United States. v. Sherwood*,
312 U.S. 584 (1941)....1

*Vallier v. Jet Propulsion Lab.*,
120 F. Supp. 2d 887 (C.D. Cal. 2000)....6

*Vickers v. United States*,
228 F.3d 944 (9th Cir.2000)....6

*Weiner v. Fleischman*,
54 Cal. 3d 476 (1991)....2

*Woodbridge Plaza v. Bank of Irvine*,
815 F.2d 538 (9th Cir. 1987)....3

Statutes

28 U.S.C. § 2401(b)....9

28 U.S.C. § 2402....2

28 U.S.C. § 2674....1

28 U.S.C. § 2680....1, 2, 5, 9

Cal. Evid. Code § 669....3

## INTRODUCTION

Developers sue the United States for billions of dollars because they did not receive hundreds of acres of free prime real estate fast enough due to criminal conduct against the United States. Developers' deafness to the inequitable nature of their claims aside, they cannot establish the prima facie elements for any of their negligence claims. The United States did not breach any state law duties in its supervision of a Superfund site. And even if a breach could be established, Developers cannot show that the alleged breach caused the delay in their receipt of property from the City of San Francisco. By Developers' own account, any harm resulted from the United States' failure to disclose a sealed, criminal investigation into the conduct of Steve Rolfe and Justin Hubbard and the impact of their criminal conduct on the transfer schedule. Finally, evidence will show that the Developers did not incur damages—they will obtain the land for free, and they stand to make *more* money under the current timeline than had the project proceeded as originally scheduled.

Additionally, Developers' claims do not fit within the Federal Tort Claims Act (FTCA) waiver of sovereign immunity. The Navy's hiring and supervision of its contractors was discretionary and susceptible to policy considerations, making that conduct immune from suit. Developers cannot satisfy causation without proof that they were either misled by the Navy or that the Navy failed to convey pertinent information, both of which soundly ground their claim in misrepresentation. Finally, Developers cannot recover their alleged damages stemming from interference with existing contracts with the City of San Francisco or homebuyers.

## LEGAL STANDARD

"The United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The United States is liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Such consent is subject to several exceptions, and the United States retains sovereign immunity for, *inter alia,* all claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty," "arising out of . . . misrepresentation," or "arising out of . . .interference with contract rights." 28 U.S.C. § 2680(a), (h).

FTCA claims are "tried by the court without a jury." 28 U.S.C. § 2402. "Issues of fact in civil cases are determined by a preponderance of testimony." *Weiner v. Fleischman*, 54 Cal.3d 476, 483 (1991). The preponderance-of-the-evidence standard requires the trier of fact to find "that the existence of a fact is more probable than its nonexistence." *In re Angelia P.*, 28 Cal.3d 908, 918 (1981).

## ARGUMENT

Both Developers bring claims against the United States for (1) negligence; (2) negligent hiring and supervision; (3) negligent interference with prospective economic advantage; and (4) equitable indemnity. Developers cannot meet their burden on any of these claims. Additionally, Developers' claims are all barred by the FTCA's statute of limitations.

### I. Developers' three theories of negligence suffer the same fatal defects.

The Navy hired Tetra Tech EC, Inc. (TtEC) to remediate contamination at HPNS. After the Navy detected a sophisticated scheme by certain TtEC employees to falsify soil samples, the government conducted extensive investigations to determine the scope of and remedy for those actions. Developers claim that because the Navy did not prevent this scheme or reveal aspects of the confidential—and later sealed—criminal investigation to Developers, the Navy was negligent. Developers' claims for negligence, negligent hiring and supervision, and negligent interference with prospective economic advantage are all subject to the same basic elements: (1) a legal duty to use due care; (2) a breach of that duty; (3) causation; and (4) harm to the plaintiff. *Phillips v. TLC Plumbing, Inc.*, 91 Cal. Rptr. 3d 864, 868 (Cal. Ct. App. 2009). Developers cannot establish these elements for any of their claims.

#### A. The United States did not breach any duty owed to Developers.

Developers fail to establish breach of duty for four separate reasons: (1) they do not identify an applicable state law duty; (2) the United States was not in privity with Developers and thus owed them no duty; (3) there is no duty to prevent fraud; (4) hiring and supervision of government contractors are protected by the FTCA's discretionary function exception.

**1. There is no analogous private liability for remediation of a BRAC site or disbursement of federal funds.**

Developers claim that the United States had duties arising from an enumerated list of federal "statutes, regulations, policy manuals, site-specific work plans, and contracts between the Navy and Tetra Tech" to oversee environmental remediation at HPNS, hire and supervise federal contractors, and avoid interference with existing and prospective economic relations. 20-cv-1480, Dkt. 90 ¶ 451 (listing duties for negligence claim), ¶ 469 (listing duties for negligent hiring and supervision claim), ¶ 480 (listing duties for negligent interference with economic advantage claim); *see also* 20-cv-1485, Dkt. 118 ¶¶ 312, 334, 360 (listing duties). But recovery against the United States must arise from a breach of a state law duty, and Developers have not identified a basis in California law for the U.S. duty to third-party beneficiaries of a BRAC property transfer. *See Firebaugh Canal Water Dist. v. United States*, 712 F.3d 1296, 1303 (9th Cir. 2013) ("Violations of federal law are not actionable under the FTCA because any liability would arise under federal rather than state law."). Violations of the federal statutes and regulations governing the BRAC process and federal contracting cannot give rise to an FTCA claim because there is no analogous liability under state law if the government were a private person—private persons do not supervise the remediation of BRAC sites or the withholding of federal funds. *See Woodbridge Plaza v. Bank of Irvine*, 815 F.2d 538, 543 (9th Cir. 1987) (holding that the "FTCA therefore does not apply" where conduct alleged "is not reasonably analogous to any claim for which a private person would be liable in California").

Developers' negligence per se claim fails for the same reason. Cal. Evid. Code § 669 "does not do away with the requirement in FTCA cases that the duty must be created by state law; it only establishes the standard to which the defendant's conduct must conform." *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1026 (9th Cir. 2001). Thus, to "bring suit under the FTCA based on negligence per se, a duty must be identified, and this duty cannot spring from a federal law. The duty must arise from state statutory or decisional law, and must impose on the defendants a duty to refrain from committing [a] sort of wrong . . . ." *Id.*

**2. The United States did not owe any duty to Developers.**

The Navy had a contract to provide HPNS parcels to the City under the Conveyance

Agreement. The City then had an agreement with the Developers to transfer the land under the Disposition and Development Agreement (DDA). The Navy never had any contractual relationship with the Developers. Absent privity of contract, the general rule is that there can be "no-recovery for negligently inflicted purely economic losses." *S. California Gas Leak Cases*, 7 Cal. 5th 391, 400 (2019).

Developers argue that they were owed a duty of care because they had a "special relationship" with Defendants. *See* 20-cv-1480, Dkt. 222-1 at 4. To determine if the Developers have a special relationship justifying a duty, the Court will analyze "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm." *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979). The California Supreme Court subsequently clarified that three policy concerns must be considered before finding duty under the *J'Aire* factors: (1) liability disproportionate to fault; (2) parties' self-reliance; and (3) potential adverse impact on the class of defendants. *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 398 (1992).

In *Bily*, the court rejected the claim that a company's auditor owed a duty to investors that relied on the positive audit of the company. *Id*. First, given the complexity of audits and the attenuated relationship between the auditor and the investor, allowing negligence claims from "all foreseeable third parties" would result in auditor liability "far out of proportion to its fault." *Id*. Second, investors were sophisticated plaintiffs who could use contract rather than tort liability to control and adjust their risks. *Id*. at 402– 03. Third, negligence claims based on foreseeability alone would result in "deleterious economic effects" by vastly expanding liability even when performance met the required standard. *Id.* at 404. Developers cannot satisfy the *Bily* standard. Like the investors in *Bily*, the Developers were not a party to the contracts with the Navy and are sophisticated plaintiffs that could (and should) have hedged a business risk of delay. And like audits in *Bily*, remediation of BRAC sites is a highly detailed and complex subject matter. Most importantly, expanding liability to any beneficiary of a BRAC transfer would pervert public policy interests by holding crime victims

liable for the effects of perpetrators' misconduct. A rule that a developer may sue for negligence every time there is a delay in transferring a BRAC site would only undermine the policy of effective remediation, public safety, and transfer of former military sites.

**3. There is no duty to prevent fraud.**

Developers claim that the Navy breached its duties by failing "to discover, prevent, or mitigate the fraud." 20-cv-1480, Dkt. 90 ¶ 22. But Developers cite no authority for any duty under California law to detect deliberate falsification by a contractor's employees. Even if such a duty existed, the parties do not dispute that the Navy met this hypothetical duty by identifying the underlying misconduct in October 2012, due to the astute observations of a meticulous Navy employee who identified anomalies in data that were not even contaminants of concern. The United States then investigated the anomalies, working with regulators to ensure that regulatory standards are met before any potentially impacted land is released. Developers' only retort to these facts is to raise the bar on the already non-existent tort duty to detect fraud even higher to argue that the Navy's supervision of its contractor should have been so comprehensive and meticulous that no fraud should have ever taken place. There is no basis for such an unprecedentedly high standard in tort to exercise oversight in a manner that prevents all fraud.

**4. Hiring and supervision are discretionary functions shielded from liability.**

The United States retains immunity for any "claim based upon ... a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The Court must conduct a two-step analysis to determine whether the exception bars suit. "First, does the challenged action involve an element of choice or judgment? If not, when a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' the exception will not apply." *In re Glacier Bay*, 71 F.3d 1447, 1450 (9th Cir. 1995) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). "Second, is any judgment at issue of the sort Congress intended to shield? If the judgment involves considerations of social, economic or political policy, the exception applies." *Id.*

Here, all of Developers' claims are based upon the Navy's decision to hire TtEC and its supervision of work at HPNS. *See, e.g.*, 20-cv-1480, Dkt. 90 ¶¶ 443, 459, 487; 20-cv-1485, Dkt.

118 ¶¶ 315, 335, 363–64. Developers allege general duties to supervise contractors, but the details of *how* that supervision was to be conducted were left to the discretion of the Navy. Such generalized requirements are insufficiently mandatory and specific to overcome the discretionary function exception. *Schurg v. United States*, 63 F.4th 826, 833 (9th Cir. 2023) (objectives do not limit discretion if they do not dictate "when or how"); *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1178 (10th Cir. 2008) (finding that the Air Force had discretion in its oversight of a contractor's work when the inspectors' guidelines did not contain specific inspection requirements).

As to the second prong, the government's hiring, retention, and oversight of its contractors inherently involves balancing of policy considerations. *See, e.g.*, *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) (listing cases); *In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 995–96 (9th Cir. 1987) (concluding that claims involving negligent supervision of a government contractor fall within the discretionary function exception); *SAI v. Smith*, No. 16-cv-01024-JST, 2018 WL 534305, at *5 (N.D. Cal. Jan. 24, 2018) (stating that "supervision of contractors falls within the discretionary function exception"); *Vallier v. Jet Propulsion Lab.*, 120 F. Supp. 2d 887, 913–14 (C.D. Cal. 2000) (finding that the discretionary function exception barred negligent supervision claim); *see also* 20-cv-1480, Dkt. 50 at 9:8–12 (The Court: "I think the idea that you can bring a negligent hiring claim is pretty clearly going to run up in a bad way for you against the discretionary conduct exception. I mean, there's nothing more discretionary than choosing who you're going to do work for you.").

### B. Developers cannot establish a causal link between their alleged harm and the Navy's conduct without relying on misrepresentations.

To demonstrate that their alleged harm was caused by the Navy's supervision, Developers ignore myriad other causes of the project delay, including COVID, changes in the DDA, non-radiological remediation, and their own business decisions regarding individual transfer.

Even if Developers could properly exclude those other causes, they can only show a causal connection between the Navy's conduct and their alleged harm through reliance on non-actionable misrepresentations. Developers argue that they reasonably relied on transfer schedules that the Navy provided to the City of San Francisco, that those transfer schedules were incorrect, and that, as a

result, they incurred economic loss. *See* 20-cv-1480, Dkt. 310 at 8 ("And Developers offer the FFA ***not*** to establish a duty owed *to them*, but to demonstrate *a* duty existed, so the Developers' reliance on transfer schedules was reasonable."). However, a negligence claim based on reliance on inaccurate information that the Navy provided to the City regarding the status of HPNS is precisely the claim that both this Court and the Ninth Circuit barred in *Abbey v. United States*, 112 F.4th 1141, 1143 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1889, 221 L. Ed. 2d 578 (2025).

Developers try to evade the jurisdictional bar by framing their claims as negligence and "disclaiming" reliance on the Navy's representations as a basis for their claims. 20-cv-1480, Dkt. 90 at 1 n.1. But this argument is wrong on both the law and the facts. First, Developers may not simply "creatively plead around the FTCA's misrepresentation exception" and the Court must "look beyond the labels and appraise the conduct on which the claim is based." *Abbey*, 112 F.4th at 1147. "A claim is barred as 'arising out of' misrepresentation if its 'gravamen' or 'essence' is the government's communication of false information." *Id.* at 1146.

In *Abbey*, the Ninth Circuit agreed with this Court and held that the misrepresentation exception barred claims by SFPD officers that the Navy negligently supervised TtEC at HPNS, failed to detect and prevent fraud, and inaccurately conveyed the condition of the land to the City of San Francisco. *Id*. The *Abbey* plaintiffs claimed that they reasonably relied on the Navy's assurances to the City and were harmed when that information was inaccurate. *Id.* Developers' claim here is indistinguishable: Developers assert that the Navy negligently supervised TtEC at HPNS, failed to prevent fraud, and provided inaccurate transfer schedules to the City upon which the Developers reasonably relied.

As Developers argue:

> When the alleged 'conduct, though not actually fraudulent, has all actual consequences and all legal effects of actual fraud,' the gravamen of a claim is fraud. This is true even where the claim is labeled as negligence or negligent misrepresentation, . . . Developers' subsequent claims for negligence, negligent hiring, and negligent and intentional interference with prospective economic advantage are all predicated on Tetra Tech's fraud.

Pls.' Position Statement re Jury Instruction No. 47 (case citations omitted). Because those representations are "essential" to Developers' claims, the misrepresentation exception bars any

claim for negligence. *Abbey*, 112 F.4th at 1143 ("the plaintiffs' claims 'arise' out of the Navy's alleged misrepresentations, even if the Navy did not directly make them to the plaintiffs.").

No matter how Developers label their claim, they cannot prove a causal link between the Navy's alleged failure to supervise and the alleged harm of unanticipated transfer delay without relying on the Navy's representations. Had the Navy told Developers of their investigations and likely delays, Developers could have altered their plans and avoided losses. *See* 20-cv-1480, Dkt. 222-4 (Bonner Decl.) ¶ 14 (stating that, if Navy had disclosed delays earlier, "our development plans would have been drastically modified"); Dkt. 222-5 (Brandt Decl.) ¶ 11 (Developers relied on Navy schedules to "use this technical guidance in their development planning."); Dkt. 222-7 (Luckhardt Decl.) ¶ 13 ("We relied on the transfer schedules that were given to us."). By their own admission, Developers' harm would not have occurred but for their reliance on the Navy's schedules.

**C. Developers did not suffer recoverable damages.**

Developers bear the burden of proving the amount of their compensable injury. *See Clemente v. State of California*, 40 Cal.3d 202, 219 (1985). Developers claim damages because they did not receive free land fast enough to realize profits for hundreds of millions of dollars. The United States will show that Developers suffered no economic harm at all. Five Point's expert's damage quantifications are critically flawed in their approach, including inappropriate risk adjustments, incorrect construction and use of discount rates, improper and unsupported adjustments to the projected cash flows of the redevelopment plans (including the inclusion of Candlestick Point economics), and flawed computations. When corrected, these errors result in significant reductions to Five Point's damages conclusion—eliminating more than $1.1 billion in claimed damages and resulting in a profit of $345 million instead of a loss of $785 million. Similarly, Lennar's damages expert ignores the historical financial feasibility of the redevelopment plan and manipulates the pace of sales, discount rate, and costs of the redevelopment plan, thus failing to establish any damages with reasonable certainty. By adjusting for Lennar's aggressive and unsupported assumptions and using a correct discount rate, Lennar's damages decrease from $73.3 million to, at most, $21.6 million. And, by failing to account for contemporaneous other issues impacting the site, neither expert can establish a causal link for the alleged damages.

Further, Developers cannot recover any damages against the United States stemming from losses under contracts. *See* 28 U.S.C. § 2680(h) (preserving immunity as to "[a]ny claim arising out of . . . interference with contract rights"). Accordingly, any losses arising from cancelled homebuyer contracts, voided lending agreements, and the unrealized benefits of their "bargained-for" development rights under the DDA—a contract with the City of San Francisco—are barred under the FTCA. Developers argue that they may still recover such damages against the Tetra Tech Defendants, 20-cv-1480, Dkt. 309 at 10, yet they seek to hold the United States and Tetra Tech Defendants joint and severally liable and have made no effort to bifurcate damages.

## II. Developers' equitable indemnification claims fail.

Equitable indemnity is a derivative claim, and the indemnitor (the United States) may respond to the indemnitee (Developers) with any substantive defense that would be available against the underlying injured party. In *Pennington*, the Court held that the Price Anderson Act barred the *Pennington* plaintiffs' claims. 3:18-cv-5330, Dkt. 413. Because the United States may raise all defenses that Developers could have raised in the underlying action, equitable indemnity is not appropriate for the *Pennington* case. Equitable indemnity for both *Pennington* and *Bayview* also fails because the United States' negligence defenses above would have likewise applied to claims in those cases. Further, Developers' equitable indemnity claims are duplicative of their NDAA Section 330 claims pending in the Court of Federal Claims.

## III. The statute of limitations bars Developers' claims.

The two-year statute of limitations bars Developers' claims against the United States. 28 U.S.C. § 2401(b). Developers filed their administrative claims against the Navy in June 2019, thus their claims must have accrued by June 2017. The evidence at trial—which Developers do not contest but will not stipulate to—will demonstrate that both Lennar and Five Point were aware of their alleged stigma and delay injuries no later than the fall of 2016:

- *July – September 2016*: Five Point's public-relations firm provided its regional president, vice-president, HPNS project manager, environmental manager, and HPNS sales representatives media-monitoring updates about TtEC's allegedly deficient work at HPNS.
- *Fall of 2016*: Developers received letters from regulators stating that the City would not approve further parcel transfers until completion of an investigation into TtEC's work:

- *Sept. 13, 2016*: EPA and DTSC stated that several agencies were investigating "the nature and extent of Tetra Tech's misrepresentation of data delivered to the Navy" and confirmed "***that the Navy will not propose any further transfers of Navy property at HPNS without results of these investigations***." 20-cv-1485, Dkt. 299-30 at FP_0010178.

- *Sept. 19, 2016*: San Francisco's mayor wrote that "due to ***ongoing investigations*** regarding the integrity of data delivered by Tetra Tech to the Navy, the transfer of Navy property at Hunters Point Naval Shipyard to the City and County of San Francisco may be delayed" and that "San Francisco ***will not accept the transfer of any land*** until federal and state regulators are satisfied that the land is clean and safe, and our own Department of Public Health validates that decision." 20-cv-14855, Dkt. 299-31 at CPHP-0053610.

- *October 2016*: San Francisco stated in a memorandum that was shared with Lennar's counsel: "***The scope and timeline of these investigations is currently unknown, and may result in significant delays to the transfer of property from the Navy to [the City.]."*** 20-cv-1485, Dkt.299-34 at FP-0017529.

- *December 7, 2016*: Lennar was represented at a Base Closure Taskforce meeting at which EPA stated that "***the land will not be transferred until the radiological issues are resolved***." 20-cv-1485, Dkt. 299-35 at US_NAVY-015728508.

• *December 2016*: Five Point's draft Form S-11 registration statement disclosed delay in its development project at HPNS associated with investigations into TtEC's radiological work as a risk factor for investors in its forthcoming initial public offering:

> In addition, at The San Francisco Shipyard, certain parcels of land ***will not be conveyed*** to the San Francisco Venture until the U.S. Navy satisfactorily completes its finding of suitability to transfer process. In the event that the U.S. Navy takes longer than expected to complete its finding of suitability to transfer process, we may be forced to delay development of portions of The San Francisco Shipyard until such parcels are conveyed. In addition, ***allegations that a contractor hired by the U.S. Navy misrepresented the scope of its remediation work at The San Francisco Shipyard may result in governmental investigations, which could delay or impede the scheduled transfer of these parcels*** . . .

20-cv-1480, Dkt. 204-41 at 26.

Although Developers assert that they were unaware of the *length* of potential delay until May 2018, per their own sworn declaration, they were aware of the existence of an indefinite delay no later than February 2017. 20-cv-1480, Dkt. 222-5 (Brandt Decl.) ¶¶ 12–14.

## CONCLUSION

The United States respectfully asks that the Court dismiss the claims against the United States for lack of subject matter jurisdiction, or in the alternative, grant judgment in its favor.

DATED: November 5, 2026

Respectfully submitted,

UNITED STATES OF AMERICA

By: *Caroline W. Stanton*
CAROLINE W. STANTON

*Attorney for Defendant United States of America*