MAYER BROWN LLP
DAVINA PUJARI, SBN 183407
CHRISTOPHER A. RHEINHEIMER, SBN 253890
101 2nd Street, 17th Floor
San Francisco, CA 94105
Telephone: (415) 874-4230
Facsimile: (650)-331-2060
dpujari@mayerbrown.com
crheinheimer@mayerbrown.com

*Attorneys for Defendants Tetra Tech, Inc. and Tetra Tech EC, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FIVE POINT HOLDINGS, LLC and CP DEVELOPMENT CO., LLC,<br>Plaintiffs,<br>vs.<br>TETRA TECH, INC.; TETRA TECH EC, INC; and ROES 1-100 Inclusive,<br>Defendants. | Case No. 3:20-cv-01481-JD<br><br>**DEFENDANTS TETRA TECH, INC. AND TETRA TECH EC, INC.'S TRIAL BRIEF**<br><br>Judge: Hon. James A. Donato |
| FIVE POINT HOLDINGS, LLC and CP DEVELOPMENT CO., LLC,<br>Plaintiffs,<br>vs.<br>UNITED STATES OF AMERICA,<br>Defendant. | Case No. 3:20-cv-01480-JD |
| CPHP DEVELOPMENT, LP, et al.,<br>Plaintiffs,<br>vs.<br>TETRA TECH EC, INC., et al.,<br>Defendants. | Case No. 3:20-cv-01485-JD |

## I. INTRODUCTION

Developers bring tort claims against Defendants Tetra Tech EC, Inc. ("TtEC") and Tetra Tech, Inc. ("TTI") to recover alleged business losses from delays in the redevelopment of Hunters Point Naval Shipyard ("HPNS"). The Navy's historic radiological activities and waste disposal at HPNS created the need for cleanup before the Navy could transfer the properties to the City of San Francisco and ultimately to Developers. The Navy retained TtEC to remediate radiological contamination. Following discovery of suspect soil sample data in 2012, TtEC investigated, concluding in 2014 that radiation technicians submitted samples from the wrong locations. Two TtEC employees, Steve Rolfe and Justin Hubbard, eventually pleaded guilty to criminal charges of falsifying records. TtEC took corrective actions, and the Navy confirmed in 2017 that radiological contamination had been properly cleaned up. But the property transfers continue to be delayed. Developers claim that TtEC's allegedly deficient work, and alleged need for the Navy to redo it, caused the delays from which their lost profits and other damages stem.

Developers' claims against TtEC and TTI lack merit. Factually, Developers lack the evidence to prove the claims at trial, and the claims are flawed as a matter of law. First, the Price-Anderson Act ("PAA") bars their claims. Even if it did not, Developers cannot establish necessary facts to bring a claim under the statute. Developers also waited too long to bring the claims—they are barred by the applicable statutes of limitations. On the merits, Developers cannot recover from TTI because TTI had no involvement at HPNS—the Navy's contracts were with TtEC, and only TtEC performed work at HPNS. Developers rely on the guilty pleas of Mr. Rolfe and Mr. Hubbard, but unforeseeable criminal conduct by two low-level TtEC employees cannot be imputed to TtEC (let alone TTI). TtEC did nothing wrong—it took timely and appropriate action to investigate those individuals and redo the work.

Moreover, Developers will be unable to prove elements of their fraud, negligence, or economic interference claims. They cannot prove that TtEC or TTI caused their claimed damages, first because they did not suffer actual damages (they are each slated to make tens, if not hundreds, of millions of dollars in profit from their developments), and second because the delays are connected to causes unrelated to TtEC. Developers cannot prove that they relied on

any intentional misstatement by TtEC or TTI. And the negligence-based claims are barred because neither TtEC nor TTI owed Developers a legal duty. Developers cannot prevail.

## II. DEVELOPERS' CAUSES OF ACTION

Developers bring claims for (1) fraudulent deceit or intentional misrepresentation; (2) negligence; (3) negligent hiring; (4) negligent and intentional interference with prospective economic relations; and (5) equitable indemnification. They cannot prove those claims.

### A. Developers cannot prove the negligence claims.

To prove negligence, Developers must show that TtEC or TTI owed them a duty, that TtEC or TTI breached that duty, and that the breach caused Developers' harms. *See Thomas v. Stenberg*, 206 Cal. App. 4th 654, 662 (2012). Duty is a matter of law for the Court to decide; the remaining elements are jury questions. *Ballard v. Uribe*, 41 Cal. 3d 564, 572 n.6 (1986). Developers cannot establish those basic elements of negligence.

***First***, TtEC and TTI did not owe Developers a duty to prevent their economic losses.[1] Absent privity of contract, the general rule is that there can be no recovery for purely economic losses. *Andrews v. Plains All Am. Pipeline, L.P.*, 2019 WL 6647930, at *4-6 (C.D. Cal. Nov. 20, 2019). The rule in California is that "liability in negligence for purely economic losses is 'the exception, not the rule.'" *Fairbairn v. Fid. Invs. Charitable Gift Fund*, 2021 WL 754534, at *6 (N.D. Cal. Feb. 26, 2021) (quoting *S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 400 (2019)).

Thus, Developers must prove an exception to this economic-loss rule. They claim to do so by establishing a "special relationship" where Developers were "an intended beneficiary of a particular transaction but [were] harmed by defendant's negligence in carrying it out." *Fairbairn*, 2021 WL 754534, at *6-7. That duty would be "limited to those persons" who are "intended to benefit." *Lincoln Alameda Creek v. Cooper Indus.*, 829 F. Supp. 325, 328-29 (N.D. Cal. 1992).

Developers cannot establish any special relationship with TtEC or TTI because Developers were not the intended beneficiaries of TtEC's contracts. The evidence will show that TtEC's contracts were with the Navy, that Developers had no relationship with TtEC, and that

[1] The Court declined to grant summary judgment for TTI and TtEC for lack of duty, but the Court may revisit the duty question on the trial record, and TTI and TtEC will ask it to do so. The duty element is necessary for each of Developers' negligence-based claims.

TtEC management was not even aware of the Navy's schedule for transferring properties to Developers because TtEC was focused on its contract work for the Navy. Courts refuse to treat third parties to a government contract as intended beneficiaries of the contract even if the contract benefits the third parties. *GECCMC 2005-C1 Plummer St. Off. Ltd. P'Ship v. JPMorgan Chase Bank*, 671 F.3d 1027, 1033 (9th Cir. 2012). TtEC and TTI owed Developers no duty here.

***Second***, TtEC and TTI did not breach any duty. The evidence will show that the actions by Mr. Rolfe and Mr. Hubbard at HPNS cannot be attributed to TtEC—their misconduct was unknown to TtEC management who had no reason to suspect it before it was discovered in 2012. TtEC cannot be held liable for its employees' criminal activities if, as here, the activities were not reasonably foreseeable consequences from their employment. *See Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 298-99 (1995). And TTI is even further from theoretical liability because it was never their employer. Moreover, TtEC did nothing wrong. As the evidence will show, once potential misconduct was discovered, TtEC took appropriate steps. It investigated the sampling irregularities and prepared a report identifying individuals connected with the suspect samples. TtEC's corrective actions included disciplining individuals involved and redoing remediation work at its own cost. TtEC disclosed its findings to the government, which prosecuted Mr. Rolfe and Mr. Hubbard, but never prosecuted TtEC's managers. For its part, TTI had no involvement at all at HPNS—its sole role was to stay apprised of TtEC's investigations after the fact. The evidence contradicts any claim by Developers that TtEC is TTI's agent or alter ego.

***Third***, the evidence will show that TtEC and TTI did not cause Developers' claimed damages (to the extent Developers can even show they were damaged, given the tens and hundreds of millions of dollars in profit they are projecting) because the transfer delays overwhelmingly resulted from factors unrelated to TtEC's work at HPNS. Chemical remediation at HPNS to address PFAS, mercury, and other contaminants has encountered complications and is projected to take far longer than the rework of TtEC's radiological remediation. Chemical remediation of Parcel E is not expected to be complete until 2037 though the radiological rework will be done before then. TtEC was never responsible for the chemical remediation delaying

transfer. Additional delays have resulted from work shutdowns during the COVID-19 pandemic and new groundwater analyses needed to account for sea level rise. Further, Developers' own business decisions have exacerbated the transfer delays because they refuse to accept the parcels one at a time but insist on receiving them all at once. Those alternative causes are responsible for Developers' claimed damages—not TtEC or TTI—and Developers will be unable to show otherwise at trial.

Developers' lack of evidence to prove that TtEC or TTI caused their claimed harms is fatal, not just to their negligence claim, but to all their claims. Causation is a required element of each of the causes of action that Developers allege. *See, e.g.*, *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987) (economic interference); *Small v. Fritz Cos. Inc.*, 30 Cal. 4th 167, 202 (2003) (fraud).

**B. Developers cannot prove their negligent hiring claims.**

To prove their claim for negligent hiring, supervision, or retention, Developers must show that (1) TtEC or TTI hired certain employees; (2) the employees were unfit; (3) TtEC or TTI knew or should have known that they were unfit; (4) their unfitness harmed Developers; and (5) TtEC or TTI's negligence caused the harm. *See* CACI Jury Instruction No. 426; *see also* *Phillips v. TLC Plumbing, Inc.*, 172 Cal. App. 4th 1133, 1139-40 (2009).

Developers cannot prove these elements. They cannot even begin to prove them for TTI because TTI did not hire any employees or subcontractors at HPNS. Developers also cannot prove them for TtEC. First, TtEC did not hire all the individuals doing radiological remediation at HPNS. Many of them were hired by TtEC's subcontractors. Second, the evidence does not show that TtEC's employees were unfit or unqualified. The record shows that TtEC's hires were experienced and qualified for radiological remediation. Third, TtEC did not know of the misconduct by Mr. Rolfe, Mr. Hubbard, or any other technicians associated with the anomalous samples and, once it learned of the anomalies, it disciplined and retrained employees. Mr. Rolfe and Mr. Hubbard acted improperly but they were not negligently hired or supervised by TtEC.

**C. Developers cannot prove their economic interference claims.**

Developers bring claims for both negligent and intentional interference with prospective economic relations. To establish negligent interference, Developers must prove that (1) they were in a relationship with a third party that would have resulted in future economic benefit; (2) TtEC and TTI had actual or constructive knowledge of the relationship; (3) TtEC and TTI had actual or constructive knowledge that the relationship would be disrupted if they failed to act with reasonable care; and (4) TtEC and TTI disrupted the relationship. CACI Jury Instruction No. 2204; *see also N. Am. Chem. Co. v. Super. Ct.*, 59 Cal. App. 4th 764, 786 (1997). For intentional interference, Developers must also prove that TtEC and TTI intended to disrupt Developers' relationship with a third party that would have resulted in future economic benefit. *See Golden Eagle Land Inv., L.P. v. Rancho Santa Fe Ass'n*, 19 Cal. App. 5th 399, 429 (2018).

Developers cannot prove either the negligent or the intentional interference claim. First, the evidence will show that TtEC and TTI had no knowledge of Developers' third-party relationships at the time of any alleged interference. Developers claim that TtEC and TTI interfered with their relationships with homeowners, banks, contractors, and business partners. But TtEC and TTI *cannot* have known about Five Point's relationships before TtEC's work at HPNS terminated in 2014 because Five Point did not even *exist* until May 2016—it was not until then that Lennar spun off Five Point as a separate company to manage risk related to the HPNS development. *See Roy Allen Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 518 (2017) (interference tort "presuppose[s] the relationship existed *at the time* of" the defendant's alleged actions). Further, the evidence will show that TtEC and TTI did not and should not have known about Lennar's third-party relationships at the time of the alleged interference—many of Lennar's relationships did not exist until after 2016 either. And neither TtEC nor its employees knew of the relationships that Lennar did have when they were involved at HPNS because they were focused on remediation, not on the property transfers or development activities.

Developers similarly cannot prove the intentional interference claim because they lack any evidence at all to show that TtEC—much less TTI—*intended* to disrupt their third-party business partnerships related to the HPNS development. Nor do they have evidence to show that

TtEC or TTI knew that any disruption was "substantially certain to occur." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1154 (2003). TtEC was not privy to the Navy's transfer schedules and would not have known how any employee conduct could impact them.

**D. Developers cannot prove the fraud claims.**

Developers also allege fraud claims. The Lennar plaintiffs bring a claim for fraudulent misrepresentation and the Five Point plaintiffs bring a claim for fraudulent deceit. The elements of those claims are the same. *See Mohamed v. AMCO Ins. Co.*, 2013 WL 1739477, at *5 (N.D. Cal. Apr. 22, 2013). Developers bear the burden to prove that TtEC or TTI (1) misrepresented a material fact; (2) knew the fact was false; and (3) intended to defraud Developers; and that Developers (4) justifiably relied on the intentional falsehood and (5) suffered damages as a result. *Small*, 30 Cal. 4th at 173. Developers cannot meet that burden. They lack any evidence at all that TTI took any action conceivably meeting those elements. Moreover, Developers' arguments for imposing fraud liability on TtEC lack any evidence to support them.

***First***, Developers will not be able to prove that TtEC made any knowingly false representations. Developers' evidence consists of TtEC's Radiological Removal Action Completion Reports ("RACRs")—one type of report that TtEC would prepare for the Navy about ongoing remediation work at HPNS. But TtEC managers will testify that they were not aware of any wrongdoing at HPNS before 2012, let alone that they were aware of any falsehoods in the RACRs, and when they became aware of wrongdoing, they took appropriate action. The evidence does not show that TtEC intentionally made false statements of fact. Nor can Developers rely on Mr. Rolfe and Mr. Hubbard's falsifying of soil sample records.

***Second***, Developers will not be able to prove that TtEC or its employees intended to defraud Developers. Fraud requires that TtEC prepared statements "with intent to defraud the public or a particular class of persons" that included Developers. *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 415 (1992). TtEC's evidence will show that the purpose of the RACRs was to provide information to the Navy as required by the parties' contracts. The RACRs upon which Developers base their fraud claims were not intended to induce reliance by Developers. TtEC had no relationship with Developers, nor did it intend for them to rely on any of its statements.

***Third***, Developers cannot prove that they relied on any statement by TtEC. Actual reliance requires that "the representation was an immediate cause" of the party's conduct. *Cal. Pub. Emps.' Ret. Sys. v. Moody's Invs. Serv., Inc.*, 226 Cal. App. 4th 643, 670 (2014). But Developers cannot show that. Five Point was not a recipient of the RACRs issued in 2011-2012 because it did not exist yet. Lennar witnesses testified that they did not review the RACRs. Developers also have no evidence to prove that they took any action in reliance on any RACR. To the contrary, the evidence is that Five Point and Lennar personnel relied on Navy schedule summaries to understand the timing of the property transfers. Developers cannot prove fraud.

**E. Developers cannot prove damages.**

Developers also cannot prove their overblown damages estimates. Five Point seeks more than $750 million, claiming that that is how much its expected returns on investment in HPNS decreased due to TtEC and TTI. Lennar seeks more than $100 million, claiming that that is how much it has lost from lower and slower sales of Parcel A condominiums due to TtEC and TTI. But Developers' expert damages models are flawed and TtEC and TTI have moved to exclude them. They are based on *ad hoc* assumptions, unrealistically valued expected prices at HPNS, and ignore macro-economic events impacting the timeline and profitability of the development. That is not to mention that Developers still stand to make more than $500 million in profits on lands they will receive from the City for nothing.

**F. Developers are not entitled to equitable indemnification.**

Last, Developers bring a claim for equitable indemnification, seeking to recover from TtEC and TTI for damages paid to plaintiffs in the *Bayview* and *Pennington* homeowners' cases. The doctrine of equitable indemnification allows a party who has paid damages that ought to have been paid by a wrongdoer to recover from the wrongdoer. *See Sullins v. Exxon/Mobil Corp.*, 729 F. Supp. 2d 1129, 1139 (N.D. Cal. 2010). An equitable indemnity claim accrues when the indemnitee suffers a loss through the payment of an adverse judgment or settlement. *Id.*

Developers' equitable indemnification claim is barred as a matter of law. When a court has approved a motion for good faith settlement, any other alleged joint tortfeasor is precluded from seeking equitable indemnification from the settling party. Cal. Civ. Proc. Code § 877.6(c).

The Court's order granting TTI and TtEC's motion for good faith settlement in *Bayview* thus bars Developers from seeking equitable indemnification related to that case. As for *Pennington*, Developers may seek equitable indemnification only if TTI or TtEC may be liable, but the Court's order granting them summary judgment in *Pennington* now precludes any determination that they are liable. *See Allis-Chalmers Corp. v. Super. Ct.*, 168 Cal. App. 3d 1155, 1159 (1985).

## III. TTI AND TTEC'S COUNTERCLAIM

TTI and TtEC also assert a counterclaim for equitable indemnification against Developers for settlement payments TTI and TtEC made to the *Bayview* homeowner plaintiffs. Unlike Developers' equitable indemnity claims, TTI and TtEC's claims for equitable indemnification are not barred. The evidence will show that Developers are partly responsible for the claimed injuries and damages that the *Bayview* plaintiffs alleged to have arisen from contamination at HPNS. The *Bayview* plaintiffs themselves alleged that Developers had failed to monitor and mitigate toxic dust they released into the air due to construction at HPNS. *See* Compl. ¶ 111, No. 19-cv-1417, Dkt. No. 223. The evidence will show that Developers' own conduct contributed to the homeowners' harms. As a result, TTI and TtEC are entitled to a share of the settlement payments they made in *Bayview* that is proportional to the degree of Developers' fault.

## IV. TTI AND TTEC'S DEFENSES

### A. Developers cannot meet the requirements of the Price-Anderson Act (PAA)

The PAA precludes Developers' claims. As TTI and TtEC have shown in their pending motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for summary judgment, the PAA precludes Developers' claims as a matter of law. The PAA comprehensively governs claims asserting injuries from a "nuclear incident," and precludes those claims when they do not involve physical injury to persons or property. 42 U.S.C. §§ 2014(q), (ii); *see In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 995 (9th Cir. 2008). Developers' claims are precluded here because they arise out of a "nuclear incident"—namely, the radiological contamination at HPNS and the allegedly deficient remediation by TtEC—but Developers do not assert any physical harms to person or property.

Even if the Court denies or defers the pending PAA motion, however, the PAA remains relevant for trial. Because the PAA governs Developers' claims, Developers would have to introduce evidence demonstrating they can meet the PAA's requirements for establishing a claim, including that they have suffered physical harm to property from radiation at HPNS and that they were harmed from exposure to radiation in excess of "federally-imposed dose limits." *In re Hanford*, 534 F.3d at 1003; *see O'Connor v. Boeing N. Am., Inc.*, 2005 WL 6035255, at *40 (C.D. Cal. Aug. 18, 2005) ("Plaintiffs must prove exposure to radiation in excess of the permissible radiation dose standards in effect at the time of the alleged incident."). To prevail on their claims against TTI and TtEC, Developers therefore would have to show—based on the factual record at trial—that their property harms arose from exposure to radiation in excess of federal limits.

Developers cannot prove that their claimed harms arose from any exposures to radiation at HPNS in excess of the federal maximum limits. The evidence will show that the levels of radiation at HPNS already were exceedingly low even when TtEC was working on radiological remediation at the site—in fact, the levels were near or at "background" radiation levels occurring in the environment. Accordingly, Developers will be unable to meet their burden of establishing the facts necessary for a claim against TTI and TtEC under the PAA.

**B. The statutes of limitations bar all of Developers' claims.**

TTI and TtEC assert a statute of limitations defense to Developers' claims. The statute of limitations for negligence, negligent hiring, and economic interference is two years. Cal. Civil Proc. Code § 339(1). The statute of limitations for fraud is three years. Cal. Civ. Proc. Code § 338(d). Claims accrue for the purposes of the statutes of limitations when all elements of the cause of action have occurred. *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 396 (1999). Here, the parties signed a tolling agreement on March 7, 2019. Therefore, the claims subject to the two-year statute of limitations that accrued before March 7, 2017 will be barred, and the fraud claims subject to the three-year statute of limitations that accrued before March 7, 2016 will be barred, unless Developers can prove that they did not discover and did not have any reason to discover their causes of action until a later time. *Id.* at 397. The jury here will be asked to determine when

Developers' claims accrued and whether the "discovery rule" tolled the limitations period.

The evidence will show that all of Developers' claims are barred by the statute of limitations because their claims had accrued by March 7, 2016. Throughout 2014 and 2015, Developers received news media reports on public "whistleblower" allegations suggesting that TtEC had falsified radiological test data at HPNS. At the time, Developers were already aware of the risks that posed for developing the site. Lennar spun off Five Point precisely to manage that risk.

At a minimum, the evidence will show that Developers' claims accrued by March 7, 2017, meaning that the negligence-based claims are time-barred. In March 2016, Developers received excerpts from TtEC's report on its investigation of the sampling irregularities at HPNS. In December 2016, San Francisco and the EPA directly told Developers that the government was halting any further HPNS land transfers pending a determination that the properties were safe. Developers were also told that the government could not say how long the delay would last or when the transfers would happen. The same month, Five Point told the SEC and its investors about the delays and their impact on the schedule for developing HPNS. Developers cannot show that they could not have discovered the claims against TtEC and TTI before March 7, 2017.

DATED: November 5, 2026

Respectfully submitted,

MAYER BROWN LLP

By: */s/ Davina Pujari*
Davina Pujari (SBN 183407)
Christopher A. Rheinheimer (SBN 253890)

*Attorneys for Defendants Tetra Tech, Inc. and Tetra Tech EC, Inc.*